A

DIRECTOR OF THE STATE OF NEVADA DEPARTMENT
OF BUSINESS AND INDUSTRY

and

WELLS FARGO BANK, N.A..
Trustee

SENIOR INDENTURE

Dated as of September 1, 2000

$352,705,000 Current Interest Bonds
$98,743,217.30 Capital Appreciation Bonds

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
LAS VEGAS MONORAIL PROJECT REVENUE BONDS
1ST TIER SERIES 2000

and

$149,200,000 Current Interest Bonds

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
LAS VEGAS MONORAIL PROJECT REVENUE BONDS
2ND TIER SERIES 2000

ARTICLE I        DEFINITIONS; CONTENT OF CERTIFICATES AND OPINIONS ............ 2
    SECTION 1.01   Definitions........................................................................... 2
    SECTION 1.02   Content of Certificates and Opinions ................................. 25
    SECTION 1.03   Interpretation ...................................................................... 26
ARTICLE II       THE SENIOR BONDS ................................................................. 26
    SECTION 2.01   Authorization of Bonds ....................................................... 26
    SECTION 2.02   Terms of the Series 2000 Bonds; Interest Rates ................. 27
    SECTION 2.03   Payments on the Senior Bonds ............................................ 28
    SECTION 2.04   Book Entry ........................................................................... 29
    SECTION 2.05   Execution of Senior Bonds .................................................. 31
    SECTION 2.06   Transfer of Bonds ................................................................ 31
    SECTION 2.07   Exchange of Senior Bonds .................................................. 32
    SECTION 2.08   Bond Register ....................................................................... 32
    SECTION 2.09   Temporary Bonds ................................................................ 32
    SECTION 2.10   Senior Bonds Mutilated, Lost, Destroyed or Stolen ........... 32
    SECTION 2.11   Conditions for the Issuance of Additional Senior Bonds.... 33
    SECTION 2.12   Procedure for the Issuance of Additional Senior Bonds ..... 34
    SECTION 2.13   Intercreditor Arrangements ................................................. 35
ARTICLE III      ISSUANCE OF SERIES 2000 BONDS; CONSTRUCTION FUND ........... 35
    SECTION 3.01   Issuance of the Series 2000 Bonds ..................................... 35
    SECTION 3.02   Establishment of Construction Fund, Contingency Fund,
                    Capitalized Interest Fund, and Costs of Issuance Fund ..................... 35
    SECTION 3.03   Use of Moneys in Construction Fund, Contingency Fund and
                    Capitalized Interest Fund ................................................................ 35
    SECTION 3.04   Retention of Requisitions .................................................... 36
    SECTION 3.05   Completion of Project .......................................................... 36
ARTICLE IV       REDEMPTION AND PURCHASE OF BONDS ........................................... 36
    SECTION 4.01   Terms of Redemption ........................................................... 36
    SECTION 4.02   Selection of Bonds for Redemption ..................................... 40
    SECTION 4.03   Notice of Redemption .......................................................... 40
    SECTION 4.04   Partial Redemption of Bonds ............................................... 41
    SECTION 4.05   Effect of Redemption ........................................................... 41

ARTICLE V        REVENUES; FUNDS AND ACCOUNTS; PAYMENT OF
                 PRINCIPAL AND INTEREST..................................................... 41
    SECTION 5.01 Pledge and Assignment; Revenue Fund............................................. 41
    SECTION 5.02 Application of Series 2000 Bond Proceeds............................. 43
    SECTION 5.03 Use of Moneys in Revenue Fund ....................................................... 44
    SECTION 5.04 Debt Service Reserve Funds .............................................................. 46
    SECTION 5.05 Investment of Moneys....................................................................... 49
    SECTION 5.06 Rebate Fund ...................................................................................... 51
    SECTION 5.07 Letters of Credit ............................................................................... 52
    SECTION 5.08 Provisions Regarding Subordination of 2nd Tier Bonds ................... 52
ARTICLE VI       PARTICULAR COVENANTS ................................................................ 54
    SECTION 6.01 Punctual Payment............................................................................. 54
    SECTION 6.02 Extension of Payment of Senior Bonds ............................................ 55
    SECTION 6.03 Against Encumbrances...................................................................... 55
    SECTION 6.04 Power to Issue Senior Bonds and Make Pledge and Assignment....... 55
    SECTION 6.05 Accounting Records and Reports...................................................... 55
    SECTION 6.06 Federal Tax Covenants..................................................................... 56
    SECTION 6.07 Other Covenants............................................................................... 57
    SECTION 6.08 Waiver of Laws ................................................................................ 57
    SECTION 6.09 Further Assurances ........................................................................... 57
    SECTION 6.10 Continuing Disclosure...................................................................... 57
ARTICLE VII     EVENTS OF DEFAULT AND REMEDIES OF BONDHOLDERS ............ 58
    SECTION 7.01 Events of Default; Waiver of Default ............................................... 58
    SECTION 7.02 Institution of Legal Proceedings by Trustee ..................................... 59
    SECTION 7.03 Application of Revenues and Other Funds After Default................... 61
    SECTION 7.04 Trustee to Represent Bondholders .................................................... 64
    SECTION 7.05 Right of the Bondholders to Direct Proceedings................................ 64
    SECTION 7.06 Limitation on the Bondholders' Right to Sue .................................... 64
    SECTION 7.07 Absolute Obligation of Director........................................................ 65
    SECTION 7.08 Termination of Proceedings .............................................................. 65
    SECTION 7.09 Remedies Not Exclusive .................................................................. 65
    SECTION 7.10 No Waiver of Default......................................................................... 65

ARTICLE VIII   THE TRUSTEE, THE PAYING AGENT, AND THE BOND
                REGISTRAR ............................................................................................... 65

    SECTION 8.01   Duties, Immunities and Liabilities of Trustee ...................................... 65

    SECTION 8.02   Merger or Consolidation ....................................................................... 68

    SECTION 8.03   Liability of Trustee ................................................................................. 68

    SECTION 8.04   Right of Trustee to Rely on Documents .............................................. 70

    SECTION 8.05   Preservation and Inspection of Documents .......................................... 70

    SECTION 8.06   Compensation ......................................................................................... 70

    SECTION 8.07   Paying Agent ........................................................................................... 71

    SECTION 8.08   Appointment and Duties of Bond Registrar ........................................ 71

    SECTION 8.09   Eligibility of Bond Registrar ................................................................. 71

    SECTION 8.10   Bond Registrar's Performance of Duties .............................................. 71

    SECTION 8.11   Replacement of Bond Registrar ............................................................ 71

ARTICLE IX    MODIFICATION OR AMENDMENT OF THE SENIOR
                INDENTURE ............................................................................................. 72

    SECTION 9.01   Amendments Permitted .......................................................................... 72

    SECTION 9.02   Effect of Supplemental Indenture ........................................................ 73

    SECTION 9.03   Endorsement of Bonds; Preparation of New Bonds ........................... 73

    SECTION 9.04   Amendment of Particular Bonds ........................................................... 74

    SECTION 9.05   Amendments to Financing Agreement Not Requiring Consent
                    of Owners ............................................................................................... 74

    SECTION 9.06   Amendments, etc. to Financing Agreement Requiring Consent
                    of Owners ............................................................................................... 74

    SECTION 9.07   Limitation on Amendments .................................................................. 75

    SECTION 9.08   Opinion of Bond Counsel ..................................................................... 75

ARTICLE X     DEFEASANCE ......................................................................................... 75

    SECTION 10.01 Discharge of Senior Indenture .............................................................. 75

    SECTION 10.02 Discharge of Liability on Bonds ........................................................... 76

    SECTION 10.03 Deposit of Money or Securities with Trustee ...................................... 76

ARTICLE XI    BOND INSURANCE ................................................................................ 77

    SECTION 11.01 Certain Conditions ................................................................................. 77

    SECTION 11.02 Payments Under the Financial Guaranty Insurance Policy ................. 79

    SECTION 11.03 Payment Procedures Pursuant to 1st Tier Surety Bond ...................... 80

ARTICLE XII   MISCELLANEOUS ................................................................................. 81

SECTION 12.01  Liability of Director Limited to Revenues ........................................ 81

SECTION 12.02  Successor Is Deemed Included in All References to Predecessor ...... 81

SECTION 12.03  Limitation of Rights to Parties and the Bondholder ........................... 82

SECTION 12.04  Waiver of Notice .............................................................................. 82

SECTION 12.05  Destruction of Bonds ....................................................................... 82

SECTION 12.06  Severability of Invalid Provisions ................................................... 82

SECTION 12.07  Governing Law ................................................................................ 82

SECTION 12.08  Notices .............................................................................................. 82

SECTION 12.09  Evidence of Rights of the Bondholders ........................................... 83

SECTION 12.10  Disqualified Bonds .......................................................................... 84

SECTION 12.11  Action Not on Business Day ............................................................ 84

SECTION 12.12  Funds and Accounts ......................................................................... 85

SECTION 12.13  Waiver of Personal Liability ............................................................ 85

SECTION 12.14  Opinions of Bond Counsel .............................................................. 85

SECTION 12.15  Execution in Several Counterparts ................................................... 85

SECTION 12.16  Order ................................................................................................ 85

EXHIBIT A1 ................................................................................................................ A1-1
EXHIBIT B1 ................................................................................................................ B1-1
EXHIBIT C1 ................................................................................................................ C1-1
EXHIBIT D .................................................................................................................. D-1

THIS SENIOR INDENTURE, made and entered into as of September 1, 2000, by and between the DIRECTOR OF THE STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY, being the duly appointed director of said department (the "Director"), and WELLS FARGO BANK, N.A.. a national banking association organized and existing under and by virtue of the laws of the United States having a corporate trust office in Portland, Oregon, and being qualified to accept and administer the trusts hereby created (the "Trustee");

WITNESSETH:

WHEREAS, the Director of the State of Nevada Department of Business and Industry is the duly appointed director of said department, which is a duly created department in the executive branch of the government of the State of Nevada (the "State"), created and existing under Section 232.510 of the Nevada Revised Statutes, and is authorized pursuant to Sections 349.400 through 349.670, inclusive, of the Nevada Revised Statutes, as supplemented and amended (collectively, the "Act"), to provide financing for certain projects; and

WHEREAS, in furtherance of the purposes of the Act and in order to promote the prosperity, health, safety and welfare of the citizens of the State, the Director proposes to finance the cost of the acquisition, construction, improving, and/or equipping of a project (the "Initial Project") more particularly described in Exhibit A to the Financing Agreement (the "Financing Agreement" or "Agreement") of even date herewith, between Las Vegas Monorail Company, a Nevada nonprofit corporation (the "Borrower"), and the Director: and

WHEREAS, pursuant to and in accordance with the Act, the Director has authorized and undertaken to issue Las Vegas Monorail Project Revenue Bonds 1st Tier Series 2000 (the "1st Tier Series 2000 Bonds") and Las Vegas Monorail Project Revenue Bonds 2nd Tier Series 2000 (the "2nd Tier Series 2000 Bonds," and, together with the 1st Tier Bonds, the "Series 2000 Bonds", and, collectively with any Additional Senior Bonds (as defined herein), the "Senior Bonds") pursuant to this Senior Indenture, in each case in one or more Series, in order to provide funds to finance a portion of the cost of acquiring, constructing, improving, and/or equipping the Project; and

WHEREAS, pursuant to and in accordance with the Act and that certain Subordinate Indenture, dated the date hereof, between the Director and the Trustee (the "Subordinate Indenture"), the Director has authorized and undertaken to issue Las Vegas Monorail Project Revenue Bonds 3rd Tier Series 2000A-I in the aggregate principal amount of $48,500,000 (the "Subordinate Bonds" and, collectively with the Senior Bonds, the "Bonds") in order to provide funds to finance a portion of the cost of acquiring, constructing, improving, and/or equipping the Project; and

WHEREAS, the Director has undertaken to finance a portion of the cost of the acquisition, construction, improving and/or equipping of the Initial Project by loaning the proceeds derived from the sale of the Senior Bonds to the Borrower pursuant to the Financing Agreement, under which the Borrower is required to make loan payments sufficient to pay when due the principal of, premium, if any, and interest on the Senior Bonds and related expenses (as hereinafter defined); and

WHEREAS, it has been determined that the estimated amount necessary to finance a portion of the cost of the acquisition, construction, improving and/or equipping of the Initial Project, including necessary expenses incidental to the issuance of the Senior Bonds, will require the issuance, sale and delivery of the Senior Bonds, as hereinafter provided; and

WHEREAS, all Senior Bonds issued under this Senior Indenture will be secured by a pledge and assignment of the Financing Agreement and of Revenues (as described in Section 5.01 hereof); and

WHEREAS, the Series 2000 Senior Bonds and the certificates of authentication to be executed thereon are to be in substantially the forms set forth in Exhibits A1, AC1, B2 and BC2 hereto, with necessary or appropriate variations, omissions and insertions, as permitted or required by this Senior Indenture; and

WHEREAS, all acts and proceedings required by law necessary to make the Senior Series 2000 Bonds when executed by the Director, authenticated and delivered by the Trustee and duly issued, the valid, binding and legal limited obligations of the Director, and to constitute this Senior Indenture as a valid and binding agreement for the uses and purposes herein set forth, in accordance with its terms, have been done and taken; and the execution and delivery of this Senior Indenture have been in all respects duly authorized;

NOW, THEREFORE, THIS SENIOR INDENTURE WITNESSETH, that in order to secure the payment of the principal of and the interest and premium, if any, on all Senior Bonds at any time issued and outstanding under this Senior Indenture, according to their tenor, and to secure the performance and observance of all the covenants and conditions therein and herein set forth, and to declare the terms and conditions upon and subject to which the Senior Bonds are to be issued and received, and for and in consideration of the premises and of the mutual covenants herein contained and of the purchase and acceptance of the Senior Bonds by the holders thereof, and for other valuable considerations, the receipt whereof is hereby acknowledged, the Director covenants and agrees with the Trustee, for the equal and proportionate benefit of the respective holders from time to time of the Senior Bonds, as follows:

## ARTICLE I

## DEFINITIONS; CONTENT OF CERTIFICATES AND OPINIONS

SECTION 1.01    Definitions. Unless the context otherwise requires, the terms defined in this Article shall, for all purposes of this Senior Indenture and of any indenture supplemental hereto and of any certificate, opinion or other document herein mentioned, have the meanings herein specified, to be equally applicable to both the singular and plural forms of any of the terms herein defined. Unless otherwise defined in this Senior Indenture, all terms used herein shall have the meanings assigned to such terms in the Act.

Accountant

"Accountant" means any firm of independent certified public accountants selected by the Borrower.

Accreted Value

"Accreted Value" means, with respect to any Capital Appreciation Bond, an amount equal to the Initial Denominational Amount of such Bond, plus interest accrued thereon from its date compounded on each Accretion Date (through and including the maturity date of such Bond) at the "original issue yield" for such Bond; provided, however, that the Accreted Value on any date other than a Accretion Date shall be calculated by straight line interpolation of the Accreted Values as of the immediately preceding and succeeding Accretion Dates. The term "original issue yield" means, with respect to any particular Bond, the yield to maturity of such Bond from the initial date of delivery thereof calculated on the basis of semiannual compounding (based on a 360-day year consisting of twelve 30-day months) on each Accretion Date. Accreted Value with respect to any Series 2000 Bond, as of any Accretion Date, is an amount equal to the amount shown on the Accreted Value Table.

Accreted Value Table

"Accreted Value Table" means the table attached to this Senior Indenture as Exhibit D.

Accretion Date

"Accretion Date" means, with respect to the Series 2000 Bonds, each January 1 and July 1 commencing January 1, 2001.

Act

"Act" has the meaning assigned thereto in the recitals.

Act of Bankruptcy

"Act of Bankruptcy" means with respect to any entity the entry of an order or decree, by a court having jurisdiction in the premises, for relief against such entity in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, conservator, assignee, custodian, trustee, sequestrator (or other similar official) of such entity or of any substantial part of its property, or ordering the winding up or liquidation of its affairs; or the institution or commencement by or against such entity of a voluntary or involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by it to the entry of an order for relief against it in any involuntary case under any such law, or to the appointment of a receiver, liquidator, conservator, assignee, custodian, trustee, sequestrator (or other similar official) of such entity or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the failure of it generally to pay its debts as they become due, or the admission by it in writing of such failure, or the taking of any action by such entity in furtherance of any such action, or if a receiver of the business or of the property or assets of such entity shall be appointed by any court.

Additional Debt

"Additional Debt" means, collectively, all 1st Tier Parity Debt, 2nd Tier Parity Debt, and Subordinate Debt incurred on or after the date of delivery of the Series 2000 Bonds.

Additional 1st Tier Bonds

"Additional 1st Tier Bonds" means any 1st Tier Bonds issued in addition to or to refund the 1st Tier Series 2000 Bonds pursuant to Sections 2.11 and 2.12 hereof.

Additional Payments

"Additional Payments" means the payments required to be made by the Borrower pursuant to Sections 4.2 (b), (c) and (d) of the Financing Agreement.

Additional Project

"Additional Project" means all real and personal property owned or operated by the Borrower constituting public transportation facilities serving Clark County, Nevada which is added to or ancillary to the Initial Project, and which is so designated by the Borrower in order to obtain the benefits of this Senior Indenture or the Financing Agreement.

Additional 2nd Tier Bonds

"Additional 2nd Tier Bonds" means any 2nd Tier Bonds issued in addition to or to refund the 2nd Tier Series 2000 Bonds pursuant to Sections 2.11 and 2.12 hereof.

Additional Senior Bonds

"Additional Senior Bonds" means any Additional 1st Tier Bonds and/or Additional 2nd Tier Bonds.

Administrative Fees and Expenses

"Administrative Fees and Expenses" means the reasonable and necessary expenses incurred by the Director pursuant to the Financing Agreement or this Senior Indenture and the reasonable compensation and expenses paid to or incurred by the Trustee and its counsel, the Bond Registrar, a financial advisor, under the Financing Agreement or this Senior Indenture, which include but are not limited to printing of Senior Bonds, accomplishing transfers or new registration of Senior Bonds, or other charges and other disbursements including those of their respective officers, directors, members, attorneys, agents and employees incurred in and about the administration and execution of the Financing Agreement and this Senior Indenture.

Agreement or Financing Agreement

"Agreement" or "Financing Agreement" means that certain financing agreement by and between the Director and the Borrower, dated as of September 1, 2000, as originally

executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof and of this Senior Indenture.

Approving Opinion

"Approving Opinion" means an opinion of Bond Counsel acceptable to the Trustee that an action being taken (i) is authorized by the Act and this Senior Indenture, and (ii) where required by the terms hereof, will not adversely affect the Tax-exempt status of any Series of the Senior Bonds.

Authorized Denomination

"Authorized Denomination" means (i) with respect to the Current Interest 1st Tier Series 2000 Bonds, $5,000 or any integral multiple of $5,000 in excess thereof, (ii) with respect to the Capital Appreciation 1st Tier Series 2000 Bonds. the Initial Denominational Amount thereof for each $5,000 of Accreted Value at maturity, or any integral multiple thereof, (iii) with respect to the 2nd Tier Series 2000 Bonds, $100,000 or any integral multiple of $5,000 in excess thereof, and (iv) with respect to any Additional Senior Bonds. such denominations as may be specified in a Supplemental Indenture.

Authorized Representative

"Authorized Representative" means with respect to the Borrower, any person or persons at the time designated to act on behalf of the Borrower by a written certificate signed by the Borrower, furnished to the Trustee and the Director, containing the specimen signature of each such person.

Bank

"Bank" means any and all banks or financial institutions issuing a Letter of Credit.

Bond

"Bond" or "Bonds" means any Senior Bond or all of the Senior Bonds, as the case may be, of the Director authorized pursuant to Section 2.01, 2.10 or 2.11 and issued by the Director, authenticated by the Trustee and delivered hereunder.

Bond Counsel

"Bond Counsel" means any attorney at law or firm of attorneys of nationally recognized standing in matters pertaining to the federal tax exemption of interest on bonds issued by states and political subdivisions, and duly admitted to practice law before the highest court of any state of the United States of America and acceptable to the Director, but shall not include counsel for the Borrower.

Bond Payment Date

"Bond Payment Date" means any Interest Payment Date and any Principal Payment Date and any other date on which the principal of, premium, if any, or interest on or Accreted Value of the Senior Bonds is to be paid to the Owners thereof, whether upon redemption, at maturity or upon acceleration of maturity of the Senior Bonds.

Bond Registrar or Registrar

"Bond Registrar" or "Registrar" means the entity or entities performing the duties of the Bond Registrar pursuant to Section 2.08.

Borrower

"Borrower" means the Las Vegas Monorail Company, a Nevada nonprofit corporation, or any entity which is the surviving, resulting or transferee entity in any merger, consolidation or transfer of assets permitted under Section 5.3 of the Financing Agreement.

Borrower Loan Documents

"Borrower Loan Documents" means the Financing Agreement, the Project Agreements and the Tax Certificate.

Business Day

"Business Day" shall mean any day other than (i) a Saturday or Sunday, (ii) a day on which commercial banks in Las Vegas, Nevada, or the city or cities in which the Principal Corporate Trust Office of the Trustee is located are closed or (iii) a day on which the New York Stock Exchange is closed.

Capital Appreciation Bond

"Capital Appreciation Bond" means any Senior Bond which does not bear current interest and is designated as such when it is issued.

Capital Replacement Costs

"Capital Replacement Costs" means costs paid by the Borrower pursuant to its Capital Asset Replacement Program as described in Section 5.1 of the Operation and Maintenance Agreement.

Capital Replacement Fund

"Capital Replacement Fund" means the Capital Asset Replacement Fund established pursuant to Section 4.1(c) of the Agreement for payment of Capital Replacement Costs.

Capitalized Interest Fund

"Capitalized Interest Fund" means the fund by that name established pursuant to Section 3.02.

Certificate, Statement, Request, Requisition or Order of the Director, or the Borrower

"Certificate," "Statement," "Request," "Requisition" and "Order" of the Director or the Borrower mean, respectively, a written certificate, statement, request, requisition or order signed by or in the name of the Director by such other person as may be designated and authorized to so sign, or in the name of the Borrower by an Authorized Representative of the Borrower. Any such instrument and supporting opinions or representations, if any, may, but need not, be combined in a single instrument with any other instrument, opinion or representation, and the two or more so combined shall be read and construed as a single instrument. If and to the extent required by Section 1.02, each such instrument shall include the statements provided for in Section 1.02.

Code

"Code" means the Internal Revenue Code of 1986.

Collateral

"Collateral" means the property or rights of the Borrower pledged to secure Senior Loan Repayments and other obligations as described in Section 3.1(b) of the Agreement.

Collections Fund

"Collections Fund" means the fund by that name required to be maintained by the Borrower pursuant to Section 4.1(b) of the Agreement.

Completion Date

"Completion Date" means the date on which the Borrower provides to the Director and the Trustee a certificate pursuant to Section 3.05.

Construction Fund

"Construction Fund" means the fund by that name established pursuant to Section 3.02.

Contingency Fund

"Contingency Fund" means the fund established by the Trustee pursuant to Section 3.02 hereof.

Contractors

"Contractors" means Bombardier Transit Corporation and Granite Construction Company, as the Contractors under the Design-Build Agreement.

Cost of the Project

"Cost" or "Cost of the Project" means and shall be deemed to include all of the costs of acquiring, constructing, renovating, installing and equipping the Project, to the extent permitted by the Act and the Tax Certificate, whether incurred prior to or after the date of the Financing Agreement, including, but not limited to the following, but not including any Costs of Issuance:

(1)    the cost of design, construction, acquisition, installation, testing, improvement, repair and reconstruction;

(2)    the cost of acquisition of, including rights in land and other property, both real and personal and improved and unimproved, and franchises. and disposal rights;

(3)    the cost of demolishing, removing, or relocating any buildings, structures or utilities on lands so acquired, including the cost of acquiring any lands or interest in lands to which such buildings or structures or utilities may be moved or relocated;

(4)    the cost of machinery, equipment, systems, and furnishings, of engineering and architectural surveys and plans, and specifications and of transportation and storage until the Project is operational;

(5)    the cost of agents or consultants, including, without limitation, legal, financial, engineering, accounting, and auditing, necessary or incident to the Project and of the determination as to the feasibility or practicability of undertaking the Project;

(6)    the cost of financing interest on the Bonds allocable to the period prior to and during construction of the Project and up to one year after completion and reserves for principal and interest and for extensions, enlargements, additions, repairs, replacements, renovations, and improvements to the Project; and

(7)    the cost of financing the Project, and the reimbursement to any governmental entity or agency, or any person, of expenditures made by or on behalf of such entity, agency or person in connection with the Project; provided that the Borrower shall at their own expense insure, repair, and maintain the Project, pay such taxes with respect to the Borrower's interest in the property relating to the Project as the provisions of the Nevada Revised Statutes require, and pay such assessments and other public charges on the Project or shall cause the same to be provided by others to the satisfaction of the Director.

Costs of Issuance

"Costs of Issuance" means all items of expense directly or indirectly payable by, or reimbursable to, the Director or the Borrower and related to the authorization, issuance, sale

and delivery of the Senior Bonds and the Subordinate Bonds, including but not limited to costs of preparation and reproduction of documents, printing expenses, filing and recording fees, initial fees and charges of the Trustee including fees and charges of its counsel, legal fees and charges, fees and disbursements of consultants and professionals, rating agency fees, fees and charges for preparation, execution and safekeeping of the Senior Bonds and the Subordinate Bonds, surety, insurance, liquidity and credit enhancement costs, and any other cost, charge or fee in connection with the original issuance of the Senior Bonds and the Subordinate Bonds.

Costs of Issuance Fund

"Costs of Issuance Fund" means the fund by that name established pursuant to Section 3.02.

Current Interest Bond

"Current Interest Bond" means any Senior Bond which is designated as such when issued.

Date of Delivery

"Date of Delivery" means the date of initial issuance and delivery of the Senior Bonds.

Debt Service Funds

"Debt Service Funds" means, collectively, the 1st Tier Debt Service Fund and the 2nd Tier Debt Service Fund established pursuant to Section 5.03.

Debt Service Reserve Funds

"Debt Service Reserve Funds" means collectively, the 1st Tier Debt Service Reserve Fund and the 2nd Tier Debt Service Reserve Fund established pursuant to Section 5.04.

Debt Service Reserve Requirement

"Debt Service Reserve Requirement" means, with respect to each Series of the Senior Bonds, at any time an amount equal to the least of (i) the maximum amount of principal of and interest on all such Series of Senior Bonds, as appropriate, due in the current or any future Fiscal Year, (ii) 125% of average annual Debt Service on such Series of Senior Bonds in the current and each future Fiscal Year calculated as of the date of issuance of such Series of Senior Bonds; or (iii) 10% of the original stated principal amount of such Series of Senior Bonds (or 10% of the issue price of such Series of Senior Bonds, if required by the Code).

Deferred Incentive Payment Obligations

"Deferred Incentive Payment Obligations" means obligations of that name created under and as defined in Section 12.5.3 of the Design-Build Agreement.

Deferred Payment Obligations

"Deferred Payment Obligations" means all Deferred Progress Payment Obligations and/or Deferred Incentive Payment Obligations.

Deferred Progress Payment Obligations

"Deferred Progress Payment Obligations" means obligations of that name created under and as defined in Sections 12.5.1 and 12.5.3 of the Design-Build Agreement.

Design-Build Agreement

"Design-Build Agreement" means the Design-Build Equip Contract, dated as of September 1, 2000 among the Borrower, Granite Construction Company, a California corporation, and Bombardier Transit Corporation, a Delaware corporation and any supplements or amendments, thereto.

Director

"Director" has the meaning assigned thereto in the recital paragraphs of this Senior Indenture.

Easement Agreements

"Easement Agreements" means those certain Right-of-Way Acquisition Agreements including in certain cases Connector Agreements listed in Exhibit A to the Agreement.

Event of Default

"Event of Default" means any of the events specified in Section 7.01.

Excess Net Project Revenues

"Excess Net Project Revenues" means Net Project Revenues available for allocation pursuant to the Financing Agreement after all allocations required by Sections 4.1 (b), (c) and (d) of the Agreement have been made and the balance in the 1st Tier General Fund Subaccount equals or exceeds $30,000,000 and the balance in the 2nd Tier General Fund Subaccount equals or exceeds $20,000,000.

1st Tier Bonds

"1st Tier Bonds" means the 1st Tier Series 2000 Bonds and any Additional 1st Tier Bonds.

1st Tier Debt Service

"1st Tier Debt Service" means, for any Fiscal Year, the sum of (1) the interest accruing during such Fiscal Year on all outstanding 1st Tier Bonds or 1st Tier Parity Debt,

assuming that all outstanding serial 1st Tier Bonds and 1st Tier Parity Debt are retired as scheduled and that all outstanding term 1st Tier Bonds are redeemed or paid from sinking fund payments as scheduled (except to the extent that such interest is to be paid from the proceeds of sale of any Bonds), (2) that portion of the principal amount or Accreted Value of all outstanding serial 1st Tier Bonds or 1st Tier Parity Debt maturing on the next succeeding Principal Payment Date that would have accrued during such Fiscal Year if such principal amount were deemed to accrue daily in equal amounts from the next preceding Principal Payment Date or during the year preceding the first Principal Payment Date, as the case may be, (3) that portion of the principal amount or Accreted Value of all outstanding term 1st Tier Bonds or 1st Tier Parity Debt required to be redeemed or paid on the next succeeding redemption date (together with the redemption premiums, if any, thereon) that would have accrued during such Fiscal Year if such principal amount (and redemption premiums) were deemed to accrue daily in equal amounts from the next preceding redemption date or during the year preceding the first redemption date, as the case may be, (4) that portion of the 1st Tier Loan Repayments required to be made at the times provided in the Agreement that would have accrued during such Fiscal Year if such 1st Tier Loan Repayments were deemed to accrue daily in equal amounts from, in each case, the next preceding Bond Payment Date of interest or principal or the date of the pertinent contract, as the case may be; provided, that if any of such Bonds are Capital Appreciation Bonds, then the Accreted Value payment shall be deemed a principal payment and interest that is compounded and paid as Accreted Value shall be deemed due on the scheduled redemption or payment date of such Capital Appreciation Bond.

Notwithstanding the foregoing, with respect to a series of 1st Tier Bonds or 1st Tier Parity Debt bearing interest at a variable rate, for which a fixed rate swap is not in place, the interest rate thereon for purposes of calculating 1st Tier Debt Service shall be assumed to be equal to the maximum interest rate permissible for such variable rate bonds pursuant to the legal documents under which they are issued.

## 1st Tier Debt Service Fund

"1st Tier Debt Service Fund" means the fund by that name established under Section 5.03.

## 1st Tier Debt Service Reserve Fund

"1st Tier Debt Service Reserve Fund" means the fund by the name established under Section 5.03.

## 1st Tier Loan Repayments

"1st Tier Loan Repayments" means that portion of Senior Loan Repayments allocable to Debt Service with respect to the 1st Tier Bonds.

## 1st Tier Parity Debt

"1st Tier Parity Debt" means any 1st Tier Bond or any loan, note, advance, capital lease, or other debt payable from and secured by the Net Project Revenues and/or secured by the Collateral on a pari passu basis with the 1st Tier Bonds.

1st Tier Series 2000 Bonds

"1st Tier Series 2000 Bonds" means the 1st Tier Bonds authorized and issued pursuant to Section 2.02 hereof.

1st Tier Surety Reserve Bond

"1st Tier Surety Reserve Bond" means the surety reserve bond issued by the Insurer for the benefit of the 1st Tier Series 2000 Bonds.

Financial Guaranty Insurance Policy

"Financial Guaranty Insurance Policy" shall mean the financial guaranty insurance policy issued by the Insurer insuring the payment when due of the principal of, Accreted Value and interest on the 1st Tier Series 2000 Bonds as provided therein.

Fiscal Year

"Fiscal Year" means the twelve-month period selected and designated by the Borrower as the official fiscal year period of the Borrower.

Fitch

"Fitch" means Fitch IBCA, Inc., a corporation organized and existing under the laws of the State of Delaware, its successors and their assigns. or, if such entity shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "Fitch" shall be deemed to refer to any other nationally recognized securities rating agency (other than S&P or Moody's) designated by the Director, with the approval of the Borrower.

Franchise Agreement

"Franchise Agreement" means the Clark County Monorail Franchise Agreement, dated as of December 2, 1998, as amended October 20, 1999, between the Borrower, as successor to MGM Grand-Bally's Monorail LLC, a Nevada limited liability company, and Clark County, Nevada and any supplements, amendments, and successor agreements thereto.

General Fund

"General Fund" means the fund by that name established by the Borrower pursuant to Section 4.1(d) of the Financing Agreement.

Generally Accepted Accounting Principles

"Generally Accepted Accounting Principles" means the uniform accounting and reporting procedures set forth in publications of the Financial Accounting Standards Board or its successor, or by any other generally accepted authority on such procedures, and includes, as applicable, the standards set forth by the Governmental Accounting Standards Board or its successor.

Holder or Bondholder or Owner

"Holder" or "Bondholder," or "Owner," whenever used herein with respect to a Senior Bond, means the person in whose name such Senior Bond is registered.

Incentive Payments

"Incentive Payments" shall have the meaning assigned thereto in Sections 12.3.1 and 12.3.2 of the Design-Build Agreement.

Indebtedness

"Indebtedness" means all items which in accordance with Generally Accepted Accounting Principles would be included in determining total liabilities as shown on the liability side of a balance sheet as at the date on which Indebtedness is to be determined. Such term shall also include, whether or not so reflected, (a) indebtedness, obligations and liabilities secured by any lien, security interest, or other encumbrance on property of the Borrower whether or not the indebtedness secured thereby shall have been assumed by the Borrower, (b) all obligations in respect of capital leases and (c) all guarantees of any of the above. Notwithstanding the foregoing (x) Deferred Payment Obligations and Deferred Incentive Payment Obligations shall not be considered Indebtedness for the purposes of this definition, and (y) all indebtedness of the Borrower of the character referred to herein deemed to be extinguished under Generally Accepted Accounting Principles but for which the borrower remains legally liable shall be included for purposes of calculating Indebtedness.

Indemnification Account

"Indemnification Account" means the account of that name created within the Contingency Fund pursuant to Section 3.03(b).

Independent Certified Public Accountant

"Independent Certified Public Accountant" means any firm of certified public accountants appointed by the Borrower acceptable to the Director which is independent pursuant to the Statement on Auditing Standards No. 1 of the American Institute of Certified Public Accountants.

Independent Engineer

"Independent Engineer" means Booz·Allen & Hamilton and G.C. Wallace, or any other firm or firms having civil engineering and transportation expertise engaged by the Borrower in compliance with Section 5.13 of the Agreement.

Information Services

"Information Services" means Financial Information, Incorporated's "Daily Called Bond Service," 30 Montgomery Street, 10th Floor, Jersey City, New Jersey 07302, Attention: Editor; Kenny Information Services "Called Bond Service," 55 Broad Street, 28th

Floor, New York, New York 10004; Moody's "Municipal and Government," 5250 77 Center Drive, Suite 150, Charlotte, NC 28217, Attention: Called Bonds Department; and Standard and Poor's "Called Bond Record," 25 Broadway, 3rd Floor, New York, New York 10004; or, in accordance with then-current guidelines of the Securities and Exchange Commission, to such other services providing information with respect to called bonds, or no such services, as the Director may indicate in a certificate of the Director delivered to the Trustee.

Initial Denominational Amount

"Initial Denominational Amount" means, with respect to any Capital Appreciation Bonds, the principal amount allocated to such Bond on date of its initial issuance and delivery, upon which interest commences to accrue as set forth in Exhibit D.

Initial Project

"Initial Project" means (i) all land, easements, buildings, structures, fixtures and improvements and (ii) all tangible personal property whether now existing or hereafter acquired, constructed or installed constituting a 4-mile dual guideway monorail system in Clark County, Nevada as more fully described in Exhibit A to the Agreement, as it may be modified from time to time pursuant to Section 3.4 of the Agreement.

Insurance Consultant

"Insurance Consultant" means any insurance consultant or firm of insurance consultants generally recognized to be well qualified in insurance consulting matters relating to public transportation and other municipal systems, appointed and paid by the Borrower, and who or each of whom—

      (1)    is in fact independent and not under the domination of the Borrower;

      (2)    does not have a substantial financial interest, direct or indirect, in the operations of the Borrower; and

      (3)    is not connected with the Borrower as a director, officer, or employee of the Borrower, but may be regularly retained to make reports to the Borrower.

Insurer

"Insurer" means Ambac Assurance Corporation. a Wisconsin-domiciled stock insurance company, as issuer of the Financial Guaranty Insurance Policy and the 1st Tier Surety Reserve Bond.

Interest Payment Date

"Interest Payment Date" means (i) with respect to the Current Interest Series 2000 Bonds, January 1 and July 1 of each year, commencing January 1, 2001, (ii) the interest payment dates for any Additional Senior Bonds as specified in the Supplemental Indenture and (iii) the Principal Payment Date with respect to each Senior Bond.

Investment Securities

        "Investment Securities" shall mean any of the following securities, to the extent permitted by law and other than those issued by the Director or the Borrower, identified below:

        (i)     United States Treasury notes, bonds, bills or certificates of indebtedness or those for which the faith and credit of the United States of America are pledged for the payment of principal and interest including debentures. notes or other evidence of indebtedness issued or guaranteed by any of the following: Banks for Cooperatives, Federal Intermediate Credit Banks, Federal Housing Finance Board, Export-Import Bank of the United States, Federal Financing Bank, Federal Land Banks, Federal Farm Credit Bank, Government National Mortgage Association. Federal National Mortgage Association, Farmer's Home Administration, Federal Home Loan Mortgage Corporation or Federal Housing Administration;

        (ii)    General obligation bonds, notes or other evidences of indebtedness of any state, municipality or political subdivision, which are rated in the two highest rating categories by the Rating Agency;

        (iii)   refunded municipal obligations defined as follows:  any bonds or other obligations of any state of the United States of America or of any agency, instrumentality or local governmental unit of any such state which are not callable at the option of the obligor prior to maturity or as to which irrevocable instructions have been given by the obligor to call on the date specified in the notice; and

        (a)     are rated, based on an irrevocable escrow account or fund (the "escrow"), in the highest rating category of Moody's and Standard & Poor's or any successors thereto; or

        (b)    (i) which are fully secured as to principal and interest and redemption premium, if any, by an escrow consisting only of cash or obligations described in paragraph (i) above, which escrow may be applied only to the payment of such principal of and interest and redemption premium, if any, on such bonds or other obligations on the maturity date or dates thereof or the specified redemption date or dates pursuant to such irrevocable instructions, as appropriate, and (ii) which escrow is sufficient, as verified by a nationally recognized independent certified public accountant, to pay principal of and interest and redemption premium, if any, on the bonds or other obligations described in this paragraph on the maturity date or dates specified in the irrevocable instructions referred to above, as appropriate.

        (iv)   Repurchase agreements with any bank, agency, trust company or national banking association rated by the Rating Agency in the two highest rating categories, insured by the Federal Deposit Insurance Corporation and. within the limits of such insurance, or with any government bond dealer recognized as a primary dealer by the Federal Reserve Bank of New York, which agreements are fully and continuously secured by a valid and perfected security interest in obligations described in paragraph (i) of this definition, and which have been approved in advance by the Insurer;

(v)   Money market funds, rated by a nationally recognized rating service as "AAA," which invest solely in Investment Securities described in (i) and (ii) above, including such funds for which the Trustee or an affiliate of the Trustee acts as an investment advisor or provides other services;

(vi)   Deposit accounts with any bank, trust company or national banking association which is insured by the Federal Deposit Insurance Corporation and whose long-term obligations are rated in the two highest rating categories by the Rating Agency; and

(vii)   Commercial paper rated "Prime-1" by Moody's and "A-1+" or better by S&P, maturing in not more than 270 days.

<u>Letter of Credit</u>

"Letter of Credit", as applicable, means the irrevocable, direct-pay letter of credit issued by a commercial bank or financial institution having a rating of at least "A2/A" from Moody's and Standard & Poor's naming the Trustee as beneficiary to provide funds for deposit in the Construction Fund pursuant to Section 5.07 hereof, and also includes any such letter of credit that substitutes or replaces a letter of credit previously on deposit with the Trustee..

<u>Loan Default Event</u>

"Loan Default Event" means any one or more of the events specified in Section 7.1 of the Agreement.

<u>Management Agreement</u>

"Management Agreement" means the Management Services Agreement, dated as of September 1, 2000, between the Borrower and Transit Systems Management LLC, a Nevada limited liability company and any supplements, amendments, or successor agreements thereto..

<u>Manager</u>

"Manager" means Transit Systems Management LLC, designated as manager of the Project under the Management Agreement, and any permitted successor or assignee thereof.

<u>Moody's</u>

"Moody's" means Moody's Investors Service, a corporation organized and existing under the laws of the State of Delaware, its successors and their assigns, or, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "Moody's" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Director, with the approval of the Borrower.

Net Proceeds

"Net Proceeds" means the proceeds from insurance (other than rental or business interruption insurance) less any costs reasonably expended by the Borrower or the Trustee to receive such proceeds.

Net Project Revenues

"Net Project Revenues" means Project Revenues less Operation and Maintenance Costs.

Operation and Maintenance Agreement

"Operation and Maintenance Agreement" means the Monorail Operation and Maintenance Agreement dated as of September 1, 2000 between the Borrower and Bombardier Transit Corporation, a Delaware corporation and any supplements, amendments, or successor agreements thereto.

Operation and Maintenance Costs

"Operation and Maintenance Costs" means any and all amounts due under the Operation and Maintenance Agreement and the Management Agreement and any reasonable and necessary costs paid or incurred by the Borrower for maintaining and operating the Project, including all reasonable expenses of management and repair and other expenses necessary to maintain and preserve the Project in good repair and working order, and the annual costs of any permits or licenses, property taxes, including franchise fees, all administrative costs of the Borrower that are charged directly or apportioned to the operation of the Project, such as salaries and wages of employees, legal and accounting fees, insurance, overhead, taxes (if any), fees and indemnification or other payments to the Director or the Trustee relating to any Senior Bonds and the Subordinate Bonds, Administrative Fees and Expenses and amounts described in Section 4.2(b)-(d) of the Agreement, and including all other reasonable and necessary costs of the Borrower or charges required to be paid by them to comply with the terms hereof or of such Senior Bonds or Subordinate Bonds, but excluding in all cases depreciation, replacement and obsolescence charges or reserves therefor, including deposits into or expenditures from the Capital Replacement Fund, amortization of intangibles, 1st Tier Debt Service, 2nd Tier Debt Service or Subordinate Debt Service and payments on any capital leases.

Operator

"Operator" means Bombardier Transit Corporation, designated as operator of the Project under the Operation and Maintenance Agreement, and any permitted successor or assignee thereof.

Opinion of Counsel

"Opinion of Counsel" means a written opinion of counsel (who may be counsel for the Director) selected by the Director and acceptable to the Trustee. If and to the extent

required by the provisions of Section 1.02, each Opinion of Counsel shall include the statements provided for in Section 1.02.

### Other Debt

"Other Debt" means, collectively, Other Parity Senior Debt and Other Subordinate Debt.

### Other Lender

"Other Lender" means any bank, financial institution, institutional investor, or governmental entity lending or advancing funds to the Borrower from time to time and secured by Senior Debt (other than the Senior Loan Repayments) or Subordinate Debt (other than Subordinate Loan Repayments).

### Other Parity Senior Debt

"Other Parity Senior Debt" means, collectively, any 1st Tier Parity Debt (excluding 1st Tier Bonds) and any 2nd Tier Parity Debt (excluding 2nd Tier Bonds).

### Other Subordinate Debt

"Other Subordinate Debt" means any loan, bond, note, advance, capital lease, or other debt of the Borrower payable from and secured by all or any part of the Net Project Revenues and/or secured by all or any part of the Collateral on a parity with the Subordinate Bonds.

### Outstanding

"Outstanding," when used as of any particular time with reference to any Senior Bonds of any Series, means (subject to the provisions of Section 11.10) all Senior Bonds theretofore, or thereupon being, authenticated and delivered by the Trustee under this Senior Indenture except (1) Senior Bonds theretofore cancelled by the Trustee or surrendered to the Trustee for cancellation; (2) Senior Bonds with respect to which liability of the Director shall have been discharged in accordance with Section 10.02, including Senior Bonds (or portions of Senior Bonds) referred to in Section 11.10; and (3) Senior Bonds for the transfer or exchange of or in lieu of or in substitution for which other Senior Bonds shall have been authenticated and delivered by the Trustee pursuant to this Senior Indenture.

### Paying Agent

"Paying Agent" means the paying agent described in Section 8.07 hereof.

### Person

"Person" means an individual, corporation, firm, association, partnership, trust, or other legal entity or group of entities, including a governmental entity or any agency or political subdivision thereof.

Plans and Specifications

"Plans and Specifications" means the plans and specifications prepared for the Initial Project, certified by an Authorized Representative of the Borrower, as the same may be implemented, detailed and revised from time to time.

Principal Corporate Trust Office

"Principal Corporate Trust Office" shall mean with respect to the Trustee, the office of the Trustee listed in Section 11.08 hereof or such other or additional offices as may be specified to the Director by the Trustee in writing.

Principal Payment Date

"Principal Payment Date" means, with respect to any Senior Bond, January 1 of the year listed as the maturity date with respect to such Senior Bond in Section 2.02 hereof.

Project

"Project" means the Initial Project and any Additional Project(s).

Project Agreements

"Project Agreements" means the Design-Build Agreement, the Franchise Agreement, the Management Agreement, the Operation and Maintenance Agreement, the Purchase Agreement and the Easement Agreements and any other agreements related to the acquisition, construction, installation, operation, or management of the Initial Project to which the Borrower is a party or any successor or replacement to any such agreement, together with any similar construction, operation maintenance or other contracts necessary or desirable for the acquisition, construction, equipping or operation of any Additional Project.

Project Revenues

"Project Revenues" means, for any Fiscal Year, all gross income and revenue received or receivable by the Borrower from the ownership, operation or use of the Project, including all fees and charges received by the Borrower for the use of the Project, including but not limited to farebox revenues, business interruption insurance. advertising revenues, licensing fees, rent, sponsorship income, other contractual revenues, interest earnings on funds held hereunder or by the Borrower (excluding the Construction Fund, Contingency Fund, and Rebate Fund) liquidated damages, payments under performance or completion bonds or under the Project Agreements, and all other income and revenue howsoever derived by the Borrower from the ownership, operation or use of the Project or dedicated by the Borrower or any other person to support the Project, and such other revenues as may be designated by the Borrower in the Agreement, but excluding in all cases any refundable deposits made to establish credit and advances or contributions in aid of construction received during such Fiscal Year.

Projected Net Project Revenues

"Projected Net Project Revenues" means, for purposes of compliance with Section 5.6(h)(ii) of the Financing Agreement, estimated Net Project Revenues for each Fiscal Year following completion of any Project to be funded with the issuance of Additional Senior Bonds, Other Senior Parity Debt or Other Subordinate Debt. including an allowance for estimated Net Project Revenues to be received from any planned increase in fees, rates or charges for the Project.

Purchase Agreement

"Purchase Agreement" means the Agreement to Purchase MGM Grand-Bally's Monorail Limited Liability Company, dated as of September 1. 2000, by and among MGM Grand Hotel, Inc., a Nevada corporation. Parball Corporation. a Nevada corporation and the Borrower and any supplements, amendments, or successor agreements thereto.

Rating Agency

"Rating Agency" means Moody's, S&P, Fitch or any other nationally recognized securities rating agency providing a rating on the Bonds at the request of the Borrower and/or the Director.

Rebate Fund

"Rebate Fund" means the fund by that name created pursuant to Section 5.06.

Record Date

"Record Date" shall mean the fifteenth day of the month prior to an Interest Payment Date.

Redemption Account

"Redemption Account" means the account by that name established pursuant to Section 5.01.

Removal Costs Fund

"Removal Costs Fund" means the fund by that name established pursuant to the terms of that certain Escrow Agreement, dated as of September 1, 2000, by and among Clark County, the Borrower and Wells Fargo Bank, National Association, as Escrow Agent.

Revenue Fund

"Revenue Fund" means the fund by that name established pursuant to Section 5.01.

Revenues

"Revenues" means all moneys received by the Director or the Trustee for the account of the Director pursuant or with respect to the Agreement for the benefit of the Senior Bonds, including, without limiting the generality of the foregoing, Senior Loan Repayments (including both timely and delinquent payments, any late charges, and paid from whatever source), prepayments, and all interest, profits or other income derived from the investment of amounts in any fund or account established pursuant to this Senior Indenture, but not including any Administrative Fees and Expenses or any moneys paid for deposit into the Rebate Fund. Revenues do not include Project Revenues deposited with the Trustee pursuant to the last paragraph of Section 4.1(b) of the Financing Agreement until such moneys are used to make a Senior Loan Repayment.

Ridership and Revenue Consultant

"Ridership and Revenue Consultant" means a nationally-recognized consulting firm with expertise in public transportation matters qualified so to act in the State to be selected from time to time by the Borrower and acceptable to the Trustee.

S&P

"S&P" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., and its successors and assigns, except that if such entity shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, then the term "S&P" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Director, with the approval of the Borrower.

2nd Tier Bonds

"2nd Tier Bonds" means the 2nd Tier Series 2000 Bonds and any Additional 2nd Tier Bonds.

2nd Tier Debt Service

"2nd Tier Debt Service" means, for any Fiscal Year, the sum of (1) the interest accruing during such Fiscal Year on all outstanding 2nd Tier Bonds or 2nd Tier Parity Debt, assuming that all outstanding serial 2nd Tier Bonds and 2nd Tier Parity Debt are retired as scheduled and that all outstanding term 2nd Tier Bonds are redeemed or paid from sinking fund payments as scheduled (except to the extent that such interest is to be paid from the proceeds of sale of any Bonds), (2) that portion of the principal amount or Accreted Value of all outstanding serial 2nd Tier Bonds or 2nd Tier Parity Debt maturing on the next succeeding Principal Payment Date that would have accrued during such Fiscal Year if such principal amount were deemed to accrue daily in equal amounts from the next preceding Principal Payment Date or during the year preceding the first Principal Payment Date, as the case may be, (3) that portion of the principal amount or Accreted Value of all outstanding term 2nd Tier Bonds or 2nd Tier Parity Debt required to be redeemed or paid on the next succeeding redemption date (together with the redemption premiums, if any, thereon) that would have accrued during such Fiscal Year if such principal amount (and redemption premiums) were deemed to accrue daily in equal

amounts from the next preceding redemption date or during the year preceding the first redemption date, as the case may be, (4) that portion of the 2nd Tier Loan Repayments required to be made at the times provided in the Agreement that would have accrued during such Fiscal Year if such 2nd Tier Loan Repayments were deemed to accrue daily in equal amounts from, in each case, the next preceding Bond Payment Date of interest or principal or the date of the pertinent contract, as the case may be; provided, that if any of such Bonds are Capital Appreciation Bonds, then the Accreted Value payment shall be deemed a principal payment and interest that is compounded and paid as Accreted Value shall be deemed due on the scheduled redemption or payment date of such Capital Appreciation Bond.

Notwithstanding the foregoing, with respect to a series of 2nd Tier Bonds or 2nd Tier Parity Bonds bearing interest at a variable rate, for which a fixed rate swap is not in place, the interest rate thereon for purposes of calculating Debt Service shall be assumed to be equal to the maximum interest rate permissible for such variable rate bonds pursuant to the legal documents under which they are issued.

### 2nd Tier Series 2000 Bonds

"2nd Tier Series 2000 Bonds" means the 2nd Tier Bonds authorized and issued pursuant to Section 2.02 hereof.

### 2nd Tier Debt Service Fund

"2nd Tier Debt Service Fund" means the fund by that name established pursuant to Section 5.04.

### 2nd Tier Debt Service Reserve Fund

"2nd Tier Debt Service Reserve Fund" means the fund by that name established pursuant to Section 5.04.

### 2nd Tier Loan Repayments

"2nd Tier Loan Repayments" means that portion of Senior Loan Repayments allocable to debt service with respect to the 2nd Tier Bonds.

### 2nd Tier Parity Debt

"2nd Tier Parity Debt" means any 2nd Tier Bond or any loan, note, advance, capital lease, or other debt payable from and secured by the Net Project Revenues and/or secured by the Collateral on a parity basis with the 2nd Tier Bonds.

### Senior Bonds

"Senior Bonds" means all 1st Tier Bonds and 2nd Tier Bonds.

Senior Debt

"Senior Debt" means all 1st Tier Loan Repayments. 2nd Tier Loan Repayments, and all other 1st Tier Parity Debt and 2nd Tier Parity Debt.

Senior Indenture

"Senior Indenture" means this Senior Indenture. as originally executed or as it may from time to time be supplemented, modified or amended by any Supplemental Indenture.

Senior Loan Repayments

"Senior Loan Repayments" means the payments so designated and required to be made by the Borrower pursuant to Section 4.2(a)(i) of the Agreement and evidenced by the Senior Notes.

Senior Note

"Senior Note" shall mean the Senior Promissory Note of the Borrower dated the Date of Delivery in the form attached to the Financing Agreement as Exhibit D-1, issued pursuant thereto and delivered to the Director as evidence of the obligations owed under the Financing Agreement with respect to the loan of the proceeds of the Senior Bonds as the same may be amended or supplemented from time to time.

Series

"Series," whenever used herein with respect to Senior Bonds, means all of the Senior Bonds designated as being of the same series, authenticated and delivered in a simultaneous transaction, regardless of variations in maturity, interest rate, redemption and other provisions, and any Senior Bonds thereafter authenticated and delivered upon transfer or exchange of or in lieu of or in substitution for (but not to refund) such Senior Bonds as herein provided.

Series 2000 Bonds

"Series 2000 Bonds" means the 1st Tier Series 2000 Bonds and the 2nd Tier Series 2000 Bonds.

State

"State" means the State of Nevada.

Subordinate Bonds; Subordinate Indenture

The terms "Subordinate Bonds" and "Subordinate Indenture" shall have the meanings assigned thereto in the recital paragraphs above.

Subordinate Debt

"Subordinate Debt" means the Subordinate Loan Repayments and any loan, bond, note, advance, capital lease, or other debt of the Borrower payable from and secured by the Net Project Revenues and/or secured by the Collateral on a parity basis with the Subordinate Loan Repayments.

Subordinate Debt Service

"Subordinate Debt Service" means, for any Fiscal Year, the sum of (1) the interest accruing during such Fiscal Year on all outstanding Subordinate Bonds or Subordinate Debt, assuming that all outstanding serial Subordinate Bonds and Subordinate Debt are retired as scheduled and that all outstanding term Subordinate Bonds are redeemed or paid from sinking fund payments as scheduled (except to the extent that such interest is to be paid from the proceeds of sale of any Bonds), (2) that portion of the principal amount or Accreted Value of all outstanding serial Subordinate Bonds or Subordinate Debt maturing on the next succeeding Principal Payment Date that would have accrued during such Fiscal Year if such principal amount were deemed to accrue daily in equal amounts from the next preceding Principal Payment Date or during the year preceding the first Principal Payment Date, as the case may be, (3) that portion of the principal amount or Accreted Value of all outstanding term Subordinate Bonds or Subordinate Debt required to be redeemed or paid on the next succeeding redemption date (together with the redemption premiums, if any, thereon) that would have accrued during such Fiscal Year if such principal amount (and redemption premiums) were deemed to accrue daily in equal amounts from the next preceding redemption date or during the year preceding the first redemption date, as the case may be, (4) that portion of the Subordinate Loan Repayments required to be made at the times provided in the Agreement that would have accrued during such Fiscal Year if such Subordinate Loan Repayments were deemed to accrue daily in equal amounts from, in each case, the next preceding Bond Payment Date of interest or principal or the date of the pertinent contract, as the case may be; provided, that if any of such Bonds are Capital Appreciation Bonds, then the Accreted Value payment shall be deemed a principal payment and interest that is compounded and paid as Accreted Value shall be deemed due on the scheduled redemption or payment date of such Capital Appreciation Bond.

Notwithstanding the foregoing, with respect to a series of Subordinate Bonds or Subordinate Debt bearing interest at a variable rate, for which a fixed rate swap is not in place, the interest rate thereon for purposes of calculating Debt Service shall be assumed to be equal to the maximum interest rate permissible for such variable rate bonds pursuant to the legal documents under which they are issued.

Subordinate Loan Repayments

"Subordinate Loan Repayments" means the payments required to be made by the Borrower pursuant to Section 4.2(a)(ii) of the Agreement and evidenced by the Subordinate Note.

Supplemental Indenture

"Supplemental Indenture" means any indenture hereafter duly authorized and entered into between the Director and the Trustee, supplementing, modifying or amending this Senior Indenture; but only if and to the extent that such Supplemental Indenture is specifically authorized hereunder.

Surplus Fund

"Surplus Fund" means the fund by that name established pursuant to Section 5.03.

Tax Certificate

"Tax Certificate" means the Tax Certificate and Agreement between the Borrower and the Director dated the Date of Delivery.

Tax-exempt

"Tax-exempt" means, with respect to any Series of Senior Bonds, that interest is excluded from gross income for federal income tax purposes whether or not such interest is includable as an item of tax preference or otherwise includable directly or indirectly for purposes of calculating tax liabilities, including any alternative minimum tax or environmental tax, under the Code.

Tier

"Tier" means all 1st Tier Bonds or 2nd Tier Bonds. respectively, as the context requires.

Trustee

"Trustee" means Wells Fargo Bank, N.A., a national banking association organized and existing under and by virtue of the laws of the United States having a Principal Corporate Trust Office in Portland, Oregon or its successor as Trustee hereunder as provided in Section 8.01.

SECTION 1.02   Content of Certificates and Opinions.  Every certificate or opinion provided for in this Senior Indenture with respect to compliance with any provision hereof shall include (1) a statement that the Person making or giving such certificate or opinion has read such provision and the definitions herein relating thereto; (2) a brief statement as to the nature and scope of the examination or investigation upon which the certificate or opinion is based; (3) a statement that, in the opinion of such Person, such Person has made or caused to be made such examination or investigation as is necessary to enable such Person to express an informed opinion with respect to the subject matter referred to in the instrument to which such Person's signature is affixed; (4) a statement of the assumptions upon which such certificate or opinion is based, and that such assumptions are reasonable; and (5) a statement as to whether, in the opinion of such Person, such provision has been complied with.

Any such certificate or opinion made or given by an officer of the Director or an officer or duly authorized representative of the Borrower may be based, insofar as it relates to legal, accounting or primary matter of the business of any of them. upon a certificate or opinion of or representation by counsel, an Accountant or a management consultant, unless such officer knows, or in the exercise of reasonable care should have known. that the certificate, opinion or representation with respect to the matters upon which such certificate or statement may be based, as aforesaid, is erroneous. Any such certificate or opinion made or given by counsel, an Accountant or a management consultant may be based, insofar as it relates to factual matters (with respect to which information is in the possession of the Director or the Borrower, as the case may be) upon a certificate or opinion of or representation by an officer of the Director or the Borrower, unless such counsel, Accountant or management consultant knows, or in the exercise of reasonable care should have known, that the certificate or opinion or representation with respect to the matters upon which such Person's certificate or opinion or representation may be based, as aforesaid, is erroneous. The same officer of the Director or the Borrower, or the same counsel or Accountant or management consultant, as the case may be, need not certify to all of the matters required to be certified under any provision of this Senior Indenture, but different officers, counsel, Accountants or management consultants may certify to different matters, respectively.

SECTION 1.03    Interpretation.

(A)    Unless the context otherwise indicates, words expressed in the singular shall include the plural and vice versa and the use of the neuter, masculine, or feminine gender is for convenience only and shall be deemed to mean and include the neuter, masculine or feminine gender, as appropriate.

(B)    Headings of articles and sections herein and the table of contents hereof are solely for convenience of reference, do not constitute a part hereof and shall not affect the meaning, construction or effect hereof.

(C)    All references herein to "Articles," "Sections" and other subdivisions are to the corresponding Articles, Sections or subdivisions of this Senior Indenture; the words "herein," "hereof," "hereby," "hereunder" and other words of similar import refer to this Senior Indenture as a whole and not to any particular Article, Section or subdivision hereof.

## ARTICLE II

## THE SENIOR BONDS

SECTION 2.01    Authorization of Bonds.    The Director has reviewed all proceedings heretofore taken relative to the authorization of the Senior Bonds and has found, as a result of such review, and hereby finds and determines that all acts, conditions and things required by law to exist, to have happened and to have been performed precedent to and in the issuance of the Senior Bonds do exist, have happened and have been performed in due time, form and manner as required by law, and that the Director is now duly authorized, pursuant to each and every requirement of the Act, to issue the Senior Bonds in the form and manner provided herein for the purpose of providing funds to finance certain costs of the acquisition,

construction, improving and/or equipping of the Project, and that the Senior Bonds shall be entitled to the benefit, protection and security provisions hereof.

SECTION 2.02    Terms of the Series 2000 Bonds; Interest Rates. The Series 2000 Bonds shall be designated as the "Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 1st Tier Series 2000" and "Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds 2nd Tier Series 2000," each Series thereof to bear such additional designation as may be necessary or appropriate to distinguish such Series from any other Series of Senior Bonds. The Series 2000 Bonds shall be issued in an aggregate amount as set forth in Section 3.01. The aggregate principal amount of the Senior Bonds which may be issued and outstanding under this Senior Indenture shall not be limited in amount, subject to the provisions of Sections 2.11 and 2.12 hereof.

The Current Interest Bonds shall be in substantially the forms set forth in Exhibits A1 and B1 hereto, will bear interest at the annual rates set forth below, payable semi-annually on each January 1 and July 1, commencing January 1, 2001, and will mature, subject to prior redemption, on January 1 in the years set forth below. The Capital Appreciation Bonds shall be issued in substantially the form in Exhibit C hereto, and shall not bear current interest; each Capital Appreciation Bond shall accrete in value from its Initial Denominational Amount on the date of issuance thereof to its stated maturity value at maturity thereof, at a compounded interest rate which shall not exceed 5.97% per annum, and shall be payable only upon maturity or prior redemption thereof.   The interest on the Capital Appreciation Bonds shall be compounded commencing on January 1, 2001, and thereafter on January 1 and July 1 in each year.  Interest on the Bonds shall be calculated on the basis of a 360-day year consisting of twelve 30-day months.

1st Tier Series 2000

Current Interest Bonds

| Maturity (January 1) | Amount | Interest Rate |
|---|---|---|
| 2032 | $68,890,000 | 5.625% |
| 2034 | 55,930,000 | 5.625% |
| 2040 | 227,885,000 | 5.375% |

Capital Appreciation Bonds

| Maturity (January 1) | Initial Denominational Amount | Maturity Value |
|---|---|---|
| 2007 | $2,469,771.90 | $ 3,370,000 |
| 2008 | 2,698,210.20 | 3,885,000 |
| 2009 | 2,750,189.20 | 4,180,000 |
| 2010 | 4,435,715.60 | 7,130,000 |
| 2011 | 4,441,743.90 | 7,590,000 |
| 2012 | 4,093,179.00 | 7,450,000 |
| 2013 | 5,191,959.70 | 10,085,000 |
| 2014 | 4,679,888.40 | 9,720,000 |
| 2015 | 4,454,133.60 | 9,870,000 |
| 2016 | 5,119,488.00 | 12,120,000 |
| 2017 | 4,826,098.80 | 12,165,000 |
| 2018 | 4,475,166.20 | 12,020,000 |
| 2019 | 5,037,945.90 | 14,430,000 |
| 2020 | 4,745,820.00 | 14,480,000 |
| 2021 | 4,415,843.60 | 14,360,000 |
| 2022 | 4,930,761.10 | 17,065,000 |
| 2023 | 4,607,171.80 | 16,940,000 |
| 2024 | 4,301,407.80 | 16,805,000 |
| 2025 | 4,697,584.20 | 19,505,000 |
| 2026 | 4,250,265.60 | 18,760,000 |
| 2027 | 3,940,219.00 | 18,490,000 |
| 2028 | 4,238,407.40 | 21,095,000 |
| 2029 | 3,942,246.40 | 20,810,000 |

2nd Tier Series 2000

Current Interest Bonds

| Maturity (January 1) | Amount | Interest Rate |
|---|---|---|
| 2023 | $ 12,600,000 | 7.25% |
| 2030 | 29,900,000 | 7.375% |
| 2040 | 106,700,000 | 7.375% |

SECTION 2.03    Payments on the Senior Bonds.  (a) The Current Interest Bonds shall bear interest from their Date of Delivery and shall continue to bear interest until their respective maturity; provided, that if, as shown by the records of the Trustee, interest on such Bonds shall be in default, Bonds issued in exchange for Bonds surrendered for transfer or exchange shall bear interest from the last date to which interest has been paid in full or duly

provided for on the Bonds, or, if no interest has been paid or duly provided for on such Bonds, from their Date of Delivery. Current Interest Bonds of each series shall bear interest from the Interest Payment Date last preceding the date of registration thereof (unless such Bonds are registered prior to the first Interest Payment Date, in which event such Bonds shall bear interest from its Date of Delivery, or unless registered after the Record Date and on or before an Interest Payment Date, in which event it shall bear interest from such Interest Payment Date), payable on each Interest Payment Date. The Capital Appreciation Bonds shall not bear interest.

(b)     Payment of the interest on the Current Interest Bonds shall be made to the person appearing on the bond registration books of the Bond Registrar as the holder thereof on the Record Date, such interest to be paid by the Paying Agent to such holder by check mailed on the Interest Payment Date, to such holder's address as it appears on the registration books or at such other address as has been furnished to the Bond Registrar in writing by such holder not later than the Record Date except that, if and to the extent that there shall be a default in the payment of the interest due on such Interest Payment Date, such defaulted interest shall be paid to the holders in whose name any such Bonds are registered at the close of business on the tenth day next preceding the date of payment of such defaulted interest. A holder of $1,000,000 or more in principal amount of Current Interest Bonds may, upon written direction to the Trustee delivered no later than the Record Date, be paid interest by wire transfer. Any such written request shall remain in effect until rescinded in writing by such holder. If any Interest Payment Date is not a Business Day, such interest shall be paid on the preceding Business Day. Interest on the Bonds shall be computed upon the basis of a 360-day year, consisting of twelve 30-day months.

(c)     Payment of principal on the Current Interest Bonds and Accreted Value of Capital Appreciation Bonds shall be made, upon presentation and surrender thereof at the Principal Corporate Trust Office, to the person appearing on the bond registration books of the Bond Registrar as the holder thereof on the Record Date, such amounts to be paid by the Paying Agent to such holder by check mailed on each Principal Payment Date, to such holder's address as it appears on the registration books or at such other address as has been furnished to the Bond Registrar in writing by such holder not later than the Record Date except that, if and to the extent that there shall be a default in the payment of the amounts due on such Principal Payment Date, such defaulted amounts shall be paid to the holders in whose name any such Bonds are registered at the close of business on the tenth day next preceding the date of payment of such defaulted amounts. A holder of $1,000,000 or more in principal amount of Current Interest Bonds or $1,000,000 in Initial Denominational Amount of Capital Appreciation Bonds may, upon written direction to the Trustee delivered no later than the Record Date, be paid principal by wire transfer. Any such written request shall remain in effect until rescinded in writing by such holder. Any premium on the Bonds shall be payable upon surrender thereof in lawful money of the United States of America at the Corporate Trust Office of the Trustee.

SECTION 2.04     Book Entry. (a) The Senior Bonds will be issued in fully registered form and initially registered in the name of Cede & Co., as nominee of The Depository Trust Company, New York, New York ("DTC"), and immobilized in the custody of DTC. One fully registered Senior Bond for the original principal amount or Initial Denominational Amount of each maturity of each series of the Senior Bonds will be registered to Cede & Co. Beneficial owners of Senior Bonds will not receive physical delivery of Senior Bonds. Individual purchases of Senior Bonds may be made in book-entry form only in Authorized Denominations.

Payments of principal of, premium, if any, and interest on the Senior Bonds will be made to DTC or its nominee as registered owner of the Senior Bonds on the applicable payment date.

Transfer of the payments of the principal of, premium, if any, and interest on the Senior Bonds to the participants of DTC, which include securities brokers and dealers, banks, trust companies, clearing corporations and certain other organizations (the "Participants") is the responsibility of DTC. Transfer of the payments of the principal of, premium, if any, and interest on the Senior Bonds to beneficial owners of the Senior Bonds by the Participants is the responsibility of the Participants and other nominees of such beneficial owners.

Transfer of ownership interest in the Senior Bonds will be made by DTC and its Participants, acting as nominees of the beneficial owners of the Senior Bonds, in accordance with rules specified by DTC and its Participants. Neither the Director nor the Trustee makes any assurances that DTC, its Participants or other nominees of the beneficial owners of the Senior Bonds will act in accordance with such rules or on a timely basis. For every transfer and exchange of beneficial ownership interest in the Senior Bonds, the beneficial owner may be charged sums sufficient to cover any tax, fee or other governmental charge that may be imposed in relation to it.

The Director and the Trustee disclaim any responsibility or obligations to the participants or the beneficial owners with respect to (i) the accuracy of any records maintained by DTC or any participant; (ii) the payment by DTC or any participant of any amount due to any beneficial owner in respect of the principal of, premium, if any, and interest on the Senior Bonds; (iii) the delivery by DTC or any participant of any notice to any beneficial owner which is required or permitted under the terms of this Senior Indenture to be given to bondholders; (iv) the selection of the beneficial owners to receive payment in the event of any partial redemption of the bonds; or (v) any consent given or other action taken by DTC as bondholder.

So long as Cede & Co. is the registered owner of the Senior Bonds, as nominee of DTC, references in this Senior Indenture to the Owners of the Senior Bonds will mean Cede & Co. and will not mean the beneficial owners of the Senior Bonds.

(b)      Replacement Bonds (the "Replacement Bonds") will be issued directly to beneficial owners of Senior Bonds rather than to DTC, or its nominee, but only in the circumstances described in this paragraph and in the event that:

(1)      DTC determines not to continue to act as securities depository for the Senior Bonds;

(2)      The Trustee or the Director has advised DTC of its determination that DTC is incapable of discharging its duties; or

(3)      The Trustee or the Director, has determined that it is in the best interests of the beneficial owners of the Senior Bonds or the Director not to continue the book-entry system of transfer.

Upon occurrence of the events described in clauses (1) or (2), the Trustee will attempt to locate another qualified securities depository. If DTC makes the determination described in clause (1)

and the Trustee fails to locate another qualified securities depository to replace DTC, the Director will execute and the Trustee, will authenticate and deliver to the Participants the Replacement Bonds (substantially in the form set forth in the corresponding Exhibit to this Senior Indenture) to which the Participants are entitled. In the event the Trustee or the Director makes the determination described in clauses (2) or (3) (the Trustee and the Director undertake no obligation to make any investigation to determine the occurrence of any events that would permit the Trustee or the Director to make any such determination) and, in the case of the determination under clause (2), the Trustee has failed to locate another qualified securities depository and has made provisions to notify the beneficial owners of the Senior Bonds by mailing an appropriate notice to DTC, the Director will execute and the Trustee will authenticate and deliver to the participants the appropriate Replacement Bonds to which the Participants are entitled. The Trustee is entitled to rely on the records provided by DTC as to the Participants entitled to receive Replacement Bonds. The principal of, premium, if any, and interest on the Replacement Bonds will be payable as provided herein, and the Replacement Bonds will be transferable and exchangeable in accordance with this Senior Indenture.

SECTION 2.05    Execution of Senior Bonds.    The Senior Bonds shall be executed in the name and on behalf of the Director with a manual or facsimile signature. The Senior Bonds shall then be delivered to the Trustee as authenticating agent for authentication by it. In case any of the officers who shall have signed or attested any of the Senior Bonds shall cease to be such officer or officers before the Senior Bonds so signed or attested shall have been authenticated or delivered by the Trustee as authenticating agent or issued by the Director, such Senior Bonds may nevertheless be authenticated, delivered and issued and, upon such authentication, delivery and issue, shall be as binding upon the Director as though those who signed and attested the same had continued to be such officers of the Director, and also any Senior Bonds may be signed and attested on behalf of the Director by such persons as at the actual date of execution of such Senior Bonds shall be the proper officers of the Director although at the nominal date of such Senior Bonds any such person shall not have been such officer of the Director.

Only such of the Senior Bonds as shall bear thereon a certificate of authentication substantially in the form set forth in the corresponding Exhibit to this Senior Indenture, with the manual signature of the Trustee as authenticating agent, shall be valid or obligatory for any purpose or entitled to the benefits of this Senior Indenture, and such certificate of the Trustee shall be conclusive evidence that the Senior Bonds so authenticated have been duly executed, authenticated and delivered hereunder and are entitled to the benefits of this Senior Indenture.

SECTION 2.06    Transfer of Bonds.    Any Senior Bond may be transferred, upon the books required to be kept pursuant to the provisions of Section 2.08, by the person in whose name it is registered, in person or by such person's duly authorized attorney, upon surrender of such registered Senior Bond for cancellation, accompanied by delivery of a written instrument of transfer, duly executed in a form approved by the Trustee. Such transfer shall be made by the Trustee only in compliance with any restrictions set forth on such Senior Bond.

Whenever any Bond or Bonds shall be surrendered for transfer, the Director shall execute and the Trustee shall authenticate and deliver a new Senior Bond or Bonds for a like aggregate principal amount in an Authorized Denomination. The Trustee shall require the

Bondholder requesting such transfer to pay any tax or other governmental charge required to be paid with respect to such transfer.

SECTION 2.07     Exchange of Senior Bonds.  Senior Bonds may be exchanged at the Principal Corporate Trust Office of the Trustee, for a like aggregate principal amount (or, in the case of a Capital Appreciation Bond, a like Accreted Value) of Senior Bonds of like Series in Authorized Denominations.  The Trustee shall require the Bondholder requesting such exchange to pay any tax or other governmental charge required to be paid with respect to such exchange.

SECTION 2.08     Bond Register.  The Trustee will keep or cause to be kept at its Principal Corporate Trust Office sufficient books for the registration and transfer of the Senior Bonds, which shall at all times be open to inspection during regular business hours by the Director; and, upon presentation for such purpose, the Trustee shall, under such reasonable regulations as it may prescribe, register or transfer or cause to be registered or transferred, on such books, Bonds as hereinbefore provided.

SECTION 2.09     Temporary Bonds.  The Senior Bonds may be issued in temporary form exchangeable for definitive Senior Bonds when ready for delivery.  Any temporary Senior Bond may be printed, lithographed or typewritten, shall be in an Authorized Denomination, shall be in fully registered form without coupons and may contain such reference to any of the provisions of this Senior Indenture as may be appropriate.  Every temporary Senior Bond shall be executed by the Director and be authenticated by the Trustee as authenticating agent upon the same conditions and in substantially the same manner as the definitive Senior Bonds.  If the Director issues temporary Senior Bonds it will execute and deliver definitive Senior Bonds as promptly thereafter as practicable, and thereupon the temporary Senior Bonds may be surrendered, for cancellation, in exchange therefor at the Principal Corporate Trust Office of the Trustee and the Trustee shall authenticate and deliver in exchange for such temporary Senior Bonds an equal aggregate principal amount of definitive Bonds, of like Series, in Authorized Denominations. Until so exchanged, the temporary Bonds shall be entitled to the same benefits under this Senior Indenture as definitive Senior Bonds authenticated and delivered hereunder.

SECTION 2.10     Senior Bonds Mutilated, Lost, Destroyed or Stolen.  If any Senior Bond shall become mutilated, the Director, at the expense of the Bondholder, shall execute, and the Trustee shall thereupon authenticate and deliver, a new Senior Bond of like Series and tenor in exchange and substitution for the Senior Bond so mutilated, but only upon surrender to the Trustee of the Senior Bond so mutilated.  Every mutilated Senior Bond so surrendered to the Trustee shall be cancelled by it and upon request delivered to the Director.  If any Senior Bond shall be lost, destroyed or stolen, evidence of such loss, destruction or theft may be submitted to the Director and the Trustee and, if such evidence be satisfactory to both and indemnity satisfactory to them shall be given, the Director, at the expense of the Holder, shall execute, and the Trustee shall thereupon authenticate and deliver, a new Senior Bond of like tenor and Series in lieu of and in substitution for the Senior Bond so lost, destroyed or stolen (or if any such Senior Bond shall have matured or shall be about to mature, instead of issuing a substitute Senior Bond, the Trustee may pay the same without surrender thereof). The Director may require payment by the Holder of a sum not exceeding the actual cost of preparing each new

Senior Bond issued under this Section and of the expenses which may be incurred by the Director and the Trustee in the premises. Any Senior Bond issued under the provisions of this Section in lieu of any Senior Bond alleged to be lost, destroyed or stolen shall constitute an original additional contractual obligation on the part of the Director whether or not the Senior Bond so alleged to be lost, destroyed or stolen be at any time enforceable by anyone, and shall be entitled to the benefits of this Senior Indenture with all other Senior Bonds secured by this Senior Indenture.

SECTION 2.11 . Conditions for the Issuance of Additional Senior Bonds. The Director may, in the Director's sole discretion, at any time issue Additional Senior Bonds payable from the Revenues as provided herein and secured by a pledge of and charge and lien upon the Revenues as provided herein, but only subject to the following specific conditions, which are hereby made conditions precedent to the issuance of any such Additional Senior Bonds:

(A) The Director shall be in compliance with all agreements and covenants contained herein.

(B) . The issuance of such Additional Senior Bonds shall have been authorized pursuant to the Act and shall have been provided for by Supplemental Indenture which shall specify such other provisions as are necessary or appropriate and not inconsistent herewith, including, but not limited to, the following:

(1) The purpose for which such Additional Senior Bonds are to be issued; provided that such Additional Senior Bonds shall be applied solely for the purpose of (i) financing completion of the Initial Project or of any substitutions, additions, modifications or improvements to the Initial Project, including payment of all costs incidental to or connected with such financing, (ii) financing additions to the Project, including payment of all costs incidental to or connected with such financing, and/or (iii) refunding any Senior Bonds. Subordinate Bonds or Other Debt then Outstanding, including payment of all costs incidental to or connected with such refunding;

(2) . The authorized principal amount and designation of such Additional Senior Bonds and whether such Bonds are secured by the same pledge, charge and lien as the 1st Tier Bonds or 2nd Tier Bonds;

(3) The date and the maturity dates of and the sinking installment payment dates, if any, for such Additional Senior Bonds; the interest rate or rates or method of determining such rates (which may be fixed or variable); the interest payment dates; the denominations; the redemption premiums and terms, if any;

(4) The amounts, if any, to be deposited from the proceeds of sale of such Additional Senior Bonds in the Construction Fund or the Revenue Fund, and any Debt Service Reserve Fund or Funds with respect to such Additional Senior Bonds (including any surety reserve bonds, letters of credit or insurance policies as provided in Section 5.04); and

(5)     The forms of such Additional Senior Bonds.

(C)     The Agreement shall have been amended (or an additional Financing Agreement shall have been executed), if necessary, so as to increase the Senior Loan Repayments by an amount at least sufficient to pay the interest on, Accreted Value or principal and premium, if any, of such Additional Senior Bonds as the same become due.

(D)     The Director and the Trustee shall have received the Certificate of the Borrower described in Section 5.6(h) of the Financing Agreement.

SECTION 2.12   ·Procedure for the Issuance of Additional Senior Bonds.   At any time after the sale of any Additional Senior Bonds in accordance with the Act, the Director shall execute such Additional Senior Bonds for issuance hereunder and shall deliver them to the Trustee, and thereupon such Additional Senior Bonds shall be authenticated and delivered by the Trustee to the purchaser thereof upon the written request of the Director, but only upon receipt by the Trustee of the following documents or money or securities. all of such documents dated or certified, as the case may be, as of the Date of Delivery of such Additional Senior Bonds by the Trustee (unless the Director shall direct the Trustee to accept any of such documents bearing a prior date):

(A)     A certified copy of the Supplemental Indenture authorizing the issuance of such Additional Senior Bonds;

(B)     A written Request of the Director as to the delivery of such Additional Senior Bonds;

(C)     An Opinion of Bond ·Counsel to the effect that (1) the Director has the right and power under the Act to execute and deliver the ·Supplemental .Indenture and the Supplemental Indenture has been duly and lawfully executed and delivered by the Director, is in full force and effect and is valid and binding upon the Director (except as enforcement may be limited by bankruptcy, insolvency, reorganization and other similar laws relating to the enforcement of creditors' rights and by equitable principles), (2) the Supplemental Indenture creates the valid pledge of and charge and lien upon the Revenues which it purports to create as provided therein, subject to the application, thereof to the purposes and on the conditions permitted hereby, (3) such Additional Senior Bonds are valid and binding special obligations of the Director (except as enforcement may be limited by bankruptcy, insolvency, reorganization and other similar laws relating to the enforcement of creditors' rights and by equitable principles) and entitled to the benefits of the Act and hereof, and such Additional Senior Bonds have been duly and validly authorized, executed, issued and delivered in accordance with the Act and herewith, (4) the amendments to the Financing Agreement, if any, required by Section 2.11(C) hereof have been duly authorized, executed and delivered, and (5) the delivery of such Additional Senior Bonds will not have an adverse effect on the Tax-exempt status of interest on any Senior Bonds; and

(D)     A Certificate of the Director containing such statements as may be reasonably necessary, as determined by Bond Counsel, to show compliance with the conditions for the issuance of such Additional Senior Bonds contained herein.

SECTION 2.13     Intercreditor Arrangements. In the event the Borrower issues or arranges for the issuance of 1st Tier Parity Debt or 2nd Tier Parity Debt, the Trustee is authorized and directed, upon written request of the Borrower but only with the written consent of the Insurer, to enter into an intercreditor agreement with any Other Lender relating to such 1st Tier Parity Debt or 2nd Tier Parity Debt satisfactory to the Trustee.

ARTICLE III

ISSUANCE OF SERIES 2000 BONDS; CONSTRUCTION FUND

SECTION 3.01     Issuance of the Series 2000 Bonds. At any time after the execution and delivery of this Senior Indenture or from time to time thereafter, upon the execution of the Series 2000 Bonds by the Director and delivery thereof to the Trustee, as hereinabove provided, and without any further action on the part of the Director, the Trustee as authenticating agent shall upon request of the Director authenticate and deliver the Series 2000 Bonds in an aggregate principal or Initial Denominational Amount not exceeding $600,648,217.30, including $352,705,000 aggregate principal amount of Current Interest 1st Tier Bonds and $98,743,217.30 Initial Denominational Amount of Capital Appreciation 1st Tier Bonds and $149,200,000 aggregate principal amount of Current Interest 2nd Tier Bonds.

SECTION 3.02     Establishment of Construction Fund, Contingency Fund, Capitalized Interest Fund, and Costs of Issuance Fund. There is hereby created and established with the Trustee a Construction Fund, a Contingency Fund, a Capitalized Interest Fund and a Costs of Issuance Fund. Accounts within the Costs of Issuance Fund and the Capitalized Interest Fund shall be established and designated for each Series of Senior Bonds. Proceeds from the sale of each Series of Senior Bonds shall be deposited into the appropriate corresponding account. The Director shall pay or cause to be paid to the Trustee the proceeds from the sale by the Director of the Senior Bonds, and the Trustee shall deposit such Funds as provided in Section 5.02 hereof.

The moneys in the Cost of Issuance Fund shall be held by the Trustee in trust and applied to the payment of Costs of Issuance, upon a requisition filed with the Trustee by the Borrower or the Director, pursuant to Section 3.3 of the Agreement. At such time as the Borrower determines in a written Certificate to the Trustee that all Costs of Issuance have been paid, or on September 1, 2004, whichever is earlier, any money remaining in the Costs of Issuance Fund shall be transferred to the Construction Fund.

SECTION 3.03     Use of Moneys in Construction Fund, Contingency Fund and Capitalized Interest Fund. (a) The Trustee shall make payments from the Construction Fund to pay the Cost of the Project upon receipt by the Trustee of requisitions (upon which the Trustee and the Director shall rely and shall be protected in relying) signed by an Authorized Representative of the Borrower and conforming to the requirements of Section 3.3 of the Agreement.

(b)     The moneys in the Contingency Fund shall be disbursed by the Trustee upon receipt of a requisition signed by an Authorized Representative of the Borrower and conforming to the requirements of Section 3.3 of the Agreement. The Trustee shall create an

account within the Contingency Fund called the "Indemnification Account," into which the Trustee shall deposit $750,000 from the initial deposit into the Contingency Fund. Notwithstanding any other provision of this Senior Indenture, moneys in the Indemnification Account of the Contingency Fund shall be used by the Borrower to make any payments required by Section 4.2(c) or 9.3 of the Agreement if other sources of funds are not available for such purpose, subject to receipt of an Approving Opinion, and may not be used for any other purpose without the written consent of the Director.

(c)     The moneys in the 1st Tier Account of the Capitalized Interest Fund shall be disbursed by the Trustee as necessary to pay interest with respect to the 1st Tier Bonds and the moneys in the 2nd Tier Account of the Capitalized Interest Fund shall be disbursed as necessary to pay interest with respect to 2nd Tier Bonds as required herein and before the use of any other moneys hereunder for such payments.

(d)     If an Event of Default occurs and the payment of principal, Accreted Value and interest of any Series of the Bonds is accelerated, the Trustee will, to the extent necessary, use moneys in the Construction Fund and the Contingency Fund to make payments on such Bonds, but only after payment of all amounts owed under the Design-Build Agreement to pay for work completed prior to the giving of notice to the Contractors of the occurrence of such Event of Default.

SECTION 3.04     Retention of Requisitions.  For four years from the date on which all of the Bonds are redeemed or retired thereof the Trustee shall retain in its possession all requisitions received by it as in the Senior Indenture required, subject to the inspection of the Director, its agents and representatives, the Borrower and the Bondholders and their representatives at all reasonable times at its Principal Corporate Trust Office.

SECTION 3.05     Completion of Project.  Upon the Completion Date, the Trustee shall be furnished with the certificate of an Authorized Representative of the Borrower described in Section 3.5 of the Agreement.  Thereupon, any balance in the Construction Fund and Contingency Fund (other than the amount held in the Indemnification Account described in Section 3.03(b)) not reserved for the payment of the Cost of the Project or required to make payment of amounts owed under the Design-Build Agreement shall be deposited into the General Fund.

ARTICLE IV

REDEMPTION AND PURCHASE OF BONDS

SECTION 4.01     Terms of Redemption.  The Bonds of any Series are subject to redemption if and to the extent the Borrower is entitled to make and makes, or is required to make, a prepayment pursuant to Articles IV or VIII of the Agreement.  All such prepayments shall be deposited in the Redemption Account, which account the Trustee is hereby directed to establish and hold in trust.  The Director shall not call the Bonds of any Series for optional redemption, and the Trustee shall not give notice of any such redemption, unless the Borrower has in writing so directed such redemption and payment has been made of all required installments of the Borrower's obligations under the Agreement.

The Bonds shall be redeemed upon the following terms:

(1)     Optional Redemption Upon Occurrence of Extraordinary Events. (a) *Redemption from Proceeds of Eminent Domain.* The Senior Bonds may be redeemed in whole or in part, as described below, at the option of the Director upon the written direction of the Borrower on any Interest Payment Date at a redemption price equal to the principal amount thereof (with respect to current interest bonds) and in the case of Capital Appreciation Bonds, the Accreted Value thereof, in either case, with a premium of ten percent (10%) of such principal amount or Accreted Value, as the case may be, plus accrued interest to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or any portion of the Project is condemned or taken by eminent domain to such extent that, in the opinion of an Independent Engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director. it is not practicable or desirable to rebuild, repair or restore the Project or a portion thereof within a period of six consecutive months following such condemnation or taking and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(b) *Redemption from Proceeds of Property Casualty Insurance.* The Senior Bonds may be redeemed in whole or in part, as described below, at the option of the Director upon the written direction of the Borrower on any Interest Payment Date at a redemption price equal to the principal amount thereof (with respect to current interest bonds) and in the case of Capital Appreciation Bonds, the Accreted Value thereof, in either case, without premium, plus accrued interest to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or any portion of the Project is damaged or destroyed to such extent that, in the opinion of an Independent Engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director (1) it is not practicable or desirable to rebuild, repair or restore the Project or a portion thereof within a period of six consecutive months following such damage or destruction and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months, or (2) the cost of restoration of the Project or a portion thereof would substantially exceed the Net Proceeds of insurance carried thereon; or

(2)     Optional Redemption. The Current Interest 1st Tier Series 2000 Bonds maturing on January 1, 2032 and January 1, 2034 shall be subject to optional redemption by the Director, upon the written direction of the Borrower, in whole or in part, in such order as may be designated by the Borrower, at any time on and after the dates and at the redemption prices set forth below, together with accrued interest, if any, to the redemption date:

| Redemption Period (both dates inclusive) | Redemption Price |
|---|---|
| January 1, 2010 through December 31, 2010 | 102% |
| January 1, 2011 through December 31, 2011 | 101 |
| January 1, 2012 and thereafter | 100 |

The Current Interest 1st Tier Series 2000 Bonds maturing on January 1, 2040 shall be subject to optional redemption by the Director, upon the written direction of the Borrower, in whole or in part, in such order as may be designated by the Borrower, at any time on and after January 1, 2010 and at the principal amount thereof, together with accrued interest, if any, to the redemption date, without premium.

The 2nd Tier Series 2000 Bonds shall be subject to optional redemption by the Director, upon the written direction of the Borrower, in whole or in part, in such order as may be designated by the Borrower, at any time on or after the dates and at the redemption prices set forth below, together with accrued interest, if any, to the redemption date:

| Redemption Period (both dates inclusive) | Redemption Price |
|---|---|
| January 1, 2010 through December 31, 2010 | 102% |
| January 1, 2011 through December 31, 2011 | 101 |
| January 1, 2012 and thereafter | 100 |

Notwithstanding any other provisions of this Senior Indenture or the Financing Agreements, optional redemption of the Series 2000 Bonds shall occur proportionately between 1st Tier Series 2000 Bonds and 2nd Tier Series 2000 Bonds; provided, however, such restriction shall not apply to any redemption in connection with the refunding of 1st Tier Series 2000 Bonds or 2nd Tier Series 2000 Bonds meeting the debt service savings test contained in Section 5.6(h)(v)(B)(I) of the Financing Agreement and so long as the refunding bonds do not have maturity dates earlier than the Series 2000 Bonds being redeemed.

(3)    Mandatory Sinking Fund Redemption. The 1st Tier Series 2000 Current Interest Bonds maturing on January 1, 2032, are subject to mandatory sinking fund redemption on January 1 of the years and in the amounts set forth below at a redemption price equal to the principal amount of the 1st Tier Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|---|---|
| 2030 | $20,145,000 |
| 2031 | 23,860,000 |
| 2032 | 24,885,000 |

The 1st Tier Series 2000 Current Interest Bonds maturing on January 1, 2034, are subject to mandatory sinking fund redemption on January 1 of the years and in the

amounts set forth below at a redemption price equal to the principal amount of the 1st Tier Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|------|--------|
| 2033 | $25,950,000 |
| 2034 | 29,980,000 |

The 1st Tier Series 2000 Current Interest Bonds maturing on January 1, 2040, are subject to mandatory sinking fund redemption on January 1 of the years and in the amounts set forth below at a redemption price equal to the principal amount of the 1st Tier Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|------|--------|
| 2035 | $31,430.000 |
| 2036 | 32,755.000 |
| 2037 | 36,915,000 |
| 2038 | 38,355,000 |
| 2039 | 39,860.000 |
| 2040 | 48,570.000 |

The 2nd Tier Series 2000 Current Interest Bonds maturing on January 1, 2023, are subject to mandatory sinking redemption on January 1 of the years and in the amounts set forth below at a redemption price equal to the principal amount of the 2nd Tier Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|------|--------|
| 2016 | $ 600,000 |
| 2017 | 600,000 |
| 2018 | 600,000 |
| 2019 | 1,500,000 |
| 2020 | 1,700,000 |
| 2021 | 1,700,000 |
| 2022 | 2,900,000 |
| 2023 | 3,000,000 |

The 2nd Tier Series 2000 Current Interest Bonds maturing on January 1, 2030, are subject to mandatory sinking redemption on January 1 of the years and in the amounts set forth below at a redemption price equal to the principal amount of the 2nd Tier Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|------|--------|
| 2024 | $3,200,000 |
| 2025 | 3,000,000 |
| 2026 | 3,700,000 |
| 2027 | 3,900,000 |
| 2028 | 5,000,000 |
| 2029 | 5,300,000 |
| 2030 | 5,800,000 |

The 2nd Tier Series 2000 Current Interest Bonds maturing on January 1, 2040, are subject to mandatory sinking redemption on January 1 of the years and in the amounts set forth below at a redemption price equal to the principal amount of the 2nd Tier Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|------|--------|
| 2031 | $ 7,100,000 |
| 2032 | 7,500,000 |
| 2033 | 8,000,000 |
| 2034 | 9,500,000 |
| 2035 | 10,100,000 |
| 2036 | 10,700,000 |
| 2037 | 11,500,000 |
| 2038 | 12,100,000 |
| 2039 | 12,800,000 |
| 2040 | 17,400,000 |

If any Series of Senior Bonds is optionally redeemed in part pursuant to Section 4.01(1) or (2), the appropriate mandatory sinking fund redemption schedule shall be proportionately reduced.

SECTION 4.02    Selection of Bonds for Redemption.   Whenever provision is made in this Senior Indenture for the redemption of less than all of the Senior Bonds of any Series, the Trustee shall select the Senior Bonds to be redeemed from all Senior Bonds of such Series or such given portion thereof not previously called for redemption in such manner as may be designated by the Borrower or by lot in any manner which the Trustee in its sole discretion shall deem appropriate and fair, provided that all Senior Bonds remaining Outstanding shall be in Authorized Denominations.

SECTION 4.03    Notice of Redemption.

(A)   Notice of redemption shall be mailed not less than thirty (30) days nor more than sixty (60) days before such redemption date to each Bondholder at its address on the registration books maintained by the Trustee.   Each notice of redemption shall state the redemption date, the place or places of redemption, if less than all of the Senior Bonds are to be redeemed, the distinctive number of the Senior Bonds to be redeemed, the Series of Senior Bonds to which such notice applies, and in the case of Senior Bonds to be redeemed in part only,

the respective portions of the principal amount thereof to be redeemed. Each such notice shall also state that on said date there will become due and payable on each of said Senior Bonds the principal thereof or of said specified portion of the principal thereof in the case of a Senior Bond to be redeemed in part only, and that from and after such redemption date interest thereon shall cease to accrue, and shall require that such Senior Bonds be then surrendered. Neither failure to receive such notice nor any defect therein shall affect the sufficiency of such redemption. For a redemption under Section 4.01 with premium, no notice may be given unless the Borrower has previously deposited the amount of premium with the Trustee.

(B)     Notice of redemption of a Series of Senior Bonds shall be given by the Trustee, at the expense of the Borrower, for and on behalf of the Director.

SECTION 4.04    Partial Redemption of Bonds. Upon surrender of any Senior Bond redeemed in part only, the Director shall execute and the Trustee as authenticating agent shall authenticate and deliver to the Bondholder thereof, at the expense of the Borrower, a new Senior Bond or Senior Bonds of Authorized Denominations equal in aggregate principal amount to the unredeemed portion of the Senior Bond surrendered.

SECTION 4.05    Effect of Redemption. Notice of redemption having been duly given as aforesaid, and moneys for payment of the redemption price of, together with interest accrued to the date fixed for redemption of, the Bonds (or portions thereof) of any Series so called for redemption being held by the Trustee, on the redemption date designated in such notice, such Bonds (or portions thereof) so called for redemption shall become due and payable, interest on the Bonds so called for redemption shall cease to accrue, said Bonds (or portions thereof) shall cease to be entitled to any benefit or security under this Senior Indenture, and the Bondholder shall have no rights in respect thereof, except to receive payment of said principal and interest accrued to the date fixed for redemption from such moneys held by the Trustee for such purpose, and such moneys shall be pledged to such payment.

ARTICLE V

REVENUES; FUNDS AND ACCOUNTS;
PAYMENT OF PRINCIPAL AND INTEREST

SECTION 5.01    Pledge and Assignment; Revenue Fund.

(A)     Subject only to the provisions of this Senior Indenture permitting the application thereof for the purposes and on the terms and conditions set forth herein, all of the Revenues and any other amounts (including proceeds of the sale of Bonds) held in any fund or account established pursuant to this Senior Indenture and the Senior Note (excepting the Indemnification Account of the Contingency Fund created by Section 3.03(b) and the Rebate Fund created by Section 5.06) are hereby pledged to secure the payment of the principal of and interest on the Senior Bonds in accordance with their terms and the provisions of this Senior Indenture. Said pledge shall constitute a lien on and security interest in such assets and shall attach, be perfected and be valid and binding from and after delivery of the Senior Bonds, without any physical delivery thereof or further act.

(B)    The 1st Tier Bonds authorized and issued under the provisions of this Senior Indenture shall be secured by a pledge of and a first lien on Revenues. The Director hereby represents and states that it has not previously created any pledge, charge or lien on or any security interest in the Revenues prior to or on a parity with the lien on the 1st Tier Bonds, and the Director covenants that, until all the 1st Tier Bonds authorized and issued under the provisions of this Senior Indenture and the interest thereon shall have been paid or are deemed to have been paid, it will not, except as specifically provided in this Senior Indenture, grant any parity pledge of or any security interest in the Revenues or any of the other security which is pledged or given pursuant to this Senior Indenture, or create or permit to be created any charge or lien thereon or any security interest therein ranking prior to or on a parity with the charge or lien of the 1st Tier Bonds from time to time Outstanding under this Senior Indenture.

(C)    The 2nd Tier Bonds authorized and issued under the provisions of this Senior Indenture shall be junior and subordinate in all respects to the 1st Tier Bonds and shall be secured by a pledge of Revenues and shall be secured by and have a priority with respect thereto as is set forth in Section 5.03 of this Senior Indenture. The Director hereby covenants that except as provided in this Senior Indenture, until all of the 2nd Tier Bonds authorized and issued under this Senior Indenture and the interest thereon shall have been paid or are deemed to have been paid, it will not grant any prior or parity pledge or lien on the Revenues as established by said Section 5.03 ranking prior to or on a parity with said charge or lien of the 2nd Tier Bonds from time to time Outstanding under this Senior Indenture.

(D)    The Director hereby transfers in trust, and assigns to the Trustee, for the benefit of the Bondholders from time to time of the Senior Bonds, to the extent of its interest therein, all of the Revenues and other assets pledged in subsection (A) of this Section and all of the right, title and interest of the Director in the Financing Agreement and the Senior Note (except for the right to receive any Additional Payments to the extent payable to the Director under Sections 4.2(c) and (d), 7.3, 9.2 and 9.3 of the Agreement and any rights of the Director to indemnification and rights of inspection and consent). The Trustee shall be entitled to and shall collect and receive all of the Revenues, and any Revenues collected or received by the Director shall be deemed to be held, and to have been collected or received, by the Director as the agent of the Trustee and shall forthwith be paid by the Director to the Trustee. The Trustee also shall be entitled to and shall take all steps, actions and proceedings reasonably necessary in its judgment to enforce, either jointly with the Director or separately, all of the rights of the Director and all of the obligations of the Borrower under the Financing Agreement, including without limitation the rights of the Director as assignee of the Borrower's rights under certain Project Agreements.

(E)    All rights of the 2nd Tier Bonds arising from the pledge of Revenues to the Trustee pursuant to paragraph (A) of this Section and the assignment of rights to the Trustee pursuant to paragraph (D) of this Section shall be junior and subordinate in all respects to the rights of the 1st Tier Bonds arising from such pledge and assignment. Any amounts derived by the Trustee pursuant to such pledge and assignment shall be applied pursuant to the priorities established by the provisions of Article V. The Holders of the 1st Tier Bonds shall have all rights to direct the Trustee in the exercise of rights and remedies as pledgee and assignee.

(F)     All Revenues shall be promptly deposited by the Trustee upon receipt thereof in a special fund designated as the Revenue Fund which the Trustee shall establish, maintain and hold in trust except as otherwise provided in Section 5.02. All moneys received by the Trustee in connection with optional redemption of any Senior Bonds pursuant to Section 4.01(1) or (2) shall be promptly deposited in the Redemption Account, which account the Trustee shall establish, maintain and hold in trust. All Revenues deposited with the Trustee shall be held, disbursed, allocated and applied by the Trustee only as provided in this Senior Indenture.

SECTION 5.02     Application of Series 2000 Bond Proceeds. On the date of issuance of the Series 2000 Bonds, the following amounts shall be paid from the proceeds of the Series 2000 Bonds directly by the underwriter of the Series 2000 Bonds:

| | | |
|---|---|---|
| (a) | Bond Insurance and Surety Reserve Premiums | $23,070,714.49 |
| (b) | Title Insurance premium and other escrow costs | $8,400,000.00 |
| (c) | Structuring Fee to underwriter | $6,500,000.00 |
| (d) | Legal fees of Insurer | $37,299.38 |

The remainder of the proceeds of the Series 2000 Bonds (net of underwriter's discount and original issue discount) shall be applied by the Trustee as follows:

(e)     The sum of $68,171,325.52, representing accrued interest and a portion of the sale proceeds of the 1st Tier Series 2000 Bonds, will be deposited in the 1st Tier Series 2000 Capitalized Interest Fund and the sum of $38,334,863.52, representing accrued interest and a portion of the sale proceeds of the 2nd Tier Series 2000 Bonds, will be deposited in the 2nd Tier Series 2000 Capitalized Interest Fund;

(f)     The sum of $300,376,277.92, representing a portion of the sale proceeds of the 1st Tier Series 2000 Bonds and the sum of $84,419,803.23, representing a portion of the sale proceeds of the 2nd Tier Series 2000 Bonds will be deposited in the Construction Fund;

(g)     The sum of $2,705,859.00, representing a portion of the sale proceeds of the 1st Tier Series 2000 Bonds, will be deposited in the 1st Tier Account of the Costs of Issuance Fund and the sum of $1,006,798.49, representing a portion of the sale proceeds of the 2nd Tier Series 2000 Bonds, will be deposited in the 2nd Tier Account of the Costs of Issuance Fund;

(h)     The sum of $20,991,807.50, representing a portion of the sale proceeds of the 1st Tier Series 2000 Bonds will be deposited in the 1st Tier Debt Service Reserve Fund, and the sum of $14,284,400.70, representing a portion of the sale proceeds of the 2nd Tier Series 2000 Bonds will be deposited in the 2nd Tier Debt Service Reserve Fund.

(i)     The sum of $6,000,000, representing a portion of the sale proceeds of the 1st Tier Series 2000 Bonds, will be transferred for deposit into the Removal Costs Fund.

(j)     The sum of $6,000,000, representing a portion of the sale proceeds of the 1st Tier Series 2000 Bonds, will be transferred for deposit into the Removal Costs Fund.

The Trustee shall also deposit the 1st Tier Surety Reserve Bond into the Debt Service Reserve Fund for the 1st Tier Series 2000 Bonds (established pursuant to Section 5.04 of this Senior Indenture).   The 1st Tier Surety Reserve Bond shall be in the amount of $20,991,807.50, representing the amount necessary, together with the sum deposited pursuant to Section 5.02 (d), to fund the Debt Service Reserve Requirement for the 1st Tier Series 2000 Bonds.

SECTION 5.03     Use of Moneys in Revenue Fund.  Subject to Section 6.06, the Trustee shall deposit all funds received from the Borrower under the Agreement (except Administrative Fees and Expenses) upon receipt in the Revenue Fund.  All money in the Revenue Fund shall be set aside by the Trustee in the following respective special accounts within the Revenue Fund in the following order of priority (each of which is hereby created and each of which the Director hereby covenants and agrees to cause to be maintained):

      i.    1st Tier Debt Service Fund,

      ii.    1st Tier Debt Service Reserve Fund,

      iii.    2nd Tier Debt Service Fund,

      iv.    2nd Tier Debt Service Reserve Fund,

      v.    Rebate Fund, and

      vi.    Surplus Fund.

All money in each of such funds and accounts shall be held in trust by the Trustee and shall be applied, used and withdrawn only for the purposes hereinafter authorized in this section and in the following priority:

(a)     1st Tier Debt Service Fund.  On the last Business Day of each month, beginning the month the final payment is made in full from the 1st Tier account of the Capitalized Interest Fund, the Trustee shall set aside from the Revenue Fund and deposit in the 1st Tier Debt Service Fund that amount of money which is equal to one-sixth (1/6) of the aggregate amount of interest coming due on 1st Tier Bonds on the next succeeding Interest Payment Date and one-twelfth (1/12) of the aggregate amount of scheduled principal (or Accreted Value) becoming due and payable (whether at maturity or by mandatory sinking fund payments) on all Outstanding 1st Tier Bonds on the next succeeding Principal Payment Date; provided that from the date of delivery of the 1st Tier Bonds until the first interest payment date with respect to such series the amounts so paid with respect to such series shall be sufficient on a monthly pro rata basis to pay the aggregate amount of scheduled principal and interest becoming due and payable on said payment date with respect to such series.

No deposit need be made in the 1st Tier Debt Service Fund if the amount contained therein is at least equal to the aggregate amount of scheduled principal and interest

becoming due and payable on all Outstanding 1st Tier Bonds on the next succeeding Interest Payment Date. To the extent Funds remain in the Capitalized Interest Account, such funds shall be applied towards payments of interest as provided in Section 3.03 hereof before application of any moneys in the 1st Tier Debt Service Fund.

All money in the 1st Tier Debt Service Fund and the Redemption Account shall be used and withdrawn by the Trustee solely for the purpose of paying the scheduled principal or Accreted Value of, premium with respect to, or interest on the 1st Tier Bonds as such shall become due and payable (including accrued interest on any such Bonds purchased or redeemed prior to maturity), whether at maturity or redemption.

(b) 1st Tier Debt Service Reserve. After the deposits required by Section 5.03(a) have been made and except as otherwise provided in Section 5.04, the Trustee shall first reimburse the Insurer the amount due and payable to the Insurer as a result of any unreplenished prior withdrawal on the 1st Tier Surety Reserve Bond, and second on a pro rata basis (a) reimburse the provider of any other letter of credit. insurance policy or surety bond satisfying a portion of the Debt Service Reserve Requirement for the 1st Tier Bonds one-twelfth (1/12) of the amount due and payable to such provider as a result of any unreplenished prior withdrawal on such letter of credit, insurance policy or surety bond and (b) deposit in the 1st Tier Debt Service Reserve Fund one-twelfth (1/12) of the total amount (including amounts available under the 1st Tier Surety Reserve Bond and any other letter of credit, insurance policy or surety bond for the 1st Tier Debt Service Reserve Fund) necessary to restore the 1st Tier Debt Service Reserve Fund to the Debt Service Reserve Requirement for the 1st Tier Bonds, including any deposits required by Section 5.04(b).

(c) 2nd Tier Debt Service Fund. After the deposits required by Sections 5.03(a) and (b) have been made, the Trustee shall set aside from the Revenue Fund and deposit in the 2nd Tier Debt Service Fund an amount of money equal to one-sixth (1/6) of the aggregate amount of interest coming due on 2nd Tier Bonds on the next succeeding Interest Payment Date and one-twelfth (1/12) of the aggregate amount of all scheduled principal payments coming due on 2nd Tier Bonds (whether at maturity or by mandatory sinking fund payments) on the next succeeding Principal Payment Date; provided that from the date of delivery of such Bonds until the first Principal Payment Date with respect to such series the amounts so paid with respect to such series shall be sufficient on a monthly pro rata basis to pay the aggregate amount of scheduled principal and interest becoming due and payable on said payment date with respect to such series.

No deposit need be made in the 2nd Tier Debt Service Fund if the amount contained therein is at least equal to the aggregate amount of the scheduled principal and interest payments of all Outstanding 2nd Tier Bonds required to be made on the next succeeding Interest Payment Date for such Bonds.

All money in the 2nd Tier Debt Service Fund and the Redemption Account shall be used and withdrawn by the Trustee solely for the purpose of paying the scheduled principal or Accreted Value of, premium with respect to, or interest on the 2nd Tier Bonds as such shall become due and payable (including accrued interest on any such Bonds purchased or redeemed prior to maturity), whether at maturity or redemption. To the extent Funds remain in the 2nd Tier

account of the Capitalized Interest Fund, such funds shall be applied towards payments of interest as provided in Section 3.03 hereof before application of any moneys in the 2nd Tier Debt Service Fund.

(d)    2nd Tier Debt Service Reserve. After the deposits required by Section 5.03(a)-(c) have been made, the Trustee shall deposit in the 2nd Tier Debt Service Reserve Fund on a pro rata basis (a) to reimburse the provider of a letter of credit, insurance policy or surety bond satisfying a portion of the Debt Service Reserve Requirement for the 2nd Tier Bonds, one-twelfth (1/12) of the amount due and payable to such provider as a result of any unreplenished prior withdrawal on such letter of credit, insurance policy or surety bond and (b) one-twelfth (1/12) of the total funds necessary to meet the Debt Service Reserve Requirement with respect to the 2nd Tier Bonds, including any deposits required by Section 5.04(b).

(e)    Rebate Fund. After the deposits required by Section 5.03(a)-(d) have been made, the Trustee shall deposit available money to the Rebate Fund in an amount requested by the Borrower in a certificate filed with the Trustee as provided in Section 5.06.

(f)    Surplus Fund. After the deposits required by subsections (a)-(e) of this section have been made, the Trustee shall deposit, on the first day of each month, any remaining moneys from the Revenue Fund into the Surplus Fund, which fund the Trustee is hereby directed to establish and hold in trust. In any month that the Trustee does not have sufficient moneys in the Revenue Fund to make the required deposits in subsections (a)-(e) above, the Trustee shall transfer moneys from the Surplus Fund to make up such deficiency. On each January 5 and July 5 commencing after delivery of the Certificate provided in Section 3.5 of the Agreement, the Trustee shall transfer any moneys remaining in the Surplus Fund to the Borrower for deposit in the Collection Fund.

Notwithstanding the foregoing, in the event that Borrower deposits all Project Revenues upon receipt with the Trustee pursuant to the last paragraph of Section 4.1(b) of the Agreement, the Trustee shall, before making the required deposits in subsections (a)-(f) above, remit to the Borrower the amounts required to be paid for Operation and Maintenance in such month in the Annual Budget, and shall, after making the deposits in subsections (a)-(e) above, make the payments required by Section 4.1(b)(v) and (vi), if any, and Section 4.1(c) of the Agreement.

SECTION 5.04    Debt Service Reserve Funds.

(a)    There are established with the Trustee under Section 5.03 two funds to be designated "Director of the State of Nevada Department of Business and Industry, Las Vegas Monorail Project 1st Tier Debt Service Reserve Fund" and "Director of the State of Nevada Department of Business and Industry, Las Vegas Monorail Project 2nd Tier Debt Service Reserve Fund" (which funds may individually or collectively be referred to in the Section as a "Debt Service Reserve Fund"). On the Date of Delivery, the Trustee will deposit the 1st Tier Surety Reserve Bond to the 1st Tier Debt Service Reserve Fund and shall also deposit a portion of the proceeds from the sale of the Senior Bonds in the corresponding Debt Service Reserve Fund as provided in Section 5.02.

(b)     In replacement of moneys then on deposit in either Debt Service Reserve Fund (which money shall be transferred by the Trustee to the Borrower for deposit in the Collection Fund), or in substitution of any other letter of credit, insurance policy or surety bond comprising part of the Debt Service Reserve Requirement for either Tier of the Senior Bonds, the Borrower may, at any time and from time to time, deliver to the Trustee an irrevocable letter of credit issued by a financial institution having unsecured debt obligations rated at the time of delivery of such letter of credit in one of the two highest rating categories of the Rating Agencies, in an amount, which, together with moneys, Investment Securities or surety bonds or insurance policies (as described in Section 5.04(c)) then on deposit in the applicable Debt Service Reserve Fund, will equal the Debt Service Reserve Requirement for such Tier of the Senior Bonds. Such letter of credit shall have a term no less than three (3) years or, if less, the maturity of the Series of Bonds in connection with which such letter of credit was obtained and shall provide by its terms that it may be drawn upon as provided in this Section 5.04. At least one year prior to the stated expiration of such letter of credit, the Borrower shall either (i) deliver a replacement letter of credit, (ii) deliver an extension of the letter of credit for at least an additional year or, if less, the maturity of the Series of Bonds in connection with which such letter of credit was obtained, or (iii) deliver to the Trustee a surety bond or an insurance policy satisfying the requirements of Section 5.04(c). Upon delivery of such replacement letter of credit, extension of the letter of credit, surety bond or insurance policy. the Trustee shall deliver the then-effective letter of credit to or upon the order of the Borrower. If the Borrower shall fail to deposit a replacement letter of credit, extension of the letter of credit, surety bond or insurance policy with the Trustee one year prior to expiration, the Borrower under Section 4.2 of the Financing Agreement will immediately commence to make monthly deposits with the Trustee as part of the obligations under Section 5.03(b) or (d) hereof, so that an amount equal to the Debt Service Reserve Requirement for the applicable Tier will be on deposit in the applicable Debt Service Reserve Fund no later than the stated expiration date of the letter of credit. If an amount equal to the Debt Service Reserve Requirement for the applicable Tier of Senior Bonds as of the date following the expiration of the letter of credit is not on deposit in the applicable Debt Service Reserve Fund one week prior to the expiration date of the letter of credit (excluding from such determination the letter of credit itself), the Trustee shall draw on the letter of credit to fund the deficiency resulting therefrom in the applicable Debt Service Reserve Fund.

(c)     In replacement of moneys then on deposit in either Debt Service Reserve Fund (which money shall be transferred by the Trustee to the Borrower for deposit in the Collection Fund) or in substitution of any letter of credit, insurance policy or surety bond comprising part of the Debt Service Reserve Requirement for either Tier of the Senior Bonds, the Borrower may, at any time and from time to time, deliver to the Trustee a surety bond or an insurance policy securing an amount which, together with moneys, Investment Securities, letters of credit or other surety bonds or insurance policies then on deposit in the applicable Debt Service Reserve Fund, is no less than the Debt Service Reserve Requirement for the applicable Tier of Senior Bonds. Such surety bond or insurance policy shall be issued by an insurance company whose unsecured debt obligations (or for which obligations secured by such insurance company's insurance policies) are rated at the time of delivery in one of the two highest rating categories of the Rating Agencies. Such surety bond or insurance policy shall have a term of no less than the maturity of the Series of Bonds in connection with which such surety bond or insurance policy is obtained. In the event that such surety bond or insurance policy for any reason lapses or expires, the Director shall immediately implement (i) or (iii) of the preceding

paragraph or make the required deposits to the applicable Debt Service Reserve Fund required by Section 5.03(b) or (d).

(d)     All amounts in the 1st Tier Debt Service Reserve Fund (including all amounts which may be obtained from the 1st Tier Surety Reserve Bond or other letters of credit, surety bonds and insurance policies on deposit in the 1st Tier Debt Service Reserve Fund) shall be used and withdrawn by the Trustee, as hereinafter provided, solely for the purpose of making up any deficiency in the 1st Tier Debt Service Fund, or (together with any other moneys available therefor) for the payment or redemption of all 1st Tier Series 2000 Bonds then Outstanding or, for the payment of the final principal and interest or Accreted Value payment of 1st Tier Series 2000 Bonds, if following such payment the amounts in the 1st Tier Debt Service Reserve Fund (including the amounts which may be obtained from letters of credit, surety bonds and insurance policies on deposit therein) will equal the Debt Service Reserve Requirement for the 1st Tier Bonds. The Trustee shall, on a pro rata basis with respect to the portion of the 1st Tier Debt Service Reserve Fund held in cash or Investment Securities and amounts held in the form of letters of credit and amounts held in the form of surety bonds and insurance policies other than the 1st Tier Surety Reserve Bond (calculated by reference to the maximum amounts of such letters of credit, surety bonds and insurance policies and the amount of the initial deposit of such cash and Investment Securities or, if such instruments secure specific Series of Bonds, to the amounts so secured, allocating the cash and Investment Securities to the Series of Bonds not so secured), draw under each letter of credit, surety bond or insurance policy issued with respect to the 1st Tier Debt Service Reserve Fund, in a timely manner and pursuant to the terms of such letter of credit, surety bond or insurance policy to the extent necessary in order to obtain sufficient funds on or prior to the date such funds are needed to pay the principal of and the interest on the 1st Tier Series 2000 Bonds when due; provided, however, that all such cash, Investment Securities and other letters of credit, insurance policies or surety bonds shall be utilized prior to any drawing under the 1st Tier Surety Reserve Bond. In the event that the Trustee has notice that any payment of principal or Accreted Value of or interest on a 1st Tier Series 2000 Bond has been recovered from a Bondowner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee, pursuant to and provided that the terms of the letter of credit, surety bond or bond insurance policy, if any, securing the 1st Tier Series 2000 Bonds so provide, shall so notify the Director and the Borrower thereof and use available cash or Investment Securities and draw on such letter of credit, surety bond or policy other than the 1st Tier Surety Reserve Bond to the lesser of the extent required or the maximum amount of such letter of credit, surety bond or policy in order to pay to such Bondowners the principal or Accreted Value of and interest so recovered, and if necessary, the Trustee shall thereafter draw on the 1st Tier Surety Reserve Bond after all other cash, Investment Securities, letters of credit, surety bonds or insurance policies have been used to the maximum amount available.

(e)     All amounts in the 2nd Tier Debt Service Reserve Fund (including all amounts which may be obtained from letters of credit, surety bonds and insurance policies on deposit in the 2nd Tier Debt Service Reserve Fund) shall be used and withdrawn by the Trustee, in a manner similar to that described in Section 5.04 (d) with respect to the 1st Tier Debt Service Reserve Fund, but solely for the purpose of making up any deficiency in the 2nd Tier Debt Service Fund or repaying the 2nd Tier Bonds.

(f)     If the balance on deposit in the either Debt Service Reserve Fund exceeds the Debt Service Reserve Requirement for the corresponding Tier of Senior Bonds, based on the most recent valuation made by the Trustee, interest received on and any profit realized from the investment of money in the corresponding Debt Service Reserve Fund will be held in such Debt Service Reserve Fund and transferred not less than monthly to the Construction Fund until completion of the acquisition, construction and equipping of the Project and thereafter to the Collection Fund as provided in Section 5.05.

(g)     At least four (4) Business Days prior to the first day of each January 1 and July 1 commencing January 1, 2005, the Trustee will determine if the balance on deposit in the corresponding Debt Service Reserve Fund is at least equal to the Debt Service Reserve Requirement with respect to the 1st Tier Bonds or the 2nd Tier Bonds. as appropriate. If a deficit exists in the corresponding Debt Service Reserve Fund, the Trustee will immediately notify the Director and the Borrower of the amount of the deficit. In computing the amount on deposit in the Debt Service Reserve Funds, all Investment Securities in the Debt Service Reserve Funds will be valued at their fair market value as of the valuation date plus. prior to the first payment of interest following purchase, the amount of accrued interest, if any. paid as a part of the purchase price.

SECTION 5.05     Investment of Moneys. Except as otherwise provided herein, all moneys in any of the funds or accounts established pursuant to this Senior Indenture shall be invested by the Trustee as directed by the Borrower, solely in Investment Securities. Notwithstanding any other provision herein, in the absence of written investment instructions from the Borrower, the Trustee is directed to invest available funds in the Investment Securities listed in clause (v) of the definition thereof. The Trustee shall not be liable for any consequences resulting from any investments made pursuant to the preceding sentence.

Investment Securities may be purchased at such prices as the Trustee shall be directed by Request of the Borrower.

Moneys in all funds and accounts shall be invested. in Investment Securities maturing not later.than the date on which it is estimated that such moneys will be required for the purposes specified in this Senior Indenture.

All interest, profits and other income received from the investment of moneys in any fund or account established pursuant to this Senior Indenture shall be deposited as follows:

| Fund or Account | Interest Earnings Prior to Completion Date | Interest Earnings After Completion Date |
|---|---|---|
| Construction Fund | Construction Fund | N/A |
| Contingency Fund | Contingency Fund | General Fund |
| Costs of Issuance Fund | Costs of Issuance Fund | Construction Fund |
| 1st Tier Debt Service Fund | Construction Fund | 1st Tier Debt Service Fund |
| 2nd Tier Debt Service Fund | Construction Fund | 2nd Tier Debt Service Fund |

| Fund or Account | Interest Earnings Prior to Completion Date | Interest Earnings After Completion Date |
|---|---|---|
| Redemption Account | Construction Fund | Redemption Account |
| 1st Tier Account of the Capitalized Interest Fund | 1st Tier Account of the Capitalized Interest Fund | 1st Tier Account of the Capitalized Interest Fund |
| 2nd Tier Account of the Capitalized Interest Fund | 2nd Tier Account of the Capitalized Interest Fund | 2nd Tier Account of the Capitalized Interest Fund |
| 1st Tier Debt Service Reserve Fund | 1st Tier Account of the Capitalized Interest Fund | 1st Tier Account of the Capitalized Interest Fund / Collection Fund |
| 2nd Tier Debt Service Reserve Fund | 2nd Tier Account of the Capitalized Interest Fund | 1st Tier Account of the Capitalized Interest Fund / Collection Fund |
| Rebate Fund | Rebate Fund | Rebate Fund |
| Revenue Fund | Construction Fund | Revenue Fund |
| Surplus Fund | Construction Fund | Collection Fund |

Notwithstanding anything to the contrary contained in this paragraph, an amount of interest received with respect to any Investment Security equal to the amount of accrued interest, if any, paid as part of the Purchase Price of such Investment Security shall be credited to the fund from which such accrued interest was paid.

For the purpose of determining the amount in any fund, all Investment Securities credited to such fund shall be valued at fair market value plus, prior to the first payment of interest following purchase, the amount of accrued interest, if any, paid as a part of the purchase price.

Subject to Section 6.06, investments in any and all funds and accounts (other than the Rebate Fund) may be commingled for purposes of making, holding and disposing of investments, notwithstanding provisions herein for transfer to or holding in particular funds and accounts amounts received or held by the Trustee hereunder, provided that the Trustee shall at all times account for such investments strictly in accordance with the funds and accounts to which they are credited and otherwise as provided in this Senior Indenture. The Trustee may purchase from or sell to itself or any affiliate, as principal or agent, in the making or disposing of any investment. The Trustee may sell or present for redemption any Investment Securities so purchased whenever it shall be necessary to provide moneys to meet any required payment, transfer, withdrawal or disbursement from the fund to which such Investment Security is credited, and the Trustee shall not be liable or responsible for any loss resulting from such investment. To the extent that Investment Securities purchased hereunder are registrable securities, such investments shall be registered in the name of the Trustee.

SECTION 5.06     Rebate Fund.

(a)     The Trustee shall establish and maintain a fund separate from any other fund established and maintained hereunder designated as the "Las Vegas Monorail Company Rebate Fund" (herein called the "Rebate Fund"). Within the Rebate Fund, the Trustee shall maintain such accounts as it is instructed in writing by the Borrower as shall be necessary in order to comply with the terms and requirements of the Tax Certificate. Subject to the transfer provisions provided in paragraph (e) below, all money at any time deposited in the Rebate Fund shall be held by the Trustee in trust, to the extent required to satisfy the Rebate Requirement (as defined in the Tax Certificate), for payment to the federal government of the United States of America, and no other person shall have any rights in or claim to such money. All amounts deposited into or on deposit in the Rebate Fund shall be governed by this Section 5.06, by Section 6.06 hereof and by the Tax Certificate (which is incorporated herein by reference). The Trustee shall be deemed conclusively to have complied with such provisions if it follows the directions of the Borrower including supplying all necessary information in the manner provided in the Tax Certificate, shall not be required to take any actions under the Tax Certificate in the absence of written directions by the Borrower, and shall have no liability or responsibility to enforce compliance by the Borrower or the Director with the terms of the Tax Certificate.

(b)     Upon the Borrower's written direction, an amount shall be deposited to the Rebate Fund by the Trustee from deposits by the Borrower if and to the extent required, so that the balance of the amount on deposit thereto shall be equal to the amount of rebate to be paid to the United States of America. Computations of such rebate amount shall be furnished by or on behalf of the Borrower in accordance with the Tax Certificate.

(c)     The Trustee shall have no obligation to rebate any amounts required to be rebated pursuant to this Section 5.06 other than from moneys held in the funds and accounts created under this Senior Indenture (other than the Indemnification Account of the Contingency Fund).

(d)     The Trustee shall invest all amounts held in the Rebate Fund in Investment Securities as provided in the first paragraph of Section 5.05. Money shall not be transferred from the Rebate Fund except as provided in paragraph (e) below.

(e)     Upon receipt of the Borrower's written directions, the Trustee shall remit part or all of the balances in the Rebate Fund to the United States of America, as so directed. In addition, if the Borrower so directs, the Trustee will deposit moneys into or transfer moneys out of the Rebate Fund from or into such accounts or funds as directed by the Borrower's written directions. Any funds remaining in the Rebate Fund after redemption or payment of all of the Senior Bonds and payment and satisfaction of any amount of rebate to be paid, or provision made therefor satisfactory to the Trustee shall be withdrawn and remitted to the Borrower upon the Borrower's written request after having paid or made provisions for payment to the Trustee of any amounts due under Section 8.06 hereof.

(f)     Notwithstanding any other provision of this Senior Indenture, including in particular Article X hereof, the obligation to remit the rebate amounts to the United States of

America and to comply with all other requirements of this Section 5.06, Section 6.06 hereof and the Tax Certificate shall survive the defeasance or payment in full of the Bonds.

SECTION 5.07     Letters of Credit.

(a)     The Trustee shall hold and maintain each Letter of Credit for the benefit of the Bondholders. Subject to the provisions of this Senior Indenture. the Trustee shall enforce all terms, covenants and conditions of each Letter of Credit, including payment when due of any draws on such Letter of Credit, and the provisions relating to the payment of draws on such Letter of Credit, and will not consent to, agree to or permit any amendment or modification of such Letter of Credit which would materially adversely affect the rights or security of the Holders of the Bonds. The Trustee may rely upon an Opinion of Counsel when determining whether any amendment or modification would materially adversely affect the rights or security of the Holders of the Bonds. If at any time during the term of any Letter of Credit any successor Trustee shall be appointed and qualified under this Senior Indenture, the resigning or removed Trustee shall request that the Bank transfer such Letter of Credit to the successor Trustee. If the resigning or removed Trustee fails to make this request, the successor Trustee shall do so before accepting appointment. If the proceeds of sale of a Series of the Subordinate Bonds have been received by the Trustee and deposited into the Construction Fund, the Trustee shall immediately surrender the Letter of Credit corresponding to such Series of Subordinate Bonds to the Bank that issued such Letter of Credit.

(b)     The Trustee shall draw moneys under any Letter of Credit (i) if any purchaser of the Subordinate Bonds, Series 2000C through Series 2000I fails to make the required payment within 30 days after the Borrower gives the notice provided in Section 5.17(c) of the Financing Agreement, or (ii) five days prior to the expiration date thereof in accordance with the terms thereof, and deposit the proceeds of such draw into the Construction Fund.

SECTION 5.08     Provisions Regarding Subordination of 2nd Tier Bonds.

(a)     The Trustee and each Holder of the 2nd Tier Bonds, by its acceptance thereof, covenants and agrees that the 2nd Tier Bonds shall, to the extent and in the manner herein set forth, be subordinated and junior in right of payment to the prior payment in full of the 1st Tier Bonds; that so long as 1st Tier Bonds shall be outstanding Holders of 2nd Tier Bonds shall have no right to institute any suit, action or proceeding at law or in equity to protect or enforce any right under this Senior Indenture, the Agreement or any Project Agreement except pursuant to Section 5.08(b), Section 5.08(c) and Section 7.07; that the subordination is for the benefit of, and shall be enforceable directly by, the Holders of 1st Tier Bonds; and that each Holder of 1st Tier Bonds whether now outstanding or hereafter created, incurred, assumed or guaranteed acquired 1st Tier Bonds in reliance upon the covenants and provisions contained in this Senior Indenture and the 2nd Tier Bonds. Such subordination of the 2nd Tier Bonds shall be effected pursuant to the priorities established by the provisions of this Article Five and the further provisions of this Section.

(b)     Notwithstanding any provision herein to the contrary, in the event that Net Project Revenues are collected and available but are not applied in the manner specified by Article IV of the Financing Agreement, the Holders of the 2nd Tier Bonds shall be entitled to

institute a suit, action or proceeding at law or in equity to enforce the obligations of the Borrower and the Trustee, as applicable, to pay the principal or Accreted Value of premium, with respect to and interest on the 2nd Tier Bonds in accordance with the terms of this Senior Indenture or Article IV of the Financing Agreement.

(c)     If an Event of Default pursuant to Section 7.01(e) occurs with respect to or affecting the 2nd Tier Bonds, Holders of more than 50% of the 2nd Tier Bonds may request, in writing, that the Bond Insurer, on behalf of the Holders of the 1st Tier Bonds, instruct the Trustee to proceed to enforce the rights of the Bondholders under the Act, this Senior Indenture or the Financing Agreement by a suit in equity or an action in law in accordance with the provisions of Section 7.02. The decision to so instruct the Trustee shall remain in the sole discretion of the Bond Insurer, provided, however, that if the Bond Insurer does not respond, either in the affirmative, in the negative or otherwise, to the Holders of the 2nd Tier Bonds within 45 days of receipt of such written request, the Holders of the 2nd Tier Bonds shall have the right to instruct the Trustee to commence a suit in equity to enforce the specific performance of the applicable covenant.

(d)     Upon any payment of distribution of assets of the Borrower of any kind or character, whether in cash, property or securities, to creditors upon any total or partial liquidation, dissolution, winding up, reorganization, assignment for the benefit of creditors or marshaling of assets of the Borrower or in a bankruptcy, reorganization, insolvency, receivership or other similar proceeding relating to the Borrower or its property, whether voluntary or involuntary, all amounts due or to become due upon all 1st Tier Bonds shall first be paid in full, or such payment duly provided for to the satisfaction of the Holders of 1st Tier Bonds, before any payment or distribution of any kind or character is made on account of the 2nd Tier Bonds, or for the acquisition of any of the 2nd Tier Bonds for cash or property or otherwise. Upon any such dissolution, winding-up, liquidation, reorganization, receivership or similar proceeding, any payment or distribution of assets of the Borrower of any kind or character, whether in cash, property or securities, to which the Holders of the 2nd Tier Bonds or the Trustee under this Senior Indenture would be entitled, except for the provisions hereof, shall be paid by the Borrower or by any receiver, trustee in bankruptcy, liquidating trustee, agent or other Person making such payment or distribution, or by the Holders or by the Trustee under this Senior Indenture if received by them, directly to the Holders of 1st Tier Bonds for application to the payment of 1st Tier Bonds remaining unpaid until all such 1st Tier Bonds has been paid in full.

(e)     To the extent any payment of 1st Tier Bonds (whether by or on behalf of the Borrower, as proceeds of security or enforcement of any right of setoff or otherwise) is declared to be fraudulent or preferential, set aside or required to be paid to any receiver, trustee in bankruptcy, liquidating trustee, agent or other similar Person under any bankruptcy, insolvency, fraudulent conveyance or similar law, then, if such payment is recovered by, or paid over to, such receiver, trustee in bankruptcy, liquidating trustee, agent or other similar Person, the 1st Tier Bonds or part thereof originally intended to be satisfied shall be deemed to be reinstated and outstanding as if such payment had not occurred.

(f)     In the event that, notwithstanding the foregoing, any payment or distribution of assets of the Borrower of any kind or character, whether in cash, property or securities, shall be received by any Holder of 2nd Tier Bonds when such payment or distribution

is prohibited by clause (d) above, such payment or distribution shall be held in trust for the benefit of, and shall be paid over or delivered to, the Trustee for application to the payment of 1st Tier Bonds remaining unpaid until all such 1st Tier Bonds have been paid in full.

(g)  The consolidation of the Borrower with, or the merger of the Borrower with or into, another corporation or the liquidation or dissolution of the Borrower following the conveyance or transfer of all or substantially all of its assets, to another corporation upon the terms and conditions provided in the Financing Agreement and as long as permitted under the terms of the 1st Tier Bonds shall not be deemed a dissolution, winding-up, liquidation or reorganization for the purposes of this Section if such other corporation shall, as a part of such consolidation, merger, conveyance or transfer, assume the Borrower's obligations hereunder in accordance with Financing Agreement.

(h)  Upon any payment or distribution of assets of the Borrower referred to in this Section 5.08, the Trustee and the Holders of the 2nd Tier Bonds shall be entitled to rely upon any order or decree made by any court of competent jurisdiction in which bankruptcy, dissolution, winding-up, liquidation or reorganization proceedings are pending, or upon a certificate of the receiver, trustee in bankruptcy, liquidating trustee, agent or other person making such payment or distribution, delivered to the Trustee or the Holders of the 2nd Tier Bonds, for the purpose of ascertaining the persons entitled to participate in such distribution, the Holders of the 1st Tier Bonds, the amount thereof or payable thereon, the amount or amounts paid or distributed thereon and all other facts pertinent thereto or to this Section.

(i)  No right of any present or future holders of any 1st Tier Bonds to enforce subordination as provided herein shall at any time or in any way be prejudiced or impaired by any act or failure to act on the part of the Borrower or by any act or failure to act, in good faith, by any such holder, or by any noncompliance by the Borrower with the terms of the Indenture, regardless of any knowledge thereof which any such holder may have or otherwise be charged with. Without in any way limiting the generality of the foregoing, the Holders of 1st Tier Bonds may, at any time and from time to time, without incurring responsibility to the Holders of the 2nd Tier Bonds and without impairing or releasing the subordination provided herein or the obligations hereunder of the Holders of the 2nd Tier Bonds to the Holders of the 1st Tier Bonds, do any one or more of the following: (i) change the manner, place or terms of payment or extend the time of payment of, or renew or alter, 1st Tier Bonds, or otherwise amend or supplement in any manner 1st Tier Bonds, or any instrument evidencing the same or any agreement under which 1st Tier Bonds is outstanding; (ii) sell, exchange, release or otherwise deal with any property pledged, mortgaged or otherwise securing 1st Tier Bonds; (iii) release any Person liable in any manner for the payment or collection of 1st Tier Bonds; and (iv) exercise or refrain from exercising any rights against the Borrower and any other Person.

## ARTICLE VI

## PARTICULAR COVENANTS

SECTION 6.01   Punctual Payment.  The Director shall punctually pay or cause to be paid the principal or Accreted Value, premium, if any, and interest to become due in respect of all the Bonds, in strict conformity with the terms of the Bonds and of this Senior

Indenture, according to the true intent and meaning thereof, but only out of Revenues and other assets pledged for such payment as provided in this Senior Indenture. When and as paid in full, all Senior Bonds, if any, shall be delivered to the Trustee, and shall forthwith be destroyed.

SECTION 6.02    Extension of Payment of Senior Bonds. The Director shall not directly or indirectly extend or assent to the extension of the maturity of any of the Senior Bonds or the time of payment of any claims for interest by the purchase or funding of such Senior Bonds or claims for interest or by any other arrangement and in case the maturity of any of the Senior Bonds or the time of payment of any such claims for interest shall be extended, such Senior Bonds or claims for interest shall not be entitled, in case of any default hereunder, to the benefits of this Senior Indenture, except subject to the prior payment in full of the principal of all of the Senior Bonds then Outstanding and of all claims for interest thereon which shall not have been so extended. Nothing in this Section shall be deemed to limit the right of the Director to issue bonds for the purpose of refunding any Outstanding Senior Bonds, and such issuance shall not be deemed to constitute an extension of maturity of Senior Bonds.

SECTION 6.03    Against Encumbrances. The Director shall not create, or permit the creation of, any pledge, lien, charge or other encumbrance upon the Revenues and other assets pledged or assigned under this Senior Indenture while any of the Senior Bonds are Outstanding, except the pledge and assignment created by this Senior Indenture. Subject to this limitation, the Director expressly reserves the right to enter into one or more other indentures for any of its corporate purposes, including other programs under the Act, and reserves the right to issue other obligations for such purposes.

SECTION 6.04    Power to Issue Senior Bonds and Make Pledge and Assignment. The Director is duly authorized pursuant to law to issue the Senior Bonds and to enter into this Senior Indenture and to pledge and assign the Revenues and other assets purported to be pledged and assigned, respectively, under this Senior Indenture in the manner and to the extent provided in this Senior Indenture. The Senior Bonds and the provisions of this Senior Indenture are and will be the legal, valid and binding limited obligations of the Director in accordance with their terms, and the Director and Trustee shall at all times, to the extent permitted by law, defend, preserve and protect said pledge and assignment of Revenues and other assets and all the rights of the Bondholders under this Senior Indenture against all claims and demands of all persons whomsoever, subject to the limitations set forth in Article VIII relating to the Trustee.

SECTION 6.05    Accounting Records and Reports. The Trustee shall keep or cause to be kept proper books of record and account in which complete and correct entries shall be made of all transactions relating to the receipt, investment, disbursement, allocation and application of the Revenues and the proceeds of the Senior Bonds. Such records shall specify the account or fund to which each investment (or portion thereof) held by the Trustee is to be allocated and shall set forth, in the case of each Investment Security, (a) its purchase price, (b) identifying information, including par amount, coupon rate, and payment dates, (c) the amount received at maturity or its sale price, as the case may be, (d) the amounts and dates of any payments made with respect thereto, and (e) such documentation as is required to be retained by the Trustee as evidence to establish any requirements set forth in the Tax Certificate, as specified in a Request of the Borrower filed with the Trustee. Such records shall be open to

inspection by any Holder at any reasonable time during regular business hours on reasonable notice.

SECTION 6.06      Federal Tax Covenants.

(a)      The Director has caused the Borrower to covenant and agree in the Tax Certificate and in the Agreement that it will not act or fail to act if such action or failure to act would cause the interest on the Senior Bonds not to be excluded from gross income for federal income tax purposes. In addition, the Director has caused the Borrower to covenant and agree in the Tax Certificate that it will make no use of the proceeds of the Senior Bonds which will cause such Senior Bonds to be obligations other than obligations described in Section 103(a) of the Code. The Director has caused the Borrower to, among other things, covenant that it will not directly or indirectly use or permit the use of any proceeds of such Senior Bonds or any other funds of the Director or the Borrower, or take or omit to take any action that would cause the Senior Bonds to be "private activity bonds" within the meaning of Section 141 of the Code or obligations which are "federally guaranteed" within the meaning of Section 149(b) of the Code or "arbitrage bonds" within the meaning of Section 148(a) of the Code. To that end, the Director has caused the Borrower to comply with all requirements of Section 148 of the Code and all applicable regulations of the United States Department of Treasury promulgated thereunder (the "Regulations"). (For purposes of this Section 6.06 all capitalized terms not defined herein shall have the meanings ascribed to such terms in the Tax Certificate.) The Director and the Borrower specifically agree that:

(i)      except as otherwise expressly permitted under the Regulations, the Director and the Borrower will allow no more Gross Proceeds of the Bonds than an amount equal to 150% of the scheduled 1st Tier Debt Service and 2nd Tier Debt Service for any Bond Year to be invested during that Bond Year in Nonpurpose Investments with a Yield in excess of the Yield on the Bonds; and

(ii)      the Borrower will pay, or cause to be paid, from time to time all amounts required to be rebated to the United States of America pursuant to Section 148(f) of the Code and any temporary, proposed or final Regulations as may be applicable to the Senior Bonds from time to time.  This covenant shall survive payment in full or defeasance of the Bonds. The Director and the Borrower specifically covenant to pay or cause to be paid to the United States of America at the times and in the amounts determined under Section 5.06 hereof the Rebate Requirement, as described in the Tax Certificate. The Trustee agrees to comply with all written instructions of the Borrower given in accordance with the Tax Certificate.

The Trustee conclusively shall be deemed to have complied with the provisions of this Section 6.06(a) if it follows the directions of the Borrower set forth in the instructions required by the Tax Certificate and shall not be required to take any action under this Section 6.06(a) in the absence of such directions from the Borrower. Subject to Section 8.03, the Trustee shall not be liable for any consequences resulting from its failure to act if no instructions from the Borrower (or in the absence of Borrower instructions, instructions from the Director) are delivered to it.

(b)     Notwithstanding any provision of this Section, if the Borrower shall provide to the Trustee and the Director an opinion of Bond Counsel that any action required under Section 5.06 or this Section 6.06 is no longer required, or that some further action is required to maintain the Tax-exempt status of interest on any series of Bonds, the Trustee and the Director may rely conclusively on such opinion in complying with the requirements of this Section, and the covenants contained herein shall be deemed to be modified to that extent.

SECTION 6.07     Other Covenants.  The Director shall only amend, modify or terminate any of the terms of the Agreement, or consent to any such amendment, modification or termination, upon written request of the Borrower and the written consent of the Trustee. The Trustee shall give such written consent only if (1) in the Opinion of Bond Counsel, such amendment, modification or termination will not materially adversely affect the interests of the Bondholders or result in any material impairment of the security hereby given for the payment of the Senior Bonds, or (2) the Trustee first obtains the written consent of the Holders of a majority in principal amount of the 1st Tier Bonds then Outstanding to such amendment, modification or termination, provided that no such amendment, modification or termination shall reduce the amount of Senior Loan Repayments to be made to the Director or the Trustee by the Borrower pursuant to the Agreement, or extend the time for making such payments, without the written consent of all of the Bondholders. The Trustee shall be entitled to rely upon an opinion of Bond Counsel with respect to the effect of any amendments hereto or to the Agreement.

SECTION 6.08     Waiver of Laws.  The Director shall not at any time insist upon or plead in any manner whatsoever, or claim or take the benefit or advantage of, any stay or extension law now or at any time hereafter in force that may affect the covenants and agreements contained in this Senior Indenture or in the Senior Bonds, and all benefit or advantage of any such law or laws is hereby expressly waived by the Director to the extent permitted by law.

SECTION 6.09     Further Assurances.  The Director will make, execute and deliver any and all such further indentures, instruments and assurances as may be reasonably necessary or proper to carry out the intention or to facilitate the performance of this Senior Indenture and for the better assuring and confirming unto the Bondholders of the rights and benefits provided in this Senior Indenture.

SECTION 6.10     Continuing Disclosure.  Pursuant to Section 5.16 of the Agreement, the Borrower shall undertake the continuing disclosure requirements promulgated under S.E.C. Rule 15c2-12, as it may from time to time hereafter be amended or supplemented, and the Director shall have no liability to the Holders of the Senior Bonds or any other person with respect to such disclosure matters. Notwithstanding any other provision of this Senior Indenture, failure of the Borrower to comply with the requirements of S.E.C. Rule 15c2-12, as it may from time to time hereafter be amended or supplemented, shall not be considered an Event of Default; however, the Trustee at the written request of the Holders of at least 25% aggregate principal amount of Outstanding Senior Bonds, shall, but only to the extent indemnified to its satisfaction from and against any cost, liability or expense related thereto, including, without limitation, reasonable fees and expenses of its attorneys and advisors and additional fees and expenses of the Trustee, or any Bondholder or beneficial owner of any Senior Bonds may take such actions as may be necessary and appropriate, including seeking mandate or specific

performance by court order, to cause the Borrower to comply with its obligations under Section 5.16 of the Agreement.

ARTICLE VII

EVENTS OF DEFAULT AND REMEDIES OF BONDHOLDERS

SECTION 7.01     Events of Default; Waiver of Default.  Each of the following events shall constitute an "Event of Default" hereunder:

(a)     default in the due and punctual payment of the principal of, or premium (if any) on, any 1st Tier Bonds when and as the same shall become due and payable, whether at maturity as therein expressed, by proceedings for redemption, by declaration or otherwise;

(b)     default in the due and punctual payment of the principal of, or premium (if any) on, any 2nd Tier Bonds when and as the same shall become due and payable, whether at maturity as therein expressed, by proceedings for redemption, by declaration or otherwise;

(c)     default in the due and punctual payment of any installment of interest on any 1st Tier Bonds, when and as such interest installment shall become due and payable;

(d)     default in the due and punctual payment of any installment of interest on any 2nd Tier Bonds, when and as such interest installment shall become due and payable;

(e)     failure by the Director to perform or observe any other of the covenants, agreements or conditions on its part in this Senior Indenture or in the Senior Bonds contained, and the continuation of such failure for a period of sixty (60) days after written notice thereof, specifying such default and requiring the same to be remedied, shall have been given to the Director and the Borrower by the Trustee, or to the Director, the Borrower, and the Trustee by the Bondholders;

(f)     the occurrence and continuance of a Loan Default Event described in Section 7.1 of the Agreement which relates to the Senior Bonds; or

(g)     the occurrence and continuation of an Act of Bankruptcy with respect to the Borrower.

No default specified in (a) or (c) above with respect to 1st Tier Bonds shall be considered an Event of Default with respect to the 2nd Tier Bonds, and no default specified in (b) or (d) above with respect to the 2nd Tier Bonds shall be considered an Event of Default with respect to the 1st Tier Bonds.  No default specified in (e) above shall constitute an Event of Default unless the Director and the Borrower shall have failed to correct such default within the applicable period; provided, however, that if the default shall be such that it cannot be corrected within such period, it shall not constitute an Event of Default if corrective action is instituted by the Director or the Borrower within the applicable period and diligently pursued.  With regard to any alleged default concerning which notice is given to the Borrower under the provisions of this Section, the Director hereby grants the Borrower full authorization for the account of the Director to perform any covenant or obligation the non-performance of which is alleged in said

notice to constitute a default in the name and stead of the Director with full power to do any and all things and acts to the same extent that the Director could do and perform any such things and acts and with power of substitution.

THE DIRECTOR SHALL UNDER NO CIRCUMSTANCES BE OBLIGATED TO PAY THE PRINCIPAL OF, PREMIUM, IF ANY, OR INTEREST DUE ON THE SENIOR BONDS OR OTHER COSTS INCIDENT THERETO UPON ACCELERATION, REDEMPTION OR OTHERWISE EXCEPT FROM REVENUES AND FUNDS PLEDGED UNDER THE SENIOR INDENTURE. THE BONDHOLDERS SHALL HAVE NO RECOURSE AGAINST THE DIRECTOR OR ANY PROPERTY NOW OR HEREAFTER OWNED BY THE STATE OF NEVADA IN THE EVENT THAT SUCH REVENUES AND FUNDS ARE INSUFFICIENT TO MAKE SUCH PAYMENTS DUE WITH RESPECT TO THE BONDS, PROVIDED HOWEVER THAT THE BONDHOLDERS MAY EXERCISE ANY AVAILABLE REMEDY SET FORTH UNDER THE BORROWER LOAN DOCUMENTS.

SECTION 7.02   Institution of Legal Proceedings by Trustee. If one or more of the Events of Default shall happen and be continuing, the Trustee in its discretion may, and upon the written request of more than 50% of the Holders of 1st Tier Bonds, upon receipt of adequate indemnification satisfactory to the Trustee, proceed to protect or enforce its rights or the rights of the Bondholders under the Act or under this Senior Indenture or the Agreement by a suit in equity or action at law, either for the specific performance of any covenant or agreement contained herein or therein, or in aid of the execution of any power herein or therein granted, or by mandamus or other appropriate proceeding for the enforcement of any other legal or equitable remedy and take any other action as the Trustee shall deem most effectual in support of any of its rights or duties hereunder, including, but not limited to, the following:

(a)   By action or suit in equity require the Director and the Borrower to account as if each were the trustee of an express trust for the Owners of such Senior Bonds with respect to Funds held under the Agreement;

(b)   By action or suit in equity enjoin any acts or things which may be unlawful or in violation of the rights of the Owners of such Senior Bonds;

(c)   Prohibit the Borrower or Director from withdrawing moneys from any funds or accounts created hereunder or under the Agreement (except the Indemnification Account of the Contingency Fund or the Rebate Fund) without the Trustee's written consent, provided that moneys may be paid from the Construction Fund and the Contingency Fund for amounts due under the Design-Build Agreement for work completed prior to the giving of notice to the Contractors of the occurrence of such Event of Default;

(d)   Request that a court of competent jurisdiction appoint, to the extent permitted by law, a receiver or receivers of the trust estate granted hereunder, and the income, revenues, profits and use thereof, it being the intent hereof that, to the extent permitted by law, the Trustee shall be entitled to appointment of such a receiver as a matter of right;

(e)     Engage such consultants as the Trustee determines is in the best interest of the Owners of such Senior Bonds;

(f)     Exercise with respect to the trust estate granted hereunder, or any portion thereof, such rights and remedies as may be available to a secured party under the Uniform Commercial Code of Nevada;

(g)     Enter the Project for the purpose of operating the Project and/or collecting Project Revenues for deposit into the Revenue Fund to be used for the purpose and in the order of priority set forth in Section 5.03 hereof (and for no other purpose);

(h)     Pursue remedies legally available under any of the Project Agreements; or

(i)     Take such other steps to protect and enforce its rights and the rights of the Owners of such Senior Bonds, whether by action, suit or proceeding in aid of the execution of any power herein granted or for the enforcement of any other appropriate legal or equitable remedy, including, but not limited to, proceeding at law or in equity or by any other appropriate legal or equitable remedy, to enforce payment of the principal or Accreted Value of and interest on the Senior Bonds; provided that no such remedy shall be undertaken that has the effect of altering or circumventing the use and priority of use of Revenues set forth in Section 5.03.

Upon the occurrence and continuation of an Event of Default under Section 7.01(g) hereof, the Trustee may, with the consent of the Insurer, and shall, at the direction of the Insurer, or the Holders of not less than 50% of the 1st Tier Bonds with the consent of the Insurer, by written notice to the Director, the Borrower and the Insurer, declare the principal or Accreted Value of the 1st Tier Bonds to be immediately due and payable, whereupon that portion of the principal or Accreted Value of the 1st Tier Bonds thereby coming due and the interest thereon accrued to the date of payment shall, without further action, become and be immediately due and payable. Only if the Trustee has declared the principal and Accreted Value of the 1st Tier Bonds to be immediately due and payable as provided in the previous sentence, the Trustee may, and upon written request of the Holders of not less than 50% of the 2nd Tier Bonds Outstanding, shall, by written notice to the Director and the Borrower, declare the principal of the 2nd Tier Bonds Outstanding to be immediately due and payable, whereupon that portion of the principal of the 2nd Tier Bonds thereby coming due and the interest thereon accrued to the date of payment shall, without further action, become and be immediately due and payable. Interest on the Bonds of any Series shall cease to accrue from and after the date of declaration of any such acceleration of such Series.

The preceding paragraph, however, is subject to the condition that if, at any time after the principal or Accreted Value of the 1st Tier Bonds shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided, there shall have been deposited with the Trustee a sum which, together with any other amounts then held in the Revenue Fund, is sufficient to pay all the principal or Accreted Value of such 1st Tier Bonds matured prior to such declaration and all matured installments of interest (if any) upon all the 1st Tier Bonds, and the reasonable

expenses (including reasonable attorneys' fees) of the Trustee, and any and all other defaults (other than in the payment of principal or Accreted Value of and interest on such 1st Tier Bonds due and payable solely by reason of such declaration) shall have been made good or cured to the satisfaction of the Trustee in its sole discretion or provision deemed by the Trustee to be adequate shall have been made therefor, then, and in every such case, the holders of at least a majority in aggregate principal amount of the 1st Tier Bonds Outstanding, by written notice to the Director and to the Trustee may, on behalf of all the holders of all 1st Tier Bonds and 2nd Tier Bonds, if applicable, rescind and annul such declaration with respect to the 1st Tier Bonds and the 2nd Tier Bonds and its consequences and waive such default; provided that no such rescission and annulment shall extend to or shall affect any subsequent default, or shall impair or exhaust any right or power consequent thereon.

The Trustee may upon the written request of the Holders of not less than a majority in aggregate principal amount of 2nd Tier Bonds Outstanding so declare the principal or Accreted Value of all 2nd Tier Bonds Outstanding and the interest thereon immediately due and payable in a manner similar to that provided in this Section 7.02 with respect to the 1st Tier Bonds; provided, however, that at the time of any such declaration with respect to the 2nd Tier Bonds, the 1st Tier Bonds shall have been declared immediately due and payable. Such acceleration may be rescinded by action of a majority of the Holders of the 1st Tier Bonds as provided in the previous paragraph.

Anything in this Senior Indenture to the contrary notwithstanding, upon the occurrence and continuance of an event of default as defined herein, the Insurer shall be entitled to control and direct the enforcement of all rights and remedies granted to the Bondholders or the Trustee for the benefit of the Bondholders under this Senior Indenture, including, without limitation: (i) the right to accelerate the principal of the Bonds as described in this Senior Indenture, and (ii) the right to annul any declaration of acceleration, and the Insurer shall also be entitled to approve all waivers of events of default.

SECTION 7.03   Application of Revenues and Other Funds After Default. If an Event of Default shall occur and be continuing, all Revenues and any other funds then held or thereafter received by the Trustee under any of the provisions of this Senior Indenture (subject to Sections 5.06 and 6.06) shall be applied by the Trustee as follows and in the following order:

(1)   To the payment of any expenses necessary in the opinion of the Trustee to protect the interests of the Bondholders and payment of reasonable charges and expenses (including those previously outstanding) of the Trustee (including reasonable fees and disbursements of its counsel) incurred in and about the performance of its powers and duties under this Senior Indenture;

(2)   To the payment of Operation and Maintenance Costs or for amounts due under the Design-Build Agreement for work completed prior to the giving of notice to the Contractors of the occurrence of such Event of Default;

(3)   To the payment of the principal and Accreted Value of and interest then due on the Senior Bonds (upon presentation of the Senior Bonds to be paid, and stamping

thereon of the payment if only partially paid, or surrender thereof if fully paid) subject to the provisions of this Senior Indenture (including Section 6.02), as follows:

(A) Unless the principal of all of the Senior Bonds shall have become or have been declared due and payable,

First: To the payment to the persons entitled thereto of all installments of interest then due on the 1st Tier Bonds in the order of the maturity of such installments, and, if the amount available shall not be sufficient to pay in full any installment or installments maturing on the same date, then to the payment thereof ratably, according to the amounts due thereon, to the persons entitled thereto, without any discrimination or preference; and

Second: To the payment to the persons entitled thereto of the unpaid principal and Accreted Value of any 1st Tier Bonds which shall have become due, whether at maturity or by call for redemption, with interest on the overdue principal at the rate borne by the respective Bonds, and, if the amount available shall not be sufficient to pay in full all the 1st Tier Bonds, together with such interest. then to the payment thereof ratably, according to the amounts of principal due on such date to the persons entitled thereto, without any discrimination or preference;

Third: To the payment to the persons entitled thereto of all installments of interest then due on the 2nd Tier Bonds in the order of the maturity of such installments, and, if the amount available shall not be sufficient to pay in full any installment or installments maturing on the same date, then to the payment thereof ratably, according to the amounts due thereon, to the persons entitled thereto, without any discrimination or preference; and

Fourth: To the payment to the persons entitled thereto of the unpaid principal and Accreted Value of any 2nd Tier Bonds which shall have become due, whether at maturity or by call for redemption, with interest on the overdue principal at the rate borne by the respective Bonds, and, if the amount available shall not be sufficient to pay in full all the 2nd Tier Bonds, together with such interest. then to the payment thereof ratably, according to the amounts of principal due on such date to the persons entitled thereto, without any discrimination or preference;

(B) If the principal and Accreted Value of all of the Senior Bonds shall have become or have been declared due and payable:

First: to the payment of the principal and Accreted Value and interest then due and unpaid upon the 1st Tier Bonds, with interest on the overdue principal at the rate borne by the 1st Tier Bonds, and, if the amount available shall not be sufficient to pay in full the whole amount so due and unpaid, then to the payment thereof ratably, without preference or priority of principal or Accreted Value over interest, or of interest over principal or Accreted Value of, or of any installment of interest over any other installment of interest, or of any 1st Tier Bond over any other 1st Tier Bond, according to

the amounts due respectively for principal or Accreted Value and interest, to the persons entitled thereto without any discrimination or preference;

Second: to the payment of the principal and Accreted Value and interest then due and unpaid upon the 2nd Tier Bonds, with interest on the overdue principal at the rate borne by the 2nd Tier Bonds, and; if the amount available shall not be sufficient to pay in full the whole amount so due and unpaid, then to the payment thereof ratably, without preference or priority of principal or Accreted Value over interest, or of interest over principal or Accreted Value of, or of any installment of interest over any other installment of interest, or of any 2nd Tier Bond over any other 2nd Tier Bond, according to the amounts due respectively for principal or Accreted Value and interest, to the persons entitled thereto without any discrimination or preference;

(C) Unless the principal of all of the 1st Tier Bonds (but not the 2nd Tier Bonds) shall have become or have been declared due and payable,

First: To the payment to the persons entitled thereto of all installments of interest then due on the 1st Tier Bonds in the order of the maturity of such installments, and, if the amount available shall not be sufficient to pay in full any installment or installments maturing on the same date, then to the payment thereof ratably, according to the amounts due thereon, to the persons entitled thereto, without any discrimination or preference; and

Second: To the payment to the persons entitled thereto of the unpaid principal and Accreted Value of any 1st Tier Bonds which shall have become due, whether at maturity or by call for redemption, with interest on the overdue principal at the rate borne by the respective Bonds, and, if the amount available shall not be sufficient to pay in full all the 1st Tier Bonds, together with such interest, then to the payment thereof ratably, according to the amounts of principal due on such date to the persons entitled thereto, without any discrimination or preference;

(D) If the principal and Accreted Value of all of the 1st Tier Bonds (but not the 2nd Tier Bonds) shall have become or have been declared due and payable:

First: to the payment of the principal and Accreted Value and interest then due and unpaid upon the 1st Tier Bonds, with interest on the overdue principal at the rate borne by the 1st Tier Bonds, and, if the amount available shall not be sufficient to pay in full the whole amount so due and unpaid, then to the payment thereof ratably, without preference or priority of principal or Accreted Value over interest, or of interest over principal or Accreted Value of, or of any installment of interest over any other installment of interest, or of any 1st Tier Bond over any other 1st Tier Bond, according to the amounts due respectively for principal or Accreted Value and interest, to the persons entitled thereto without any discrimination or preference;

provided, however, that moneys set aside to pay principal or Accreted Value or interest on any particular Senior Bonds, shall not be used to pay anything other than principal or Accreted Value or interest on, the Senior Bonds, as otherwise provided in this Senior Indenture.

SECTION 7.04    Trustee to Represent Bondholders.   The Trustee is hereby irrevocably appointed (and the successive respective Holders of the Senior Bonds, by taking and holding the same, shall be conclusively deemed to have so appointed the Trustee) as trustee and true and lawful attorney-in-fact of the Bondholders for the purpose of exercising and prosecuting on their behalf such rights and remedies as may be available to the Bondholders under the provisions of the Senior Bonds, this Senior Indenture, the Agreement, the Act and applicable provisions of any other law. All rights of action under this Senior Indenture or the Senior Bonds or otherwise may be prosecuted and enforced by the Trustee without the possession of any of the Senior Bonds or the production thereof in any proceeding relating thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in the name of the Trustee for the benefit and protection of Bondholders, subject to the provisions of this Senior Indenture (including Section 6.02).

SECTION 7.05    Right of the Bondholders to Direct Proceedings.   Anything in this Senior Indenture to the contrary notwithstanding, a majority in outstanding principal amount (or Accreted Value at maturity, in the case of Capital Appreciation Bonds) of the Bondholders shall have the right, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the method of conducting all remedial proceedings taken by the Trustee hereunder, provided that such direction shall not be otherwise than in accordance with law and the provisions of this Senior Indenture and provided that the Trustee shall be indemnified as provided in Section 8.01.

SECTION 7.06    Limitation on the Bondholders' Right to Sue.   The Bondholders shall not have the right to institute any suit, action or proceeding at law or in equity, for the protection or enforcement of any right or remedy under this Senior Indenture, the Agreement, the Act or any other applicable law with respect to such Bond, unless (1) any Bondholder shall have given to the Trustee written notice of the occurrence of an Event of Default; (2) a majority of the Bondholders of the Series to which the default relates shall have made written request upon the Trustee to exercise the powers hereinbefore granted or to institute such suit, action or proceeding in its own name; (3) the Bondholders of the Series to which the default relates shall have tendered to the Trustee reasonable indemnity satisfactory to the Trustee against the costs, expenses and liabilities to be incurred in compliance with such request; (4) with respect to the Holders of 2nd Tier Bonds, such Bondholders shall have complied with the subordination provisions of Section 5.08; and (5) the Trustee shall have refused or omitted to comply with such request for a period of sixty (60) days after such written request shall have been received by, and said tender of indemnity shall have been made to, the Trustee.

Such notification, request, tender of indemnity and refusal or omission are hereby declared, in every case, to be conditions precedent to the exercise by the Bondholders of any remedy hereunder or under law; it being understood and intended that the Bondholders shall have no right in any manner whatever by its action to affect, disturb or prejudice the security of this Senior Indenture or to enforce any right under this Senior Indenture, the Agreement, the Act or other applicable law with respect to the Senior Bonds, except in the manner herein provided; and that all proceedings at law or in equity to enforce any such right shall be instituted, had and maintained in the manner herein provided, subject to the provisions of this Senior Indenture (including Section 6.02).

SECTION 7.07   Absolute Obligation of Director. Nothing in Section 7.06 or in any other provision of this Senior Indenture, or in the Senior Bonds, contained shall affect or impair the obligation of the Director, which is absolute and unconditional, to pay the principal or Accreted Value of and interest on the Senior Bonds to the Bondholders at their respective dates of maturity, or upon call for redemption, as herein provided, but only out of the Revenues and other assets herein pledged therefor, or affect or impair the right of the Bondholder, which is also absolute and unconditional, to enforce such payment by virtue of the contract embodied in the Senior Bonds.

SECTION 7.08   Termination of Proceedings. In case any proceedings taken by the Trustee or the Bondholders on account of any Event of Default shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Trustee or the Bondholders, then in every such case the Director, the Trustee and the Bondholders, subject to any determination in such proceedings, shall be restored to their former positions and rights hereunder, severally and respectively, and all rights, remedies. powers and duties of the Director, the Trustee and the Bondholders shall continue as though no such proceedings had been taken.

SECTION 7.09   Remedies Not Exclusive. No remedy herein conferred upon or reserved to the Trustee, or to the Bondholders is intended to be exclusive of any other remedy or remedies, and each and every such remedy, to the extent permitted by law, shall be cumulative and in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or otherwise.

SECTION 7.10   No Waiver of Default. No delay or omission of the Trustee or of any Bondholder to exercise any right or power arising upon the occurrence of any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Senior Indenture to the Trustee or to the Bondholder may be exercised from time to time and as often as may be deemed expedient.

## ARTICLE VIII

## THE TRUSTEE, THE PAYING AGENT, AND THE BOND REGISTRAR

SECTION 8.01   Duties, Immunities and Liabilities of Trustee.

(A)   The Trustee and the Registrar shall, prior to an Event of Default, and after the curing of all Events of Default which may have occurred, perform such duties and only such duties as are specifically set forth in this Senior Indenture. The Trustee shall, during the existence of any Event of Default (which has not been cured), exercise such of the rights and powers vested in it by this Senior Indenture, and use the same degree of care and skill in their exercise, as prudent persons would exercise or use under the circumstances in the conduct of their own affairs.

No provision of this Senior Indenture shall be construed to relieve the Trustee or the Registrar from liability for its own negligent action or its own negligent failure to act, except that:

(a)   Prior to such an Event of Default hereunder and after the curing of all Events of Default which may have occurred,

(1)   the duties and obligations of the Trustee and the Registrar, as the case may be, shall be determined solely by the express provisions of this Senior Indenture. The Trustee and Registrar, as the case may be, shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Senior Indenture, and no implied covenants or obligations shall be read into this Senior Indenture against such party; and

(2)   in the absence of bad faith on the part of the Trustee or the Registrar, as the case may be, such party, may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificate or opinion furnished to such party, conforming to the requirements of this Senior Indenture; but in the case of any such certificate or opinion which by any provision hereof is specifically required to be furnished to such party, shall be under a duty to examine the same to determine whether or not it conforms to the requirements of this Senior Indenture; and

(b)   At all times, regardless of whether or not any Event of Default shall exist,

(1)   the Trustee and the Registrar shall not be liable for any error of judgment made in good faith by a responsible officer or officers of the Trustee or the Registrar unless it shall be proved that the Trustee or the Registrar, as the case may be, was negligent in ascertaining the pertinent facts:

(2)   neither the Trustee nor the Registrar shall be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of not less than a majority, or such larger percentage as may be required hereunder, in aggregate principal amount or Accreted Value of the Senior Bonds at the time Outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee or Registrar, or exercising any trust or power conferred upon the Trustee or the Registrar under this Senior Indenture.

None of the provisions contained in this Senior Indenture shall require the Trustee or Registrar to expend or risk their own funds or otherwise incur individual financial liability in the performance of any of their duties or in the exercise of any of their rights or powers other than to notify the Director that they intend to take no particular action or to notify the Bondholders that they will take no action after an Event of Default. All indemnifications and releases from liability granted herein to the Trustee shall extend to the directors, officers, employees and agents of the Trustee.

(B)    The Director may remove the Trustee at any time upon its own decision or upon request of the Borrower, and shall remove the Trustee if at any time requested to do so by an instrument or concurrent instruments in writing signed by the Bondholders (or their attorneys duly authorized in writing) or if at any time the Trustee shall cease to be eligible in accordance with subsection (E) of this Section, or shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or a receiver of the Trustee or its property shall be appointed, or any public officer shall take control or charge of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, in each case by giving written notice of such removal to the Trustee, and thereupon shall appoint a successor Trustee by an instrument in writing; provided, however, that the Trustee may not be removed unless it is also removed as trustee of the Subordinate Indenture.

(C)    The Trustee may at any time resign by giving written notice of such resignation to the Director and by giving the Bondholders notice of such resignation by mail at the address shown on the registration books maintained by the Trustee, but only if the Trustee also resigns as trustee under the Subordinate Indenture.  Upon receiving such notice of resignation, the Director shall promptly appoint a successor Trustee by an instrument in writing. The Trustee shall not be relieved of its duties until such successor Trustee has accepted appointment.

(D)    Any removal or resignation of the Trustee pursuant to (B) or (C) above and appointment of a successor Trustee shall only become effective upon acceptance of appointment by the successor Trustee.  If no successor Trustee shall have been appointed and have accepted appointment within forty-five (45) days of giving notice of removal or notice of resignation as aforesaid, the resigning Trustee or the Bondholders may petition any court of competent jurisdiction for the appointment of a successor Trustee, and such court may thereupon, after such notice (if any) as it may deem proper, appoint such successor Trustee. Any successor Trustee appointed under this Senior Indenture, shall signify its acceptance of such appointment by executing and delivering to the Director and to its predecessor Trustee a written acceptance thereof, and thereupon such successor Trustee, without any further act, deed or conveyance, shall become vested with all the moneys, estates, properties, rights, powers, trusts, duties and obligations of such predecessor Trustee, with like effect as if originally named Trustee herein; but, nevertheless at the Request of the Director or the request of the successor Trustee, such predecessor Trustee shall execute and deliver any and all instruments of conveyance or further assurance and do such other things as may reasonably be required for more fully and certainly vesting in and confirming to such successor Trustee all the right, title and interest of such predecessor Trustee in and to any property held by it under this Senior Indenture and shall pay over, transfer, assign and deliver to the successor Trustee any money or other property subject to the trusts and conditions herein set forth. Upon request of the successor Trustee, the Director shall execute and deliver any and all instruments as may be reasonably required for more fully and certainly vesting in and confirming to such successor Trustee all such moneys, estates, properties, rights, powers, trusts, duties and obligations.   Upon acceptance of appointment by a successor Trustee as provided in this subsection, the Director shall mail a notice of the succession of such Trustee to the trusts hereunder to each rating agency which is then rating the Senior Bonds and to the Bondholders at the addresses shown on the registration books maintained by the Trustee. If the Director fails to mail such notice within fifteen (15) days

after acceptance of appointment by the successor Trustee, the successor Trustee shall cause such notice to be mailed at the expense of the Borrower.

(E)     Any Trustee appointed under the provisions of this Section in succession to the Trustee shall be a trust company or bank having the powers of a trust company acceptable to the Insurer, having (or in the case of a bank or trust company included in a bank holding company system, the related bank holding company having) a reported combined capital and surplus of at least one hundred million dollars ($100,000,000), and subject to supervision or examination by federal or state regulators, and shall also be appointed as trustee under the Subordinate Indenture. If such bank or trust company publishes a report of condition at least annually, pursuant to law or to the requirements of any supervising or examining regulators above referred to, then for the purpose of this subsection the combined capital and surplus of such bank or trust company shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this subsection (E). the Trustee shall resign immediately in the manner and with the effect specified in this Section.

(F)     The Trustee is not responsible for effecting, maintaining or renewing any policies of insurance or for any representations regarding the sufficiency of any policy of insurance.

(G)     The Trustee is not responsible for filing financing or continuation statements.

(H)     Subject to the provisions of Section 10.03. all moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received. Any interest allowed on any such moneys shall be deposited in the fund or account to which such moneys are credited. Any moneys held by the Trustee may be deposited by it in its banking department and invested as provided herein.

(I)     The Trustee shall not be obligated to file claims or proofs of loss in the case of insurance, to make any determinations with respect to any insurance or insurance policies, or to pay taxes or assessments.

SECTION 8.02     Merger or Consolidation.     Any company into which the Trustee may be merged or converted or with which it may be consolidated or any company resulting from any merger, conversion or consolidation to which it shall be a party or any company to which the Trustee may sell or transfer all or substantially all of its corporate trust business, provided such company shall be eligible under subsection (E) of Section 8.01, shall be the successor to such Trustee without the execution or filing of any paper or any further act, anything herein to the contrary notwithstanding.

SECTION 8.03     Liability of Trustee.

(A)     The recitals of facts herein and in the Senior Bonds contained shall be taken as statements of the Director, and the Trustee shall assume no responsibility for the correctness of the same, or make any representations as to the validity or sufficiency of this Senior Indenture or of the Senior Bonds or with respect to the security afforded by this Senior

Indenture. In addition, the Trustee shall assume no responsibility with respect to this Senior Indenture or Senior Bonds other than in connection with the duties or obligations specifically set forth in this Senior Indenture and no implied covenants or obligations shall be read into this Senior Indenture against the Trustee. The Trustee shall not be responsible for the expenditure of any moneys requisitioned under this Senior Indenture or the investment of any moneys under this Senior Indenture, including whether such expenditures or investments comply with applicable federal tax requirements for the Bonds. The Trustee shall, however, be responsible for its representations contained in its certificate of authentication on the Senior Bonds. The Trustee shall not be liable in connection with the performance of its duties hereunder, except for its own negligence. The Trustee may become the owner of Senior Bonds with the same rights it would have if it were not Trustee and, to the extent permitted by law, may act as depositary for and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of the Bondholders.

The Trustee may execute any of the trusts or powers set forth herein and perform the duties required of it hereunder by or through attorneys, agents, or receivers, and shall be entitled to the advice of counsel concerning all matters of trusts and its duties herein, and the Trustee shall not be answerable for the default or misconduct of any such attorney, agent or receiver selected by it with reasonable care.

(B)     The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Senior Indenture at the request, order or direction of the Bondholders pursuant to the provisions of this Senior Indenture unless such Bondholders shall have offered to the Trustee security or indemnity acceptable to it against the costs, expenses and liabilities which may be incurred therein or thereby.

(C)     The Trustee shall not be liable for any action taken by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Senior Indenture.

(D)     The Trustee shall not be deemed to have knowledge of any default or Event of Default hereunder unless and until an officer of the Trustee's corporate trust department responsible for the administration of the trusts created hereby shall have actual knowledge thereof, or unless it shall have received written notice thereof, at its Principal Corporate Trust Office. Except as otherwise expressly provided herein, the Trustee shall not be bound to ascertain or inquire as to the performance or observance of any of the terms, conditions, covenants or agreements herein or of any of the documents executed in connection with the Senior Bonds, or as to the existence of a default or Event of Default thereunder. The Trustee shall not be responsible for the validity or effectiveness of any collateral given to or held by it.

(E)     No provision of this Senior Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of its rights or powers, if it shall have reasonable grounds for believing that payment for such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(F)   The Trustee shall have no responsibility, opinion or liability with respect to any information statement or recital found in any Official Statement or other disclosure material, prepared or distributed with respect to the issuance of such Senior Bonds, except for information provided in writing by the Trustee.

SECTION 8.04      Right of Trustee to Rely on Documents.  The Trustee shall be protected in acting upon any notice, resolution, request, consent. order, certificate, report, opinion, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties and provided to the Trustee in connection with this Senior Indenture. In particular, the Trustee shall be entitled to rely upon a Borrower's Certificate to the effect that no Act of Bankruptcy has occurred.   The Trustee shall be under no duty to make any investigation or inquiry into any statements contained in or matters referred to in any such instrument. The Trustee may consult with counsel, who may be counsel of or to the Director, the Borrower, with regard to legal questions, and the opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accordance therewith.

The Trustee shall not be bound to recognize any person as the Holder of a Senior Bond unless and until such Senior Bond is submitted for inspection. if required, and such person's title thereto is satisfactorily established, if disputed.

Whenever in the administration of the trusts imposed upon it by this Senior Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a Certificate of the Director, and such Certificate shall be full warrant to the Trustee for any action taken or suffered in good faith under the provisions of this Senior Indenture in reliance upon such Certificate, but in its discretion the Trustee may, in lieu thereof, accept other evidence of such matter or may require such additional evidence as to it may deem reasonable.

SECTION 8.05      Preservation and Inspection of Documents.  All documents received by the Trustee under the provisions of this Senior Indenture shall be retained in its possession until six years after final maturity of the Senior Bonds and shall be subject at all reasonable times to the inspection of the Director and the Bondholders, and their agents and representatives duly authorized in writing, at reasonable hours and under reasonable conditions.

SECTION 8.06      Compensation.  The Director shall pay to the Trustee (solely from Additional Payments) from time to time such compensation as may be agreed to in writing with the Borrower and in the absence of such agreement, reasonable compensation, for all services rendered under this Senior Indenture, and also all reasonable expenses, charges, legal and consulting fees and other disbursements and those of its attorneys, agents and employees, incurred in and about the performance of its powers and duties under this Senior Indenture, and the Trustee shall have a lien therefor on any and all funds (except the Indemnification Account of the Contingency Fund and the Rebate Fund) at any time held by it under this Senior Indenture which lien shall be prior and superior to the lien of the Bondholders.

SECTION 8.07    Paying Agent. The Director, with the written approval of the Trustee and the Insurer, may appoint and at all times have a Paying Agent in such cities as the Director deems desirable, for the payment of the principal or Accreted Value of, and the interest (and premium, if any) on, the Senior Bonds. It shall be the duty of the Trustee to make such credit arrangements with such Paying Agent as may be necessary to assure, to the extent of the moneys held by the Trustee for such payment, the prompt payment of the principal of, and interest (and premium, if any) on, the Senior Bonds presented at either place of payment. The Trustee will not be responsible for the failure of any party to make funds available to the Trustee or Paying Agent. The Trustee is the initial Paying Agent. If the Paying Agent is any entity other than the Trustee, the Paying Agent may not hold any such funds.

SECTION 8.08    Appointment and Duties of Bond Registrar. The Director hereby designates the Trustee as initial Bond Registrar. The Bond Registrar shall not be entitled to any compensation from the Director, or the Trustee but, rather. shall only be entitled to compensation from the Borrower.

SECTION 8.09    Eligibility of Bond Registrar. A Bond Registrar appointed pursuant to the Senior Indenture shall be a corporation organized and doing business under the laws of the United States of America or any state or the District of Columbia, subject to supervision or examination by the United States, any state or the District of Columbia Regulator and having (or in the case of a bank or trust company included in a bank holding company system, the related bank holding company shall have) a combined capital and surplus of at least $100,000,000 as set forth in its most recent published annual report of condition.

SECTION 8.10    Bond Registrar's Performance of Duties. The Bond Registrar shall perform the duties provided for in the Senior Indenture and in exercising such duties shall be entitled to the same rights and immunities applicable to the Trustee as set forth in this Senior Indenture and shall not be liable for any action or omission to act except for negligence or willful misconduct.

SECTION 8.11    Replacement of Bond Registrar. The Bond Registrar may resign by notifying the Director, the Trustee, the Borrower at least 30 days before the effective date of such resignation. The Director, with the consent of the Borrower may remove the Bond Registrar and appoint a successor by notifying the Bond Registrar and the Trustee. No removal shall be effective until the successor has delivered an acceptance of its appointment to the Trustee and the predecessor Bond Registrar.

In the event of the resignation or removal of the Bond Registrar, such Bond Registrar shall pay over, assign and deliver any moneys held by it as Bond Registrar to its successor, or if there is no successor, to the Trustee. In the event that for any reason there shall be a vacancy in the office of Bond Registrar, the Trustee shall act as such Bond Registrar to the extent it has operational capacity to perform such tasks.

## ARTICLE IX

### MODIFICATION OR AMENDMENT OF THE SENIOR INDENTURE

#### SECTION 9.01    Amendments Permitted.

(A)    This Senior Indenture and the rights and obligations of the Director and of the Holders of the Senior Bonds and of the Trustee may be modified or amended from time to time and at any time by an indenture or indentures supplemental hereto, which the Director (upon the written request of the Borrower) and the Trustee may enter into when the written consent of more than 50% of the Holders of the 1st Tier Bonds shall have been filed with the Trustee. No such modification or amendment shall (1) extend the fixed maturity of any Senior Bond, or reduce the amount of principal thereof, or extend the time of payment, or change the method of computing the rate of interest thereon, or extend the time of payment of interest thereon, without the consent of the Bondholders as affected, (2) reduce the aforesaid percentage of Bondholders the consent of whom is required to effect any such modification or amendment, or permit the creation of any lien on the Revenues and other assets pledged under this Senior Indenture prior to or on a parity with the lien created by this Senior Indenture, or deprive the Bondholder of the lien created by this Senior Indenture on such Revenues and other assets (except as expressly provided in this Senior Indenture), without the consent of 100% of the Bondholders; (3) alter the obligation of the Borrower to make payments when due under the Agreement; or (4) materially adversely affect the Holders of the 2nd Tier Bonds without the prior written consent of the Holders of more than 50% of the 2nd Tier Bonds Outstanding. It shall not be necessary for the consent of the Bondholders to approve the particular form of any Supplemental Indenture, but it shall be sufficient if such consent shall approve the substance thereof. Promptly after the execution by the Director and the Trustee of any Supplemental Indenture pursuant to this subsection (A), the Trustee shall mail a notice, setting forth in general terms the substance of such Supplemental Indenture, to each rating agency then rating the Senior Bonds and the Bondholders at the addresses shown on the registration books of the Trustee. Any failure to give such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such Supplemental Indenture.

(B)    This Senior Indenture and the rights and obligations of the Director, of the Trustee and of the Bondholders may also be modified or amended from time to time and at any time, by an indenture or indentures supplemental hereto, which the Director (upon the written request of the Borrower) and the Trustee may enter into without the consent of the Bondholders, but only with the consent of the Insurer in the case of clauses (4) and (7) below, and only to the extent permitted by law and after receipt of an opinion of counsel that the provisions of such Supplemental Indenture shall not materially adversely affect the interests of the Bondholders, including, without limitation, for any one or more of the following purposes:

(1)    to add to the covenants and agreements of the Director contained in this Senior Indenture other covenants and agreements thereafter to be observed, to pledge or assign additional security for the Senior Bonds (or any portion thereof), or to surrender any right or power herein reserved to or conferred upon the Director;

(2)   to make such provisions for the purpose of curing any ambiguity, inconsistency or omission, or of curing or correcting any defective provision, contained in this Senior Indenture, or in regard to matters or questions arising under this Senior Indenture, as the Director may deem necessary or desirable and not inconsistent with this Senior Indenture;

(3)   to modify, amend or supplement this Senior Indenture in such manner as to permit the qualification hereof under the Trust Indenture Act of 1939, as amended, or any similar federal statute hereafter in effect, and to add such other terms, conditions and provisions as may be permitted by said act or similar federal statute;

(4)   to modify the list of Investment Securities contained herein, provided the Trustee has received written notification from each Rating Agency that such modification will not result in the reduction or withdrawal of any rating on any series of Senior Bonds;

(5)   to obtain or retain a rating on any Senior Bonds;

(6)   to preserve the status of the interest on all or any Series of Senior Bonds as excludable from gross income for federal income tax purposes: or

(7)   to make modifications or adjustments necessary. appropriate or desirable to accommodate credit enhancements, including letters of credit, insurance policies and/or surety bonds delivered with respect to funding all or a portion of any Debt Service Reserve Fund.

The Trustee shall give notice of any such modification or amendment to each rating agency then rating the Senior Bonds and to the Insurer.

(C)   The Trustee may in its discretion, but shall not be obligated to, enter into any such Supplemental Indenture authorized by subsections (A) or (B) of this Section which materially adversely affects the Trustee's own rights, duties or immunities under this Senior Indenture or otherwise.

SECTION 9.02   Effect of Supplemental Indenture. Upon the execution of any Supplemental Indenture pursuant to this Article, this Senior Indenture shall be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Senior Indenture of the Director, the Trustee and the Bondholders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such Supplemental Indenture shall be deemed to be part of the terms and conditions of this Senior Indenture for any and all purposes.

Any such Supplemental Indenture shall comply with the terms of this Article IX, and the Trustee may conclusively rely on the Opinion of Bond Counsel that the Supplemental Indenture complies with the provisions therein.

SECTION 9.03   Endorsement of Bonds; Preparation of New Bonds. Senior Bonds delivered after the execution of any Supplemental Indenture pursuant to this Article may, and if the Trustee so determines shall, bear a notation by endorsement or otherwise in form

approved by the Director and the Trustee as to any modification or amendment provided for in such Supplemental Indenture, and, in that case, upon demand of the Bondholders at the time of such execution and presentation of such Senior Bond for the purpose at the office of the Trustee or at such additional offices as the Trustee may select and designate for that purpose, a suitable notation shall be made on such Senior Bond. If the Supplemental Indenture shall so provide, new Bonds so modified as to conform, in the opinion of the Director and the Trustee, to any modification or amendment contained in such Supplemental Indenture. shall be prepared and executed by the Director and authenticated by the Trustee, and upon demand of the Bondholders shall be exchanged at the Principal Corporate Trust Office of the Trustee, without cost to the Bondholder, for Senior Bonds then Outstanding, upon surrender for cancellation of such Senior Bonds, in equal aggregate principal amounts of the same maturity.

SECTION 9.04     Amendment of Particular Bonds.   The provisions of this Article shall not prevent the Bondholders from accepting any amendment as to the particular Senior Bonds held by the Bondholders, provided that due notation thereof is made on such Bonds.

SECTION 9.05     Amendments to Financing Agreement Not Requiring Consent of Owners. The Director, the Borrower and the Trustee may. without the consent of or notice to the Owners, but subject to Section 6.07, execute or consent to any amendment, change or modification of the Financing Agreement as may be required:

(a)     By the terms of the Financing Agreement;

(b)     For the purpose of curing any ambiguity or formal defect or omission in the Financing Agreement or this Senior Indenture;

(c)     To subject to this Senior Indenture additional revenues, property or collateral;

(d)     In connection with any other change in the Financing Agreement or this Senior Indenture which, in the opinion of the Trustee, will not materially adversely affect the rights of the Owners of the Senior Bonds then Outstanding.

SECTION 9.06     Amendments, etc. to Financing Agreement Requiring Consent of Owners. Except as otherwise provided herein and consistent with Section 6.07, none of the Director, the Trustee or the Borrower will execute or consent to any amendment, change or modification of the Financing Agreement without the consent of the Owners of a majority in aggregate principal amount of 1st Tier Bonds then Outstanding. If at any time the Director requests the consent of the Owners to any proposed amendment, change or modification of the Financing Agreement, the Trustee will, upon being satisfactorily indemnified with respect to expenses, cause notice of the proposed amendment, change or modification to be given to all such Owners. The notice will briefly set forth the nature of the proposed amendment, change or modification and will state that copies of the instrument embodying them are on file at the Principal Corporate Trust Office of the Trustee for inspection by all such Owners. No such amendment may be approved by the Director, the Trustee or the Borrower which materially

adversely affects the rights of the Holders of the 2nd Tier Bonds without the consent of a majority in aggregate principal amount of the 2nd Tier Bonds Outstanding.

Notwithstanding anything to the contrary contained in this Senior Indenture, the Director and the Trustee may consent to any amendment, change or modification of the Financing Agreement upon receipt of the consent of all of the Owners of the Senior Bonds then Outstanding.

SECTION 9.07    Limitation on Amendments. No amendment, change or modification may decrease the respective obligations of the Borrower under the Financing Agreement to pay amounts sufficient to pay the principal of, premium. if any, and interest on the Senior Bonds when due.

SECTION 9.08    Opinion of Bond Counsel. The Director and the Trustee will not execute or consent to any amendment, change or modification to the Financing Agreement, unless there has been filed with the Trustee an Opinion of Bond Counsel stating that the proposed amendment, change or modification of the Financing Agreement is authorized or permitted by this Senior Indenture and complies with its terms and that upon execution it will be valid and binding upon the party or parties executing it in accordance with its terms.

## ARTICLE X

## DEFEASANCE

SECTION 10.01    Discharge of Senior Indenture. The Senior Bonds of any Series may be paid by the Director in any of the following ways, provided that the Director also pays or causes to be paid any other sums payable hereunder by the Director:

(a)    by paying or causing to be paid the principal or Accreted Value of, interest and premium, if any, on such Senior Bonds, as and when the same become due and payable;

(b)    by depositing with the Trustee, in trust, at or before maturity, money or securities in the necessary amount (as provided in Section 10.03) to pay or redeem all such Senior Bonds then Outstanding; or

(c)    by delivering to the Trustee, for cancellation by it. the Senior Bonds of any Series then Outstanding.

If the Director shall also pay or cause to be paid all other sums payable hereunder by the Director, and, after payment of all amounts due to the Trustee under Section 8.06, then and in that case, at the election of the Director upon request of the Borrower (evidenced by a Certificate of the Director, filed with the Trustee, signifying the intention of the Director to discharge all such indebtedness and this Senior Indenture), and notwithstanding that any such Senior Bonds shall not have been surrendered for payment, this Senior Indenture and the pledge of Revenues and other assets made under this Senior Indenture and all covenants, agreements and other obligations of the Director under this Senior Indenture shall cease, terminate, become void and be completely discharged and satisfied except only as provided in Section 10.02. In such event, upon Request of the Director, the Trustee shall cause an accounting for such period

or periods as may be requested by the Director to be prepared and filed with the Director and shall execute and deliver to the Director all such instruments as may be necessary or desirable to evidence such discharge and satisfaction.

SECTION 10.02    Discharge of Liability on Bonds.

(a)    Upon the deposit with the Trustee, in trust, at or before maturity, of money or securities in the necessary amount (as provided in Section 10.03) to pay or redeem any Outstanding Senior Bond (whether upon or prior to its maturity or the redemption date of such Senior Bond), provided that, if such Senior Bond is to be redeemed prior to maturity, notice of such redemption shall have been given as in Article IV provided or provision satisfactory to the Trustee shall have been made for the giving of such notice, then all liability of the Director in respect of such Senior Bond shall cease, terminate and be completely discharged, except only that the Holder thereof shall thereafter be entitled to payment of the principal of or Accreted Value and interest on such Senior Bond by the Director, and the Director shall remain liable for such payment, but only out of such money or securities deposited with the Trustee as aforesaid for their payment, and such money and securities shall be pledged to such payment.

(b)    The Director may at any time surrender to the Trustee for cancellation by it any Senior Bonds previously issued and delivered, which the Director may have acquired in any manner whatsoever, and such Senior Bonds, upon such surrender and cancellation, shall be deemed to be paid and retired.

(c)    Notwithstanding anything herein to the contrary, in the event that the principal or Accreted Value or interest due on the 1st Tier Series 2000 Bonds shall be paid by the Insurer pursuant to the Financial Guaranty Insurance Policy, the 1st Tier Series 2000 Bonds shall remain Outstanding for all purposes, not be defeased or otherwise satisfied and not be considered paid by the Director, and the assignment and pledge of the Trust Estate and all covenants, agreements and other obligations of the Director to the registered owners shall continue to exist and shall run to the benefit of the Insurer, and the Insurer shall be subrogated to the rights of such registered owners.

SECTION 10.03    Deposit of Money or Securities with Trustee.  Whenever in this Senior Indenture it is provided or permitted that there be deposited with or held in trust by the Trustee money or securities in the necessary amount to pay or redeem any Senior Bonds of any Series, the money or securities to be deposited or held may include money or securities held by the Trustee in the funds and accounts established pursuant to this Senior Indenture (exclusive of the Indemnification Account of the Contingency Fund and the Rebate Fund) and shall be:

(a)    Funds in an equal amount to the principal amount or Accreted Value of such Senior Bonds, and all unpaid interest thereon to maturity except that, in the case of Senior Bonds of any Series which are to be redeemed prior to maturity and in respect of which notice of such redemption shall have been given as in Article IV provided or provision satisfactory to the Trustee shall have been made for the giving of such notice, the amount to be deposited or held shall be the principal amount or Accreted Value or redemption price of such Senior Bonds and all unpaid interest thereon to the redemption date; or

(b)   . Investment Securities of the type described in clause (ii) of the definition of Investment Securities in Section 1.01 hereof which are non-callable, the principal of and interest on which when due will provide money sufficient (in the opinion of an independent certified public accountant) to pay the principal of, Accreted Value. premium, if any, all unpaid interest to maturity, or to the redemption date, as the case may be. on the Senior Bonds of any Series to be paid or redeemed. as such principal and interest become due, with maturities no longer than 30 days or as may be necessary to make the required payment on the Senior Bonds provided that, in the case of Senior Bonds which are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as in Article IV provided or provision satisfactory to the Trustee shall have been made for the giving of such notice; provided, in each case, that the Trustee shall have been irrevocably instructed (by the terms of this Senior Indenture or by Request of the Director) to apply such money to the payment of such principal, Accreted Value and interest with respect to such Senior Bonds.

## ARTICLE XI

### BOND INSURANCE

SECTION 11.01    Certain Conditions.

Notwithstanding any other provisions of this Senior Indenture, so long as the Financial Guaranty Insurance Policy or the 1st Tier Surety Reserve Bond is in effect:

(a)     Any provision of this Senior Indenture or the. Financing Agreement expressly recognizing or granting rights in or to the Insurer may not be amended in any manner which affects the rights of the Insurer hereunder without the prior written consent of the Insurer.

(b)     Unless otherwise provided in this Section, the Insurer's consent shall be required in addition to Bondholder consent, when required, for the following purposes: (i) execution and delivery of any supplemental Senior Indenture or any amendment, supplement or change to or modification of the Financing Agreement, (ii) removal of the Trustee or Paying Agent and selection and appointment of any successor trustee or paying agent, and (iii) initiation or approval of any action not described in (i) or (ii) above which requires Bondholder consent.

(c)     Notices

A.    While the Financial Guaranty Insurance Policy or the 1st Tier Surety Reserve Bond is in effect, the Borrower or the Trustee, as appropriate, shall furnish to the Insurer, attention Surveillance Department:

(i)   . as soon as practicable after the filing thereof, a copy of any financial statement of the Borrower and a copy of any audit and annual report of the Borrower;

(ii)    such additional information it may reasonably request; and

(iii)    a copy of any notice to be given to the registered owners of the Senior Bonds, including, without limitation, notice of any redemption of or defeasance of Senior Bonds,

and any certificate rendered pursuant to this Senior Indenture or the Financing Agreement relating to the security for the Senior Bonds.

B. While the Financial Guaranty Insurance Policy or the 1st Tier Surety Reserve Bond is in effect, the following notices shall be sent to the Insurer, attention: General Counsel's Office:

(i) The Trustee or Borrower, as appropriate. shall notify the Insurer of any failure of the Borrower to provide relevant notices or certificates.

(ii) Notwithstanding any other provision of this Senior Indenture or the Financing Agreement, the Trustee or Borrower, as appropriate, shall immediately notify the Insurer if at any time there are insufficient moneys to make any payments of principal and/or interest as required and immediately upon the occurrence of any event of default hereunder.

(d) The Borrower will permit the Insurer to discuss the affairs, finances and accounts of the Borrower or any information the Insurer may reasonably request regarding the security for the Senior Bonds with appropriate officers of the Borrower or the Borrower's agents or contractors. The Trustee or Borrower, as appropriate, will permit the Insurer to have access to the Project and have access to and to make copies of all books and records relating to the Senior Bonds at any reasonable time.

(e) The Insurer shall have the right to direct an accounting at the Borrower's expense and the Borrower's failure to comply with such direction within thirty (30) days after receipt of written notice of the direction from the Insurer shall be deemed a default hereunder; provided, however, that if compliance cannot occur within such period, then such period will be extended so long as compliance is begun within such period and diligently pursued, but only if such extension would not materially adversely affect the interests of any registered owner of the Senior Bonds.

(f) Trustee provisions.

(i) The Trustee may be removed at any time, at the request of the Insurer, for any breach of the Trust set forth herein, subject to the last proviso in Section 8.01(B) hereof.

(ii) The Insurer shall receive prior written notice of any Trustee resignation.

(iii) Notwithstanding any other provision of this Senior Indenture, no removal, resignation or termination of the Trustee (or Paying Agent) shall take effect until a successor, acceptable to The Insurer, shall be appointed.

(g) Notwithstanding any other provision of this Senior Indenture, in determining whether the rights of the Bondholders will be adversely affected by any action taken pursuant to the terms and provisions of this Senior Indenture, the Trustee shall consider the effect on the Bondholders as if there were no Financial Guaranty Insurance Policy.

(h)     To the extent that this Senior Indenture confers upon or gives or grants to the Insurer any right, remedy or claim under or by reason of this Senior Indenture, the Insurer is hereby explicitly recognized as being a third-party beneficiary hereunder and may enforce any such right, remedy or claim conferred, given or granted hereunder.

(i)     Nothing in this Senior Indenture expressed or implied is intended or shall be construed to confer upon, or to give or grant to, any person or entity, other than the Director, the Trustee, the Insurer, and the registered owners of the Senior Bonds. any right, remedy or claim under or by reason of this Senior Indenture or any covenant. condition or stipulation hereof, and all covenants, stipulations, promises and agreements in this Senior Indenture contained by and on behalf of the Director shall be for the sole and exclusive benefit of the Director, the Trustee, the Insurer, and the registered owners of the Senior Bonds.

SECTION 11.02     Payments Under the Financial Guaranty.Insurance Policy.

(a)     At least one (1) day prior to all Bond Payment Dates, the Trustee will determine whether there will be sufficient funds in the 1st Tier Debt Service Fund (after application of all moneys available in the 1st Tier Debt Service Reserve Fund) to pay the principal or Accreted Value of or interest on the 1st Tier Series 2000 Bonds on such Bond Payment Date. If the Trustee determines that there will be insufficient funds in such Funds, the Trustee shall so notify the Insurer. Such notice shall specify the amount of the anticipated deficiency, the 1st Tier Series 2000 Bonds to which such deficiency is applicable and whether such 1st Tier Series 2000 Bonds will be deficient as to principal or Accreted Value or interest, or both. If the Trustee has not so notified the Insurer at least one (1) day prior to a Bond Payment Date, the Insurer will make payments of principal or Accreted Value or interest due on the Bonds on or before the first (1st) day next following the date on which the Insurer shall have received notice of nonpayment from the Trustee.

(b)     The Trustee shall after giving notice to the Insurer as provided in (a) above, make available to the Insurer and, at the Insurer's direction, to the United States Trust Company of New York, as insurance trustee for the Insurer or any successor insurance trustee (the "Insurance Trustee"), the registration books of the Director maintained by the Trustee and all records relating to the funds and accounts maintained under the Senior Indenture.

(c)     The Trustee shall provide the Insurer and the Insurance Trustee with a list of registered owners of 1st Tier Bonds entitled to receive principal or Accreted Value or interest payments from the Insurer under the terms of the Financial Guaranty Insurance Policy, and shall make arrangements with the Insurance Trustee (i) to mail checks or drafts to the registered owners of 1st Tier Bonds entitled to receive full or partial interest payments from the Insurer and (ii) to pay principal or Accreted Value upon 1st Tier Bonds surrendered to the Insurance Trustee by the registered owners of 1st Tier Bonds entitled to receive full or partial principal or Accreted Value payments from the Insurer.

(d)     The Trustee shall, at the time it provides notice to the Insurer pursuant to (a) above, notify registered owners of 1st Tier Bonds entitled to receive the payment of principal or interest or Accreted Value thereon from the Insurer (i) as to the fact of such entitlement, (ii) that the Insurer will remit to them all or a part of the interest payments next coming due upon

proof of Bondholder entitlement to interest payments and delivery to the Insurance Trustee, in form satisfactory to the Insurance Trustee, of an appropriate assignment of the registered owner's right to payment, (iii) that should they be entitled to receive full payment of principal or Accreted Value from the Insurer, they must surrender their bonds (along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee to permit ownership of such Bonds to be registered in the name of the Insurer) for payment to the Insurance Trustee, and not the Trustee, and (iv) that should they be entitled to receive partial payment of principal or Accreted Value from the Insurer, they must surrender their Bonds for payment thereon first to the Trustee who shall note on such Bonds the portion of the principal or Accreted Value paid by the Trustee and then, along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee, to the Insurance Trustee, which will then pay the unpaid portion of principal or Accreted Value.

(e)   In the event that the Trustee has notice that any payment of principal of or Accreted Value or interest on a Bond which has become Due for Payment and which is made to a Bondholder by or on behalf of the Director has been deemed a preferential transfer and theretofore recovered from its registered owner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee shall, at the time the Insurer is notified pursuant to (a) above, notify all registered owners that in the event that any registered owner's payment is so recovered, such registered owner will be entitled to payment from the Insurer to the extent of such recovery if sufficient funds are not otherwise available, and the Trustee shall furnish to the Insurer its records evidencing the payments of principal of or Accreted Value and interest on the Bonds which have been made by the Trustee or Paying Agent, if any, and subsequently recovered from registered owners and the dates on which such payments were made.

(f)   In addition to those rights granted the Insurer under this Senior Indenture, the Insurer shall, to the extent it makes payment of principal of or Accreted Value or interest on the Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Financial Guaranty Insurance Policy, and to evidence such subrogation (i) in the case of subrogation as to claims for past due interest, the Trustee shall note the Insurer's rights as subrogee on the registration books of the Director maintained by the Trustee, upon receipt from the Insurer of proof of the payment of interest thereon to the registered owners of the Bonds, and (ii) in the case of subrogation as to claims for past due principal or Accreted Value, the Trustee shall note the Insurer's rights as subrogee on the registration books of the Director maintained by the Trustee, upon surrender of the Bonds by the registered owners thereof together with proof of the payment of principal or Accreted Value thereof.

SECTION 11.03   Payment Procedures Pursuant to 1st Tier Surety Bond.   As long as the 1st Tier Surety Reserve Bond shall be in full force and effect, the Director and the Trustee agree to comply with the following provisions:

(a)   In the event and to the extent that moneys on deposit in the 1st Tier Debt Service Fund, plus all amounts, letters of credit, insurance policies or surety bonds on deposit in and credited to the 1st Tier Debt Service Reserve Fund with respect to the 1st Tier Series 2000 Bonds in excess of the amount of the 1st Tier Surety Reserve Bond, are insufficient to pay the amount of principal and interest coming due on the 1st Tier Series 2000 Bonds, then upon the

later of : (i) one (1) day after receipt by the General Counsel of Ambac Assurance of a demand for payment in the form attached to the 1st Tier Surety Reserve Bond as Attachment 1 (the "Demand for Payment"), duly executed by the Trustee certifying that payment due under this Senior Indenture has not been made to the Trustee; or (ii) the payment date of the 1st Tier Series 2000 Bonds as specified in the Demand for Payment presented by the Trustee to the General Counsel of Ambac Assurance. Ambac Assurance will make a deposit of funds in an account with the Trustee or its successor, sufficient for the payment to the Trustee. of amounts which are then due to the Trustee under this Senior Indenture (as specified in the Demand for Payment) up to but not in excess of the Surety Bond Coverage, as defined in the 1st Tier Surety Reserve Bond; provided, however, that in the event that the amount on deposit in, or credited to, the Debt Service Reserve Fund with respect to the 1st Tier Series 2000 Bonds. in addition to the amount available under the 1st Tier Surety Reserve Bond, includes amounts available under a letter of credit, insurance policy, surety bond or other such funding instrument (the "Additional Funding Instrument"), draws on the 1st Tier Surety Reserve Bond shall only be made after all draws on any Additional Funding Instrument.

(b)     The Trustee shall, after submitting to the Insurer the Demand for Payment as provided in (a) above, make available to the Insurer all records relating to the funds and accounts maintained under this Senior Indenture. .

(c)     The Trustee shall, upon receipt of moneys received from the draw on the 1st Tier Surety Reserve Bond, as specified in the Demand for Payment. credit the 1st Tier Debt Service Reserve Fund to the extent of moneys received pursuant to such Demand for Payment.

(d)     The 1st Tier Debt Service Reserve Fund shall be replenished as provided in Section 5.03(b) and as otherwise provided in Section 5.04.

## ARTICLE XII

## MISCELLANEOUS

SECTION 12.01     Liability of Director Limited to Revenues.  Notwithstanding anything in this Senior Indenture or in the Senior Bonds, the Director shall not be required to advance any moneys derived from any source other than the Revenues and other assets pledged under this Senior Indenture for any of the purposes in this Senior Indenture, whether for the payment of the principal of or interest on the Senior Bonds or for any other purpose of this Senior Indenture.

SECTION 12.02     Successor Is Deemed Included in All References to Predecessor.  Whenever in this Senior Indenture either the Director or the Trustee is named or referred to, such reference shall be deemed to include the successors or assigns thereof, and all the covenants and agreements in this Senior Indenture contained by or on behalf of the Director or the Trustee shall bind and inure to the benefit of the respective successors and assigns thereof whether so expressed or not. All the covenants, stipulations, promises and agreements in this Senior Indenture contained, by or on behalf of the Director, shall bind and inure to the benefit of its successors and assigns, whether so expressed or not. If any of the powers or duties of the Director shall hereafter be transferred by any law of the State of Nevada, and if such transfer

shall relate to any matter or thing permitted or required to be done under this Senior Indenture by the Director, then the body or official of the State of Nevada who shall succeed to such powers or duties shall act and be obligated in the place and stead of the Director as in this Senior Indenture provided.

SECTION 12.03    Limitation of Rights to Parties and the Bondholder.  Nothing in this Senior Indenture or in the Senior Bonds expressed or implied is intended or shall be construed to give to any person other than the Director, the Trustee, the Borrower, and the Bondholders, any legal or equitable right, remedy or claim under or in respect of this Senior Indenture or any covenant, condition or provision therein or herein contained; and all such covenants, conditions and provisions are and shall be held to be for the sole and exclusive benefit of the Director, the Trustee, the Borrower, and the Bondholders.

SECTION 12.04    Waiver of Notice.   Whenever in this Senior Indenture the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice and in any such case the giving or receipt of such notice shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

SECTION 12.05    Destruction of Bonds.  Whenever in this Senior Indenture provision is made for the cancellation by the Trustee and the delivery to the Director of any Senior Bonds, the Trustee shall in lieu of such cancellation and delivery, destroy such Senior Bonds, and deliver a certificate of such destruction to the Director.

SECTION 12.06    Severability of Invalid Provisions.  If any one or more of the provisions contained in this Senior Indenture or in the Senior Bonds shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such provision or provisions shall be deemed severable from the remaining provisions contained in this Senior Indenture and such invalidity, illegality or unenforceability shall not affect any other provision of this Senior Indenture, and this Senior Indenture shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein. The Director hereby declares that it would have entered into this Senior Indenture and each and every other Section, paragraph, sentence, clause or phrase hereof and authorized the issuance of the Senior Bonds pursuant thereto irrespective of the fact that any one or more Sections, paragraphs, sentences, clauses or phrases of this Senior Indenture may be held illegal, invalid or unenforceable.

SECTION 12.07    Governing Law.  This Senior Indenture shall be governed exclusively by and construed in accordance with the applicable laws of the State of Nevada.

SECTION 12.08    Notices.  Notices shall be delivered to the Bondholder by first-class mail, postage prepaid, at the address set on the registration books. Any notice to or demand upon the Trustee may be served or presented, and such demand may be made, at the Principal Corporate Trust Office of the Trustee, which at the date of adoption of this Senior Indenture is located at the following address:

Wells Fargo Bank, N.A.
Wells Fargo Center
1300 SW 5th Avenue, 14th Floor
MAC P6101-149
Portland, OR 97201

or at such other address as may have been filed in writing by the Trustee with the Director. Any notice to or demand upon the Director, the Borrower or the Insurer shall be deemed to have been sufficiently given or served for all purposes by being delivered or sent by telex or facsimile or by being deposited, postage prepaid, in a post office letter box, addressed. as the case may be, as follows:

To the Director:

Director of the State of Nevada
Department of Business and Industry
1665 Hot Springs Road
Carson City, Nevada 89710
Attention: Chief of Business Finance and Planning
Fax: (775) 687-5798

To the Borrower:

Las Vegas Monorail Company
c/o John J. Haycock, Chairman
P.O. Box 340
Las Vegas, Nevada 89125-0340

with copy to

Michael C. Niarchos, Esq.
9220 Pitching Wedge Drive
Las Vegas, Nevada 89134

To the Insurer:

Ambac Assurance Corporation
One State Street Plaza
New York, New York 10004
Attn: Surveillance Department

or such other addresses as may have been filed in writing with the Trustee.

SECTION 12.09    Evidence of Rights of the Bondholders.

(a)    Any request, consent or other instrument required or permitted by this Senior Indenture to be signed and executed by Bondholders may be in any number of concurrent

instruments of substantially similar tenor and shall be signed or executed by Bondholder in person or by an agent or agents duly appointed in writing. Proof of the execution of any such request, consent or other instrument or of a writing appointing any such agent, or of the holding by any person of Senior Bonds transferable by delivery, shall be sufficient for any purpose of this Senior Indenture and shall be conclusive in favor of the Trustee and of the Director if made in the manner provided in this Section.

(b)      The fact and date of the execution by any person of any such request, consent or other instrument or writing may be proved by the certificate of any notary public or other officer of any jurisdiction, authorized by the laws thereof to take acknowledgments of deeds, certifying that the person signing such request, consent or other instrument acknowledged to such notary public or other officer the execution thereof, or by an affidavit of a witness of such execution duly sworn to before such notary public or other officer.

(c)      The ownership of registered Senior Bonds shall be proved by the bond registration books held by the Registrar. The Registrar, the Trustee and the Director may conclusively assume that such ownership continues until written notice to the contrary is served upon the Trustee. The fact and the date of execution of any request, consent or other instrument and the amount and distinguishing numbers of Senior Bonds held by the person so executing such request, consent or other instrument may also be proved in any other manner which the Trustee may deem sufficient. The Trustee may nevertheless, in its discretion, require further proof in cases where it may deem further proof desirable.

Any request, consent, or other instrument or writing of the Bondholder shall bind every future Bondholder, in respect of anything done or suffered to be done by the Trustee or the Director in accordance therewith or reliance thereon.

SECTION 12.10      Disqualified Bonds. In determining whether the Holders of the requisite aggregate principal amount of Senior Bonds have concurred in any demand, request, direction, consent or waiver under this Senior Indenture, Senior Bonds which are owned or held by or for the account of the Director or the Borrower, or by any other obligor on the Senior Bonds, or by any person directly or indirectly controlling or controlled by, or under direct or indirect common control with, the Director, the Borrower, or any other obligor on the Senior Bonds, shall be disregarded and deemed not to be Outstanding for the purpose of any such determination. Senior Bonds so owned which have been pledged in good faith may be regarded as Outstanding for the purposes of this Section if the pledgee shall establish to the satisfaction of the Trustee the pledgee's right to vote such Senior Bonds and that the pledgee is not a person directly or indirectly controlling or controlled by, or under direct or indirect common control with, the Director, the Borrower, or any other obligor on the Senior Bonds. In case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee.

SECTION 12.11      Action Not on Business Day.      Except as otherwise specifically provided in this Senior Indenture, if any date specified for the payment of any Senior Bond or the performance of any act falls on a day which is not a Business Day in the place of performance, such payment or performance shall be made on the next succeeding Business Day with the same effect as if made on such date. In the case of the payment of principal, Accreted

Value or interest on any Senior Bond which shall be due on a day which is not a Business Day, and such payment is made on the next succeeding Business Day, no additional interest shall accrue as a result of such delayed payment.

SECTION 12.12   Funds and Accounts. The Trustee may establish such funds and accounts as are required hereunder or as it deems necessary or appropriate to perform its obligations hereunder. Any fund or account required by this Senior Indenture to be established and maintained by the Trustee may be established and maintained in the accounting records of the Trustee, either as a fund or an account, and may, for the purposes of such records, any audits thereof and any reports or statements with respect thereto, be treated either as a fund or as an account; but all such records with respect to all such funds and accounts shall at all times be maintained in accordance with appropriate and accurate accounting principles and with due regard for the requirements of Section 6.05 and for the protection of the security of the Senior Bonds and the rights of every Holder thereof. The Trustee shall provide a monthly statement to the Director describing the activity of the funds and accounts held hereunder; provided that the Trustee shall not be obligated to provide an accounting for any account that (a) has a balance of zero, and (b) has not had any activity since the last reporting date.

SECTION 12.13   Waiver of Personal Liability. No member, officer, agent or employee of the Department of Business and Industry, including the Director, and no officer, official, agent or employee of the State of Nevada or any department, board or agency of the foregoing shall be individually or personally liable for the payment of the principal of or premium or interest on the Senior Bonds or be subject to any personal liability or accountability by reason of the issuance thereof; but nothing herein contained shall relieve any such member, officer, agent or employee from the performance of any official duty provided by law or by this Senior Indenture.

SECTION 12.14   Opinions of Bond Counsel.   Whenever in this Senior Indenture it is required that prior to the taking of any action (including but not limited to any modifications of arbitrage covenants contained in Sections 5.06 and 6.06 hereof) an opinion of Bond Counsel is required to be delivered to the effect that such action will not adversely affect the Tax-exempt status of the Senior Bonds, and such opinion is not given by Orrick, Herrington & Sutcliffe LLP and Robert R. Barengo, Esq., the opinion of Bond Counsel shall instead affirmatively state, in a manner acceptable to the Director and the Trustee, that interest on the Senior Bonds is Tax-exempt and will remain so after the action in question. This Section shall apply in the same fashion with respect to the affirmative opinion of any such successor Bond Counsel.

SECTION 12.15   Execution in Several Counterparts. This Senior Indenture may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original; and all such counterparts, or as many of them as the Director and the Trustee shall preserve undestroyed, shall together constitute but one and the same instrument.

SECTION 12.16   Order.   This Senior Indenture shall constitute an order pursuant to Section 349.610 of the Act.

IN WITNESS WHEREOF, the DIRECTOR OF THE STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY and WELLS FARGO BANK, N.A. have caused this Senior Indenture to be executed by officers thereunto duly authorized all as of the day and year first above written.

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY

By: _____
        Authorized Signatory

WELLS FARGO BANK, N.A., as Trustee

By: _____
        Authorized Officer

MONORAIL SENIOR INDENTURE

IN WITNESS WHEREOF, the DIRECTOR OF THE STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY and WELLS FARGO BANK, N.A. have caused this Senior Indenture to be executed by officers thereunto duly authorized all as of the day and year first above written.

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY


By: _____
             Authorized Signatory


WELLS FARGO BANK. N.A., as Trustee


By: _____
             Authorized Officer

EXHIBIT A1

[FORM OF 1st TIER BOND]

No. R-1                                                                                    $_____

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
LAS VEGAS MONORAIL PROJECT REVENUE BOND
(LAS VEGAS MONORAIL COMPANY PROJECT)
1st TIER SERIES 2000

THE BONDS DO NOT CONSTITUTE THE DEBT OR INDEBTEDNESS OF THE STATE OF
NEVADA OR ANY CITY OR COUNTY WITHIN THE MEANING OF ANY PROVISION
OR LIMITATION OF THE CONSTITUTION OF THE STATE OF NEVADA OR
STATUTES, AND DO NOT CONSTITUTE OR GIVE RISE TO A PECUNIARY LIABILITY
OF THE STATE OF NEVADA OR A CHARGE AGAINST ITS GENERAL CREDIT OR
TAXING POWERS.

| MATURITY DATE: | DATE OF DELIVERY: | INTEREST RATE: | CUSIP: |
|---|---|---|---|
|  |  | ____% |  |
| _____ | _____ |  | ____ |

Registered Owner:     CEDE & CO.

Principal Amount:         _____

The Director of the State of Nevada Department of Business and Industry, being duly appointed
to such position under the laws of the State of Nevada (the "Director"), for value received,
hereby promises to pay (but only out of Revenues as hereinafter provided) to the registered
owner identified above or registered assigns, on the maturity date set forth above, the principal
sum set forth above and to pay (but only out of Revenues, as hereinafter provided) interest on the
balance of said principal amount from time to time remaining unpaid from and including the date
hereof until payment of said principal amount has been made or duly provided for, at the interest
rate set forth above and on the dates determined as described herein and in the Indenture (as
hereinafter defined).  Capitalized terms used herein and not otherwise defined shall have the
meanings ascribed to them in the Indenture.  The payment of interest, principal and premium, if
any, shall be made in lawful money of the United States of America and shall be paid by Wells
Fargo Bank, National Association as trustee, or its successor (the "Trustee"), with a corporate
trust office located in Portland, Oregon, or such other office as may be designated pursuant to the
Indenture.  Payment of interest on this Bond shall be made on each Interest Payment Date to the
Bondholder appearing on the bond registration books of the Bond Registrar as the holder thereof
on the Record Date, such interest to be paid by the Paying Agent, by wire transfer in
immediately available funds at an account maintained in the United States of America, at such
wire address as such Bondholder shall specify by written notice to the Trustee; except, in each
case, that, if and to the extent that there shall be a default in the payment of the interest due on
such Interest Payment Date, such defaulted interest shall be paid to the holder in whose name

any such Bonds are registered at the close of business on the tenth to last Business Day next preceding the date of payment of such defaulted interest.

Payment of principal on this Bond shall be made at maturity on the Principal Payment Date to the Bondholder appearing on the bond registration books of the Bond Registrar as the holder thereof on the Record Date, such principal to be paid by the Paying Agent to such holder by wire transfer in immediately available funds at an account maintained in the United States of America, at such address as such Bondholder shall specify by written notice to the Trustee, except, in each case, that, if and to the extent there shall be a default in the payment of the principal due on such Principal Payment Date, such defaulted principal shall be paid to the holders in whose name any such Bonds are registered at the close of business on the tenth day next preceding the date of payment of such defaulted principal.

If any Bond Payment Date is not a Business Day, such interest, principal and premium, if any, due on such Bond Payment Date shall be paid on the preceding Business Day.

This Bond shall bear interest at the fixed annual interest rate listed above, payable semiannually on each January 1, and July 1, beginning January 1, 2001.

The Bonds are authorized to be issued pursuant to the provisions of Sections 349.400 through 349.670, inclusive, of the Nevada Revised Statutes, as amended and supplemented (the "Act"). The Bonds are limited obligations of the Director and, as and to the extent set forth in the Indenture, are payable solely from, and secured by a pledge of and lien on, the Revenues. Proceeds from the sale of the Bonds will be loaned by the Director to Las Vegas Monorail Company, a Nevada nonprofit corporation (the "Borrower"), under the terms of a Financing Agreement, dated as of September 1, 2000 (the "Agreement"), between the Director and the Borrower. The Bonds are all issued under and secured by and entitled to the benefits of an Indenture, dated as of September 1, 2000 (the "Indenture"), between the Director and the Trustee; all receipts of the Trustee credited under the provisions of the Indenture against such payments; and any moneys held by the Trustee under the Indenture for such purpose, and there shall be no other recourse against the Director or any property now or hereafter owned by it.

This Bond is one of a duly authorized issue of bonds of the Director designated as the "Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds, 1st Tier Series 2000" (the "Bond" or "1st Tier Bonds" or "Bonds"), limited in aggregate principal amount as provided in, and issued under and secured by, the Indenture. Reference is hereby made to the Indenture and all indentures supplemental thereto for a description of the rights thereunder of the registered owner of the Bond, of the nature and extent of the security, of the rights, duties and immunities of the Trustee and of the rights and obligations of the Director thereunder. The holder of this Bond, by acceptance hereof, assents and agrees to all of the terms and provisions of the Indenture and of the Agreement.

This Bond is transferable by the registered owner hereof, in person, or by its attorney duly authorized in writing, at the corporate trust office of the Trustee, but only in the manner, subject to the limitations and upon payment of the charges provided in the Indenture, and upon surrender and cancellation of this Bond. Upon such transfer a new fully registered Bond for the same aggregate principal amount, will be issued to the transferee in exchange therefor. The Director,

A1-2

the Trustee and the Bond Registrar may treat the registered owner hereof as the absolute owner hereof for all purposes, and the Director, the Trustee and the Bond Registrar shall not be affected by any notice to the contrary.

The Bonds shall be subject to redemption upon the following terms:

(1)    Optional Redemption Upon Occurrence of Extraordinary Events. *(a) From Eminent Domain Proceeds.* The Bonds may be redeemed in whole or in part, as described in the Indenture, at the option of the Director upon the written direction of the Borrower on any Interest Payment Date at a redemption price equal to the principal amount thereof, plus a premium of ten percent (10%) of such principal amount, plus accrued interest to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or substantially all of the Project is condemned or taken by eminent domain to such extent that, in the opinion of an independent engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director, it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such condemnation or taking and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months.

*(b) From Casualty Insurance Proceeds.* The Bonds may be redeemed in whole or in part, as described in the Indenture, at the option of the Director upon the written direction of the Borrower on any Interest Payment Date at a redemption price equal to the principal amount thereof, without premium, plus accrued interest to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or substantially all of the Project is damaged or destroyed to such extent that, in the opinion of an independent engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director (1) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months, or (2) the cost of restoration of the Project would substantially exceed the Net Proceeds of insurance carried thereon

(2)    Optional Redemption. The Bonds shall be subject to optional redemption by the Director, upon the written direction of the Borrower, in whole or in part, at any time on and after the dates and at the redemption prices set forth below, together with accrued interest, if any, to the redemption date:

|  Redemption Period | Redemption Price |
|  (both dates inclusive) | |

(3).   Mandatory Sinking Redemption.  The Bonds are subject to mandatory sinking redemption on January 1 of the years and in the amounts set forth below at a redemption price equal to the principal amount of the Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|------|--------|

If less than all of the Bonds are to be redeemed, the particular Bonds to be redeemed shall be selected as provided in the Indenture.  Any Bond subject to redemption not tendered on the scheduled redemption date shall no longer be outstanding and shall cease to accrue interest from and after the redemption date, and the holders of such Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof.

Notice of any optional or mandatory redemption shall be given by the Trustee by mail not less than 30 days nor more than 60 days prior to the redemption date to the Director and the registered owners of the Bond at their address shown on the registration books of the Bond Registrar; provided, however, that notice of optional redemption without premium shall be given as soon as practicable.

The holder of this Bond shall have no right to institute any suit, action or proceeding at law or in equity, for any remedy under or upon the Indenture except as provided in the Indenture.

No recourse shall be had for the payment of the principal of, premium, if any, or interest on any of the Bonds or for any claim based thereon or upon any obligation, covenant or agreement in the Indenture contained, against any past, present or future member, director, officer, employee or agent of the Director, or through the Director, or any successor to the Director, under any rule of law or equity, statute or constitution or by the enforcement of any assessment or penalty or otherwise, and all such liability of any such member, director, officer, employee or agent as such is hereby expressly waived and released as a condition of and in consideration for the execution of the Indenture and the issuance of any of the Bonds.

The Indenture contains provisions permitting the Director and the Bondholder at the time outstanding to execute supplemental indentures, or add any provisions to, or change in any manner, or eliminate any of the provisions of, the Indenture.

The Indenture also contains certain provisions permitting the Director and the Trustee to execute supplemental indentures without consent of the Owners of the Bonds, subject to certain conditions in the Indenture.

The Indenture prescribes the manner in which it may be discharged and after which the Bonds shall no longer be secured by or entitled to the benefits of the Indenture, except for the purposes of transfer and exchange of Bonds and of payment of the principal of and premium, if any, and interest on the Bonds as the same become due and payable, including a provision that under certain circumstances the Bonds shall be deemed to be paid if certain securities, as defined therein, maturing as to principal and interest in such amounts and at such times as to insure the availability of sufficient moneys to pay the principal of, premium, if any, and interest on the Bonds and all necessary and proper fees, compensation and expenses of the Trustee shall have been deposited with the Trustee.

No member or officer of the Director, nor any person executing this Bond, shall in any event be subject to any personal liability or accountability by reason of the issuance of the Bonds.

It is hereby certified that all of the conditions, things and acts required to exist, to have happened and to have been performed precedent to and in the issuance of this Bond do exist, have happened and have been performed in due time, form and manner as required by the Constitution and statutes of the State of Nevada.

This Bond shall not be entitled to any benefit under the Indenture, or become valid or obligatory for any purpose, until the certificate of authentication hereon endorsed shall have been signed by the Bond Registrar.

THE DIRECTOR SHALL UNDER NO CIRCUMSTANCES BE OBLIGATED TO PAY THE PRINCIPAL OF, PREMIUM, IF ANY, OR INTEREST DUE ON THIS BOND OR OTHER COSTS INCIDENT HERETO UPON ACCELERATION, REDEMPTION OR OTHERWISE EXCEPT FROM REVENUES AND FUNDS PLEDGED UNDER THE INDENTURE. THE BONDHOLDER SHALL HAVE NO RECOURSE AGAINST THE DIRECTOR OR ANY PROPERTY NOW OR HEREAFTER OWNED BY IT IN THE EVENT THAT SUCH REVENUES AND FUNDS ARE INSUFFICIENT TO MAKE SUCH PAYMENTS DUE WITH RESPECT TO THIS BOND, PROVIDED HOWEVER THAT THE BONDHOLDER MAY EXERCISE ANY AVAILABLE REMEDY SET FORTH UNDER THE BORROWER LOAN DOCUMENTS.

Clark County, Nevada is not liable or responsible, legally, morally or otherwise, for any costs associated with repayment of the principal of or interest on this Bond, the costs of operation or maintenance of the Las Vegas Monorail (the "Monorail"), or any other expenses associated with the Monorail and its financing, and the holders of any bonds shall not rely on any County involvement in payment of such costs or other involvement with the Monorail. The County has not assumed, and has no duties to investors with respect to the Monorail, its operation, maintenance or financing, disclosure to investors or monitoring any of the foregoing. By acceptance of this Bond, each individual bondholder waives any and all causes of action it may ever have against the County for any matter arising from or concerning the Bonds, the Monorail and the contents of any disclosure statement relating to the Bonds or the Monorail.

IN WITNESS WHEREOF, the Director of the State of Nevada Department of Business and Industry has caused this Bond to be duly executed in, all as of the above date.

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY

By _____
          Sydney Wickliffe, Director

## STATEMENT OF INSURANCE

Municipal Bond Insurance Policy No. ___ (the "Policy") with respect to payments due for principal of and interest on this bond has been issued by Ambac Assurance Corporation ("Ambac"). The Policy has been delivered to the United States Trust Company of New York, New York, New York, as the Insurance Trustee under said Policy and will be held by such Insurance Trustee or any successor insurance trustee. The Policy is on file and available for inspection at the principal office of the Insurance Trustee and a copy thereof may be secured from Ambac or the Insurance Trustee. All payments required to be made under the Policy shall be made in accordance with the provisions thereof. The owner of this bond acknowledges and consents to the subrogation rights of Ambac as more fully set forth in the Policy.

## TRUSTEE'S CERTIFICATE OF AUTHENTICATION

Dated: _____, 2000

This is one of the Bonds described in the within- mentioned Indenture.

WELLS FARGO BANK, N.A., as Trustee

By _____
          Authorized Signature

## ASSIGNMENT

For value received the undersigned do(es) hereby sell, assign and transfer unto _____ the within-mentioned Registered Bond and do(es) hereby irrevocably constitute and appoint _____ attorney, to transfer the same on the books of the Bond Registrar with full power of substitution in the premiscs.

_____

Dated: _____, _____

Note:  The signature(s) to this Assignment must correspond with the name(s) as written on the face of the within Registered Bond in every particular, without alteration or enlargement or any change whatsoever.

EXHIBIT B1

FORM OF 2ND TIER BOND

No. R-1                                                                          $_____

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
LAS VEGAS MONORAIL PROJECT REVENUE BOND
(LAS VEGAS MONORAIL COMPANY PROJECT)
2ND TIER SERIES 2000

THE BONDS DO NOT CONSTITUTE THE DEBT OR INDEBTEDNESS OF THE STATE OF
NEVADA OR ANY CITY OR COUNTY WITHIN THE MEANING OF ANY PROVISION
OR LIMITATION OF THE CONSTITUTION OF THE STATE OF NEVADA OR
STATUTES, AND DO NOT CONSTITUTE OR GIVE RISE TO A PECUNIARY LIABILITY
OF THE STATE OF NEVADA OR A CHARGE AGAINST ITS GENERAL CREDIT OR
TAXING POWERS.

MATURITY DATE:     DATE OF DELIVERY:     INTEREST RATE:     CUSIP:

_____          _____             ___%              ____

Registered Owner:   CEDE & CO.

Principal Amount:    _____

The Director of the State of Nevada Department of Business and Industry, being duly appointed
to such position under the laws of the State of Nevada (the "Director"), for value received,
hereby promises to pay (but only out of Revenues as hereinafter provided) to the registered
owner identified above or registered assigns, on the maturity date set forth above, the principal
sum set forth above and to pay (but only out of Revenues, as hereinafter provided) interest on the
balance of said principal amount from time to time remaining unpaid from and including the date
hereof until payment of said principal amount has been made or duly provided for, at the interest
rate set forth above and on the dates determined as described herein and in the Indenture (as
hereinafter defined). Capitalized terms used herein and not otherwise defined shall have the
meanings ascribed to them in the Indenture. The payment of interest, principal and premium, if
any, shall be made in lawful money of the United States of America and shall be paid by Wells
Fargo Bank, N.A. as trustee, or its successor (the "Trustee"), with a corporate trust office located
in Portland, Oregon, or such other office as may be designated pursuant to the Indenture.
Payment of interest on this Bond shall be made on each Interest Payment Date to the Bondholder
appearing on the bond registration books of the Bond Registrar as the holder thereof on the
Record Date, such interest to be paid by the Paying Agent, by wire transfer in immediately
available funds at an account maintained in the United States of America, at such wire address as
such Bondholder shall specify by written notice to the Trustee; except, in each case, that, if and
to the extent that there shall be a default in the payment of the interest due on such Interest
Payment Date, such defaulted interest shall be paid to the holder in whose name any such Bonds

are registered at the close of business on the tenth to last Business Day next preceding the date of payment of such defaulted interest.

Payment of principal on this Bond shall be made at maturity on the Principal Payment Date to the Bondholder appearing on the bond registration books of the Bond Registrar as the holder thereof on the Record Date, such principal to be paid by the Paying Agent to such holder by wire transfer in immediately available funds at an account maintained in the United States of America, at such address as such Bondholder shall specify by written notice to the Trustee, except, in each case, that, if and to the extent that there shall be a default in the payment of the principal due on such Principal Payment Date, such defaulted principal shall be paid to the holders in whose name any such Bonds are registered at the close of business on the tenth day next preceding the date of payment of such defaulted principal.

If any Bond Payment Date is not a Business Day, such interest, principal and premium, if any, due on such Bond Payment Date shall be paid on the preceding Business Day.

This Bond shall bear interest at the fixed annual interest rate listed above, payable semiannually on each January 1; and July 1, beginning January 1, 2001.

The 2nd Tier Bonds are subordinated in right of payment, in the manner and to the extent set forth in the Indenture, to the prior payment in full of all 1st Tier Bonds, whether outstanding on the date of the Indenture or thereafter created, incurred, assumed, or guaranteed. Each holder by his acceptance hereof agrees to be bound by such provisions and authorizes and expressly directs the Trustee, on his behalf, to take such action as may be necessary or appropriate to effectuate the subordination provided for in the Indenture and appoints the Trustee his attorney-in-fact for such purposes.

The Bonds are authorized to be issued pursuant to the provisions of Sections 349.400 through 349.670, inclusive, of the Nevada Revised Statutes, as amended and supplemented (the "Act"). The Bonds are limited obligations of the Director and, as and to the extent set forth in the Indenture, are payable solely from, and secured by a pledge of and lien on, the Revenues. Proceeds from the sale of the Bonds will be loaned by the Director to Las Vegas Monorail Company, a Nevada nonprofit corporation (the "Borrower"), under the terms of a Financing Agreement, dated as of September 1, 2000 (the "Agreement"), between the Director and the Borrower. The Bonds are all issued under and secured by and entitled to the benefits of a Senior Indenture, dated as of September 1, 2000 (the "Indenture"), between the Director and the Trustee; all receipts of the Trustee credited under the provisions of the Indenture against such payments; and any moneys held by the Trustee under the Indenture for such purpose, and there shall be no other recourse against the Director or any property now or hereafter owned by it.

This Bond is one of a duly authorized issue of bonds of the Director designated as the "Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds, 2nd Tier Series 2000" (the "Bond" or "2nd Tier Bonds" or "Bonds"), limited in aggregate principal amount as provided in, and issued under and secured by, the Indenture. Reference is hereby made to the Indenture and all indentures supplemental thereto for a description of the rights thereunder of the registered owner of the Bond, of the nature and extent of the security, of the rights, duties and immunities of the Trustee and of the rights and

obligations of the Director thereunder. The holder of this Bond, by acceptance hereof, assents and agrees to all of the terms and provisions of the Indenture and of the Agreement.

This Bond is transferable by the registered owner hereof, in person, or by its attorney duly authorized in writing, at the corporate trust office of the Trustee, but only in the manner, subject to the limitations and upon payment of the charges provided in the Indenture, and upon surrender and cancellation of this Bond. Upon such transfer a new fully registered Bond for the same aggregate principal amount, will be issued to the transferee in exchange therefor. The Director, the Trustee and the Bond Registrar may treat the registered owner hereof as the absolute owner hereof for all purposes, and the Director, the Trustee and the Bond Registrar shall not be affected by any notice to the contrary.

The Bonds shall be subject to redemption upon the following terms:

(1)   Optional Redemption Upon Occurrence of Extraordinary Events. *(a) From Eminent Domain Proceeds.* The Bonds may be redeemed in whole or in part, as described below, at the option of the Director upon the written direction of the Borrower on any Interest Payment Date at a redemption price equal to the principal amount thereof, plus a premium of ten percent (10%) of such principal amount, plus accrued interest to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or substantially all of the Project is condemned or taken by eminent domain to such extent that, in the opinion of an independent engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director, it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such condemnation or taking and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months.

*(b) From Property Casualty Insurance Proceeds.* The Bonds may be redeemed in whole or in part, as described below, at the option of the Director upon the written direction of the Borrower on any Interest Payment Date at a redemption price equal to the principal amount thereof, without premium, plus accrued interest to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or substantially all of the Project is damaged or destroyed to such extent that, in the opinion of an independent engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director (1) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months, or (2) the cost of restoration of the Project would substantially exceed the Net Proceeds of insurance carried thereon.

(2)   Optional Redemption. The Bonds shall be subject to optional redemption by the Director, upon the written direction of the Borrower, in whole or in part, at any time on and after the dates and at the redemption prices set forth below, together with accrued interest, if any, to the redemption date:

| Redemption Period<br>(both dates inclusive) | Redemption Price |
|---|---|

(3)   Mandatory Sinking Redemption.   The Bonds are subject to mandatory sinking redemption on January 1 of the years and in the amounts set forth below at a redemption price equal to the principal amount of the Bonds to be redeemed, plus interest accrued to the redemption date:

| Year | Amount |
|---|---|

If less than all of the Bonds are to be redeemed, the particular Bonds to be redeemed shall be selected as provided in the Indenture. Any Bond subject to redemption not tendered on the scheduled redemption date shall no longer be outstanding and shall cease to accrue interest from and after the redemption date, and the holders of such Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof.

Notice of any optional or mandatory redemption shall be given by the Trustee by mail not less than 30 days nor more than 60 days prior to the redemption date to the Director and the registered owners of the Bond at their address shown on the registration books of the Bond Registrar; provided, however, that notice of optional redemption without premium shall be given as soon as practicable.

The holder of this Bond shall have no right to institute any suit, action or proceeding at law or in equity, for any remedy under or upon the Indenture except as provided in the Indenture.

No recourse shall be had for the payment of the principal of, premium, if any, or interest on any of the Bonds or for any claim based thereon or upon any obligation, covenant or agreement in the Indenture contained, against any past, present or future member, director, officer, employee or agent of the Director, or through the Director, or any successor to the Director, under any rule of law or equity, statute or constitution or by the enforcement of any assessment or penalty or otherwise, and all such liability of any such member, director, officer, employee or agent as such is hereby expressly waived and released as a condition of and in consideration for the execution of the Indenture and the issuance of any of the Bonds.

The Indenture contains provisions permitting the Director and the Bondholder at the time outstanding to execute supplemental indentures, or add any provisions to, or change in any manner, or eliminate any of the provisions of, the Indenture.

The Indenture also contains certain provisions permitting the Director and the Trustee to execute supplemental indentures without consent of the Owners of the Bonds, subject to certain conditions in the Indenture.

The Indenture prescribes the manner in which it may be discharged and after which the Bonds shall no longer be secured by or entitled to the benefits of the Indenture, except for the purposes of transfer and exchange of Bonds and of payment of the principal of and premium, if any, and interest on the Bonds as the same become due and payable, including a provision that under certain circumstances the Bonds shall be deemed to be paid if certain securities, as defined therein, maturing as to principal and interest in such amounts and at such times as to insure the availability of sufficient moneys to pay the principal of, premium, if any, and interest on the Bonds and all necessary and proper fees, compensation and expenses of the Trustee shall have been deposited with the Trustee.

No member or officer of the Director, nor any person executing this Bond, shall in any event be subject to any personal liability or accountability by reason of the issuance of the Bonds.

It is hereby certified that all of the conditions, things and acts required to exist, to have happened and to have been performed precedent to and in the issuance of this Bond do exist, have happened and have been performed in due time, form and manner as required by the Constitution and statutes of the State of Nevada.

This Bond shall not be entitled to any benefit under the Indenture, or become valid or obligatory for any purpose, until the certificate of authentication hereon endorsed shall have been signed by the Bond Registrar.

**THE DIRECTOR SHALL UNDER NO CIRCUMSTANCES BE OBLIGATED TO PAY THE PRINCIPAL OF, PREMIUM, IF ANY, OR INTEREST DUE ON THIS BOND OR OTHER COSTS INCIDENT HERETO UPON ACCELERATION, REDEMPTION OR OTHERWISE EXCEPT FROM REVENUES AND FUNDS PLEDGED UNDER THE INDENTURE. THE BONDHOLDER SHALL HAVE NO RECOURSE AGAINST THE DIRECTOR OR ANY PROPERTY NOW OR HEREAFTER OWNED BY IT IN THE EVENT THAT SUCH REVENUES AND FUNDS ARE INSUFFICIENT TO MAKE SUCH PAYMENTS DUE WITH RESPECT TO THIS BOND, PROVIDED HOWEVER THAT THE BONDHOLDER MAY EXERCISE ANY AVAILABLE REMEDY SET FORTH UNDER THE BORROWER LOAN DOCUMENTS.**

Clark County, Nevada is not liable or responsible, legally, morally or otherwise, for any costs associated with repayment of the principal of or interest on this Bond, the costs of operation or maintenance of the Las Vegas Monorail (the "Monorail"), or any other expenses associated with the Monorail and its financing, and the holders of any bonds shall not rely on any County involvement in payment of such costs or other involvement with the Monorail. The County has not assumed, and has no duties to investors with respect to the Monorail, its operation, maintenance or financing, disclosure to investors or monitoring any of the foregoing. By acceptance of this Bond, each individual bondholder waives any and all causes of action it may ever have against the County for any matter arising from or concerning the Bonds, the Monorail and the contents of any disclosure statement relating to the Bonds or the Monorail.

IN WITNESS WHEREOF, the Director of the State of Nevada Department of Business and Industry has caused this Bond to be duly executed in, all as of the above date.

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY

By _____
        Sydney Wickliffe, Director

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

Dated: _____ , 2000

This is one of the Bonds described in the within- mentioned Indenture.

WELLS FARGO BANK. N.A., as Trustee

By _____
        Authorized Signature

## ASSIGNMENT

For value received the undersigned do(es) hereby sell, assign and transfer unto
_____ the within-mentioned Registered Bond and do(es)
hereby irrevocably constitute and appoint _____ attorney, to
transfer the same on the books of the Bond Registrar with full power of substitution in the
premises.

Dated: _____, _____

_____

Note:  The signature(s) to this Assignment must correspond with the name(s) as written on the
       face of the within Registered Bond in every particular, without alteration or enlargement
       or any change whatsoever.

EXHIBIT C-1

[FORM OF 1st TIER CAPITAL APPRECIATION BOND]

No. R-1                                                                              $_____

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
LAS VEGAS MONORAIL PROJECT REVENUE BOND
(LAS VEGAS MONORAIL COMPANY PROJECT)
1st TIER SERIES 2000
CAPITAL APPRECIATION BOND

THE BONDS DO NOT CONSTITUTE THE DEBT OR INDEBTEDNESS OF THE STATE OF NEVADA OR ANY CITY OR COUNTY WITHIN THE MEANING OF ANY PROVISION OR LIMITATION OF THE CONSTITUTION OF THE STATE OF NEVADA OR STATUTES, AND DO NOT CONSTITUTE OR GIVE RISE TO A PECUNIARY LIABILITY OF THE STATE OF NEVADA OR A CHARGE AGAINST ITS GENERAL CREDIT OR TAXING POWERS.

| MATURITY DATE: | DATE OF DELIVERY: | INTEREST RATE: | CUSIP: |
|---|---|---|---|
| _____ | _____ | ____% | ____ |

Registered Owner:   CEDE & CO.

Total Initial Denominational Amount: _____

The Director of the State of Nevada Department of Business and Industry, being duly appointed to such position under the laws of the State of Nevada (the "Director"), for value received, hereby promises to pay (but only out of Revenues as hereinafter provided) to the registered owner identified above or registered assigns, on the maturity date set forth above, the accreted value hereof as listed in the Accreted Value Table attached hereto, consisting of the Initial Denominational Amount set forth above (determined in accordance with the Indenture), plus interest accrued thereon from and including the date of each payment of this Bond as provided herein until payment of said accreted value has been made or duly provided for, at the interest rate set forth above and on the dates determined as described herein and in the Indenture (as hereinafter defined). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Indenture. The payment of initial principal amount and interest accreted thereon shall be made in lawful money of the United States of America and shall be paid by Wells Fargo Bank, National Association as trustee, or its successor (the "Trustee"), with a corporate trust office located in Portland, Oregon, or such other office as may be designated pursuant to the Indenture, by wire transfer in immediately available funds at an account maintained in the United States of America, at such wire address as such Bondholder shall specify by written notice to the Trustee.

Payment of the accreted value of this Bond shall be made at maturity on the Bond Payment Date to the Bondholder appearing on the bond registration books of the Bond Registrar as the holder thereof on the Record Date, such amount to be paid by the Paying Agent to such holder by wire transfer in immediately available funds at an account maintained in the United States of America, at such address as such Bondholder shall specify by written notice to the Trustee, except, in each case, that, if and to the extent that there shall be a default in the payment of the accreted value due on such Bond Payment Date, such amount shall be paid to the holders in whose name any such Bonds are registered at the close of business on the tenth day next preceding the date of payment of such defaulted accreted value.

If any Bond Payment Date is not a Business Day, such interest, principal and premium, if any, due on such Bond Payment Date shall be paid on the preceding Business Day.

This Bond shall not bear interest but shall accrete in value, as provided in the attached table of accreted values, commencing on the date of each payment for this Bond as shown on the Payment Schedule, compounded with respect to each payment on each June 1 and January 1 beginning on the accrual date occurring next after each payment, assuming in any such semiannual period that such interest accreted in equal daily amounts on the basis of a 360-day year of twelve 30-day months.

The Bonds are authorized to be issued pursuant to the provisions of Sections 349.400 through 349.670, inclusive, of the Nevada Revised Statutes, as amended and supplemented (the "Act"). The Bonds are limited obligations of the Director and, as and to the extent set forth in the Indenture, are payable solely from, and secured by a pledge of and lien on, the Revenues. Proceeds from the sale of the Bonds will be loaned by the Director to Las Vegas Monorail Company, a Nevada nonprofit corporation (the "Borrower"), under the terms of a Financing Agreement, dated as of September 1, 2000 (the "Agreement"), between the Director and the Borrower. The Bonds are all issued under and secured by and entitled to the benefits of an Indenture, dated as of September 1, 2000 (the "Indenture"), between the Director and the Trustee; all receipts of the Trustee credited under the provisions of the Indenture against such payments; and any moneys held by the Trustee under the Indenture for such purpose, and there shall be no other recourse against the Director or any property now or hereafter owned by it.

This Bond is one of a duly authorized issue of bonds of the Director designated as the "Director of the State of Nevada Department of Business and Industry Las Vegas Monorail Project Revenue Bonds, 1st Tier Series 2000" (the "Bond" or "1st Tier Bonds" or "Bonds"), limited in aggregate principal amount as provided in, and issued under and secured by, the Indenture. Reference is hereby made to the Indenture and all indentures supplemental thereto for a description of the rights thereunder of the registered owner of the Bond, of the nature and extent of the security, of the rights, duties and immunities of the Trustee and of the rights and obligations of the Director thereunder. The holder of this Bond, by acceptance hereof, assents and agrees to all of the terms and provisions of the Indenture and of the Agreement.

This Bond is transferable by the registered owner hereof, in person, or by its attorney duly authorized in writing, at the corporate trust office of the Trustee, but only in the manner, subject to the limitations and upon payment of the charges provided in the Indenture, and upon surrender and cancellation of this Bond. Upon such transfer a new fully registered Bond for the same

aggregate principal amount, will be issued to the transferee in exchange therefor. The Director, the Trustee and the Bond Registrar may treat the registered owner hereof as the absolute owner hereof for all purposes, and the Director, the Trustee and the Bond Registrar shall not be affected by any notice to the contrary.

The Bonds shall be subject to redemption upon the following terms:

Optional Redemption Upon Occurrence of Extraordinary Events. *(a) From Eminent Domain Proceeds.* The Bonds may be redeemed in whole or in part, as described in the Indenture, at the option of the Director upon the written direction of the Borrower on any Bond Payment Date at a redemption price equal to the accreted value thereof, plus a premium of ten percent (10%) of such accreted value to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or substantially all of the Project is condemned or taken by eminent domain to such extent that, in the opinion of an independent engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director, it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such condemnation or taking and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months.

*(b) From Casualty Insurance Proceeds.* The Bonds may be redeemed in whole or in part, as described in the Indenture, at the option of the Director upon the written direction of the Borrower on any Bond Payment Date at a redemption price equal to the accreted value thereof, without premium, to the date of redemption, upon receipt by the Trustee of a written notice from the Borrower stating that all or substantially all of the Project is damaged or destroyed to such extent that, in the opinion of an independent engineer evidenced by a certificate provided to the Director and the Trustee, which opinion may be conclusively relied upon by the Trustee and the Director (1) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction and the Borrower is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months, or (2) the cost of restoration of the Project would substantially exceed the Net Proceeds of insurance carried thereon

If less than all of the Bonds are to be redeemed, the particular Bonds to be redeemed shall be selected as provided in the Indenture. Any Bond subject to redemption not tendered on the scheduled redemption date shall no longer be outstanding and shall cease to accrue interest from and after the redemption date, and the holders of such Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof.

Notice of any redemption shall be given by the Trustee prior to the redemption date, in such time and manner as provided in the Indenture, to the registered owners of the Bond at their address shown on the registration books of the Bond Registrar.

The holder of this Bond shall have no right to institute any suit, action or proceeding at law or in equity, for any remedy under or upon the Indenture except as provided in the Indenture.

No recourse shall be had for the payment of the accreted value or interest accrued on any of the Bonds or for any claim based thereon or upon any obligation, covenant or agreement in the Indenture contained, against any past, present or future member, director, officer, employee or agent of the Director, or through the Director, or any successor to the Director, under any rule of law or equity, statute or constitution or by the enforcement of any assessment or penalty or otherwise, and all such liability of any such member, director, officer, employee or agent as such is hereby expressly waived and released as a condition of and in consideration for the execution of the Indenture and the issuance of any of the Bonds.

The Indenture contains provisions permitting the Director and the Bondholder at the time outstanding to execute supplemental indentures, or add any provisions to, or change in any manner, or eliminate any of the provisions of, the Indenture.

The Indenture also contains certain provisions permitting the Director and the Trustee to execute supplemental indentures without consent of the Owners of the Bonds, subject to certain conditions in the Indenture.

The Indenture prescribes the manner in which it may be discharged and after which the Bonds shall no longer be secured by or entitled to the benefits of the Indenture, except for the purposes of transfer and exchange of Bonds and of payment of the accreted value of and interest accrued on the Bonds as the same become due and payable, including a provision that under certain circumstances the Bonds shall be deemed to be paid if certain securities, as defined therein, maturing as to principal and interest in such amounts and at such times as to insure the availability of sufficient moneys to pay the principal of, premium, if any, and interest on the Bonds and all necessary and proper fees, compensation and expenses of the Trustee shall have been deposited with the Trustee.

No member or officer of the Director, nor any person executing this Bond, shall in any event be subject to any personal liability or accountability by reason of the issuance of the Bonds.

It is hereby certified that all of the conditions, things and acts required to exist, to have happened and to have been performed precedent to and in the issuance of this Bond do exist, have happened and have been performed in due time, form and manner as required by the Constitution and statutes of the State of Nevada.

This Bond shall not be entitled to any benefit under the Indenture, or become valid or obligatory for any purpose, until the certificate of authentication hereon endorsed shall have been signed by the Bond Registrar.

**THE DIRECTOR SHALL UNDER NO CIRCUMSTANCES BE OBLIGATED TO PAY THE ACCRETED VALUE OF AND INTEREST ACCRUED ON THIS BOND OR OTHER COSTS INCIDENT HERETO UPON ACCELERATION, REDEMPTION OR OTHERWISE EXCEPT FROM REVENUES AND FUNDS PLEDGED UNDER THE INDENTURE. THE BONDHOLDER SHALL HAVE NO RECOURSE AGAINST THE DIRECTOR OR ANY PROPERTY NOW OR HEREAFTER OWNED BY IT IN THE EVENT THAT SUCH REVENUES AND FUNDS ARE INSUFFICIENT TO MAKE SUCH PAYMENTS DUE WITH RESPECT TO THIS BOND, PROVIDED HOWEVER**

**THAT THE BONDHOLDER MAY EXERCISE ANY AVAILABLE REMEDY SET FORTH UNDER THE BORROWER LOAN DOCUMENTS.**

Clark County, Nevada is not liable or responsible, legally, morally or otherwise, for any costs associated with repayment of the principal of or interest on this Bond, the costs of operation or maintenance of the Las Vegas Monorail (the "Monorail"), or any other expenses associated with the Monorail and its financing, and the holders of any bonds shall not rely on any County involvement in payment of such costs or other involvement with the Monorail. The County has not assumed, and has no duties to investors with respect to the Monorail, its operation, maintenance or financing, disclosure to investors or monitoring any of the foregoing.   By acceptance of this Bond, each individual bondholder waives any and all causes of action it may ever have against the County for any matter arising from or concerning the Bonds, the Monorail and the contents of any disclosure statement relating to the Bonds or the Monorail.

IN WITNESS WHEREOF, the Director of the State of Nevada Department of Business and Industry has caused this Bond to be duly executed in, all as of the above date.

DIRECTOR OF THE STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY


By _____
       Sydney Wickliffe, Director


## STATEMENT OF INSURANCE

Municipal Bond Insurance Policy No. __ (the "Policy") with respect to payments due for principal of and interest on this bond has been issued by Ambac Assurance Corporation ("Ambac"). The Policy has been delivered to the United States Trust Company of New York, New York, New York, as the Insurance Trustee under said Policy and will be held by such Insurance Trustee or any successor insurance trustee. The Policy is on file and available for inspection at the principal office of the Insurance Trustee and a copy thereof may be secured from Ambac or the Insurance Trustee. All payments required to be made under the Policy shall be made in accordance with the provisions thereof. The owner of this bond acknowledges and consents to the subrogation rights of Ambac as more fully set forth in the Policy.


## TRUSTEE'S CERTIFICATE OF AUTHENTICATION

Dated: _____, 2000

This is one of the Bonds described in the within- mentioned Indenture.

WELLS FARGO BANK, N.A., as Trustee


By _____
       Authorized Signature

ASSIGNMENT

For value received the undersigned do(es) hereby sell, assign and transfer unto
_____ the within-mentioned Registered Bond and do(es)
hereby irrevocably constitute and appoint _____ attorney, to
transfer the same on the books of the Bond Registrar with full power of substitution in the
premises.

_____

Dated: _____, ____

Note:   The signature(s) to this Assignment must correspond with the name(s) as written on the
        face of the within Registered Bond in every particular, without alteration or enlargement
        or any change whatsoever.

Attachment:   Accreted Value Table

EXHIBIT D

ACCRETED VALUE TABLES FOR

CAPITAL APPRECIATION BONDS