IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

In re the Trusteeship created by
the Director of the State of Nevada
Department of Business and Industry

_____

                Case No. 0:11-CV-00481-JRT-JJG

Wells Fargo Bank, N.A., Trustee,

           Petitioner,

      v.

Eaton Vance Municipal Income Trust,
Eaton Vance Municipal Bond Fund, and
Eaton Vance Municipal Bond Fund II,

           Respondents.

_____

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND

      Respondents, Eaton Vance Municipal Income Trust, Eaton Vance Municipal Bond Fund, and Eaton Vance Municipal Bond Fund II (collectively, "Eaton Vance"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to the Trustee's Motion to Remand this action to Hennepin County, Minnesota District Court.

## INTRODUCTION AND SUMMARY OF ARGUMENT

      Wells Fargo Bank, N.A. ("Trustee") serves as the trustee for municipal bonds issued in 2000 by the Director of the State of Nevada Department of Business and

Industry.  On February 1, 2011, the Trustee filed a Petition for Instruction[1] in Hennepin County, Minnesota District Court, File No. 27-TR-CV-11-13, pursuant to Minnesota Stat. §§ 501B.16 et seq., seeking a determination that the Trustee may compel all bondholders to accept the terms of a privately negotiated settlement agreement entered into by certain bondholders and other relief (the "TIP Proceeding").  The Trustee claims authority to do so pursuant to Nevada Rev. Stat. § 163.375.  Eaton Vance, a bondholder but not a party to the settlement agreement, opposes the terms of the settlement agreement as well as the Trustee's claim that it can bind all bondholders to a private settlement.

On February 25, 2011, Eaton Vance removed the TIP Proceeding to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  The basis for removal to this court was that the Trustee and Eaton Vance are citizens of different states, and that this matter involves an amount in controversy which exceeds $75,000.

On March 4, 2011, the Trustee filed a motion to remand this action to the Hennepin County, Minnesota District Court.  In support of its motion to remand, the Trustee argues that this matter is an in rem action, and that the removal of the case to this Court was improper because the Hennepin County District Court had already assumed jurisdiction over this matter.  See Trustee Brief in Support of Motion to Remand at 7-10. However, contrary to the Trustee's assertions, this matter is a classic adversarial proceeding in which the Trustee, acting as representative of those bondholders who

---

[1]   The Petition for Instruction was filed with the Court when this matter was removed.  It is also attached as Exhibit 5 to the Affidavit of Gavin Wilkinson in Support of Emergency Motion to Remand ("Wilkinson Affidavit").

desire to proceed with the settlement agreement, seeks court approval and authorization to proceed with a settlement agreement over the objections of Eaton Vance.  Further, the Trustee's claim that the Hennepin County District Court has already exercised in rem is erroneous - - the res at issue in this case has not been the subject of any prior proceedings in state court.  Finally, even accepting the Trustee's erroneous attempt to characterize this matter as an in rem proceeding, that characterization would not prevent removal to this Court on the basis of diversity jurisdiction.  See pages 10-19 infra.

The second argument advanced by the Trustee in support of its Motion to Remand is that because Eaton Vance is technically not a "defendant" to the Petition, it had no authority to remove the case under 28 U.S.C. § 1441(a), which permits removal only by the "defendant or defendants."   See Trustee Brief in Support of Motion to Remand at 10-12.   Contrary to the Trustee's suggestion, Eaton Vance, as an objecting bondholder whose interests will be substantially and adversely affected if the relief requested by the Trustee is granted, clearly qualifies as a "defendant" authorized to remove this case on the basis of the diverse citizenship existing between it and the Trustee, which the Trustee has not disputed.  See pages 19-25 infra.

Finally, the Trustee asserts that if Eaton Vance is considered a defendant for purposes of removal, then all other bondholders must likewise be considered defendants whose joinder in or consent to the removal was required.  See Trustee Brief in Support of Motion to Remand at 13-14.  However,  based upon the pleadings as they existed at the time of removal, there is no procedural defect in the failure of Eaton Vance to obtain the consent or joinder to removal of any other bondholders.  The Trustee's Petition contains

no identification of any of these bondholders (and in fact concedes that the identity of some bondholders cannot even be ascertained). See Petition at p. 16, request for relief ¶ 2. As to the bondholders who have agreed to the settlement agreement and directed the Trustee to file the Petition, these bondholders are aligned with the Trustee, who is acting as the representative of those parties, and their joinder in the removal is not required. Further, given the fact that the Petition does not identify any objecting bondholders, the failure to obtain consent from any other objecting bondholders (if they in fact exist) is not a defect which would warrant remand. See pages 25-29 infra.

Eaton Vance respectfully submits this memorandum in opposition to the Trustee's motion to remand and in support of its removal of this action from the Hennepin County District Court.[2]

## FACTS RELEVANT TO REMAND MOTION

In 2000 the Director of the State of Nevada Department of Business and Industry (the "Director") issued municipal bonds, called the Las Vegas Monorail Project Revenue Bonds ("LVM Bonds"), in the initial principal amount of approximately $451 million to finance the construction and operation of the monorail system in Las Vegas, Nevada. The LVM Bonds were sold to, and purchased by, investing bondholders ("LVM Bondholders"), including Eaton Vance. See March 25, 2011 Affidavit of Thomas Weyl ("Weyl Affidavit") at ¶ 2. The Trustee was appointed to represent the interests of the

---

[2]     Although unrelated to resolution of the Trustee's motion to remand, Eaton Vance notes that concurrently with its filing of this response to the Trustee's motion to remand, it has filed a motion to transfer this action to the to the United States District Court for the District of Nevada, pursuant to 28 U.S. § 1404(a).

LVM Bondholders pursuant to a Senior Indenture dated September 1, 2000 ("Trust Indenture")[3] between the Director and the Trustee. Id. at ¶ 5. The Trust Indenture provides that it is to be governed by and construed in accordance with the laws of the State of Nevada. Trust Indenture, § 12.07.

The Director loaned the proceeds from the issuance of the LVM Bonds to the Las Vegas Monorail Company, a Nevada nonprofit corporation, pursuant to a Financing Agreement dated September 1, 2000 ("Financing Agreement").[4] The Las Vegas Monorail Company was responsible for constructing, operating and otherwise developing the Las Vegas monorail project (the "LVM Project"). See Weyl Affidavit at ¶ 3. Pursuant to the Financing Agreement, revenue from the LVM Project and other collateral were pledged to secure the payment of principal and interest on the LVM Bonds. Financing Agreement § 3.1(b). Ambac Assurance Corporation, a Wisconsin limited stock insurance corporation ("Ambac"), issued a Financial Guaranty Insurance Policy (the "Insurance Policy") and a 1st Tier Surety Reserve Bond (the "Surety Bond")[5] to insure payments on the LVM Bonds.

On January 13, 2010, the Las Vegas Monorail project filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Nevada.

---

[3]   A copy of the Trust Indenture is attached to the Petition as Exhibit A.

[4]   The Financing Agreement is attached to the Petition as Exhibit B.

[5]   The Insurance Policy is attached to the Petition as Exhibit D. The Surety Bond is attached to the Petition as Exhibit E.

The bankruptcy case is filed at Case Number 10-10464-BM, and is currently pending. See Weyl Affidavit at ¶ 4.

As a result of the financial failing of the LVM Project, payment defaults occurred, and the value of the LVM Bonds has been significantly reduced.  The Insurance Policy and the Surety Bond insuring payment of principal and interest on the LVM Bonds may provide the only meaningful source of recovery for some of the LVM Bondholders. Weyl Affidavit at ¶ 6.

During this same time period, Ambac also was facing financial difficulties.  In March 2010, Ambac assigned a number of insurance policies and obligations, including the Insurance Policy and the Surety Bond, to a specially created segregated account (the "Segregated Account") pursuant to Wis. Stat. § 645.33(5).  Shortly thereafter, the Office of the Commissioner of Insurance of the State of Wisconsin ("Commissioner") instituted a Rehabilitation Proceeding in the Circuit Court of Dane County, Wisconsin (the "Circuit Court") at Case No. 10CV1576 (the "Rehabilitation Proceeding").  The Rehabilitation Proceeding has involved significant litigation including appeals that are ongoing.  On January 24, 2011, a Rehabilitation Plan was approved by order of the Circuit Court (the "Confirmation Order").  Various appeals of the Confirmation Order have been filed, including appeals by the Trustee and Eaton Vance.  Weyl Affidavit at ¶ 7.

Until mid-November 2010, Eaton Vance participated in the Rehabilitation Proceeding as a member of a group of LVM Bondholders consisting of Nuveen Asset Management ("Nuveen"), Restoration Capital Management LLC ("Restoration"), Stone Lion Capital Partners LLP ("Stone Lion") and Eaton Vance (collectively the

"Bondholder Group"). The Bondholder Group and the Trustee conferred and collectively opposed several of the actions taken by Ambac and the Commissioner. The Bondholder Group also engaged in settlement discussions with Ambac. By mid-November 2010, Nuveen, Restoration, and Stone Lion had determined that they wanted to settle matters with Ambac. When Eaton Vance expressed opposition to settling on the terms suggested by Nuveen, Restoration, and Stone Lion, it was forced to leave the Bondholder Group and was excluded from future negotiations. Weyl Affidavit at ¶8.

The negotiations from which Eaton Vance was excluded ultimately resulted in a Settlement Agreement dated as of December 27, 2010 ("Settlement Agreement"), by and among Nuveen, Restoration and Stone Lion (the "Settling Bondholders"), Ambac, and the Commissioner relating to Ambac's obligations under the Insurance Policy and Surety Bond.[6] The Settlement Agreement provides for the commutation of the Insurance Policy and Surety Bond in exchange for certain payments from the Segregated Account (the "Commutation"). The Commutation does not allow LVM Bondholders to opt-out of settlement, but is subject to a number of conditions that must be satisfied by August 31, 2011. Settlement Agreement § 1.3. One of those conditions is that the Trustee must obtain a declaration from a Minnesota court of competent jurisdiction that the Trustee may settle and resolve all claims against Ambac under the Insurance Policy and Surety Bond based on the terms in the Settlement Agreement and bind all LVM Bondholders to the Settlement Agreement. Weyl Affidavit at ¶9.

---

[6]     The Settlement Agreement is attached to the Petition for Instruction as Exhibit H. It is also attached as Exhibit 6 to the Wilkinson Affidavit.

If this condition, or the other conditions, are not met, then Ambac shall offer to purchase the LVM Bonds from the LVM Bondholders under terms set forth in Section 2 of the Settlement Agreement (the "Buyback Offer").  The economic difference between the Buyback Offer and the Commutation is immaterial.  Further, the Buyback Offer does not purport to bind all LVM Bondholders or effect a commutation of the Insurance Policy or Surety Bond.  This alternative plan allows LVM Bondholders to opt-out of the settlement reached by the Settling Bondholders while allowing LVM Bondholders that accept the Buyback Offer essentially the same economic terms that they would receive under the Commutation.  Weyl Affidavit at ¶ 9.

The Settling Bondholders directed the Trustee to file the TIP Proceeding in an effort to get the Minnesota state court to sanction their private agreement.  Petition, ¶ 35. Through the TIP Proceeding, the Trustee seeks court approval of an unprecedented proposition that would fundamentally alter the municipal bond industry:  to force the terms of the private settlement on all of the bondholders and to bind all bondholders to the terms of a private settlement with no opt-out provision.  Weyl Affidavit at ¶ 10.  The Trustee asserts that it has this power under Nevada law pursuant to Nevada Rev. Stat. § 163.375.  However, no case law supports this reading of the statute, and Eaton Vance challenges the Trustee's assertion.  Eaton Vance objects to and opposes the private settlement relating to the Insurance Policy and Surety Bond and the Trustee's efforts to bind all of the LVM Bondholders through the TIP Proceeding.  Weyl Affidavit at ¶ 10.

Although styled as a "Petition . . . For Instruction In The Administration Of A Trust," the action commenced by the Trustee in Hennepin County District Court is in

every sense an adversarial matter in which the Trustee, acting as representative for the Settling Bondholders, seeks court approval for the commutation of the Insurance Policy as agreed to in the Settlement Agreement.  For example, in paragraph 5 of the Petition, the Trustee alleges that it "believes that the commutation is a reasonable resolution of the claims against the bond insurer in respect of the policies."  Likewise, in its prayer for relief, the Trustee requests that the Court "direct[ ] the Trustee proceed with and consummate the commutation as set forth in the Settlement Agreement."  See Petition at page 16, prayer for relief at ¶ 3(c).  Essentially conceding the adversarial nature of the proceedings, however, the Trustee also states that in adjudicating the issues raised by the Petition, the Court "should consider not only the views of the Settling Bondholders who support the commutation, but also the concerns of those bondholders who do not support it."  Petition at ¶ 5.  Thus, despite the objections to the Settlement Agreement expressed by Eaton Vance, the Trustee requests in its Petition that the Court order it to proceed with the settlement, thereby binding objecting bondholders.  Petition at page 16, prayer for relief at ¶ 3(c).  Accordingly, the relief requested by the Trustee in the TIP Proceeding creates a direct adversarial relationship between it and Eaton Vance, by seeking to implement a settlement which would be binding on objecting shareholders.

## <u>ARGUMENT</u>

I.   **THE TRUSTEE'S CLAIM THAT THIS COURT MAY NOT ASSUME JURISDICTION OVER THE TIP PROCEEDING IS FACTUALLY AND LEGALLY FLAWED**

    A.   **This Action Is Not An <u>In</u> <u>Rem</u> Proceeding, and the Hennepin County District Court Has Not Assumed Jurisdiction Over the Funds Which Are the Subject of This Dispute**

In its motion to remand, the Trustee asserts that this Court does not have jurisdiction over this case, claiming that by reason of the prior proceedings in the Hennepin County District Court, that Court has exclusive <u>in</u> <u>rem</u> jurisdiction over the trust estate.  <u>See</u> Trustee Brief in Support of Motion to Remand at pp. 7-8. (<u>citing</u> <u>In the Matter of Trust Created by Louis Hill</u>, 728 F. Supp. 564 (D. Minn. 1990)).

Under federal law, "a proceeding is <u>in</u> <u>rem</u> where a court bases its jurisdiction upon control of real or personal property within its territorial reach."  <u>Britton v. Britton</u>, 223 F. Supp.2d 276, 284 (D. Me. 2002).  Jurisdiction may exist <u>in</u> <u>rem</u> (or quasi <u>in</u> <u>rem</u>) "if the property is present within the geographic jurisdiction of the court at the time the action commenced and continuing throughout the duration of the action."  1 Moore's Federal Practice § 4.02[2].

Contrary to the Trustee's assertion, this action is not part of an <u>in</u> <u>rem</u> proceeding before the Hennepin County District Court.  Indeed, the Trustee's Petition utterly fails to identify any property of the trust which is either located in Minnesota or is under the control or jurisdiction of the Hennepin County District Court.  And, the mere assertion of the Trustee that the Minnesota state court has <u>in</u> <u>rem</u> jurisdiction over what it calls the "trust estate" does not make it true.  As discussed more fully below, this proceeding is

going to require a court to determine whether the Insurance Policy and the Surety Bond are part of the trust estate. Given that indisputable fact, it is misleading for the Trustee to argue that the state court has exercised jurisdiction over a trust estate where, by its own admission, one of the central issues in the proceeding will be the determination of exactly what is part of the trust estate.

In this case, the Trustee incorrectly tries to manufacture <u>in rem</u> jurisdiction by arguing that both the Insurance Policy and the Surety Bond are part of the trust estate. In Paragraph 19 of the Petition, the Trustee lumps both the Insurance Policy and the Surety Bond together by defining them jointly as the "Policies." In the context of determining whether they are trust assets, they need to be examined separately. Doing so reveals that the Surety Bond may be  part of the trust estate, but the Insurance Policy is not.

Having lumped the Insurance Policy and the Surety Bond together, the Trustee, in Paragraph 39 of the Petition, incorrectly concludes that both are part of the trust estate. First, the Trustee argues that the trust estate consists of all "Revenues and any fund or account established pursuant to the Senior Indenture and pledged to secure the payment of principal and interest on the Bonds." The Trustee then points to the definition of "Revenues" as all moneys received by the Director or the Trustee. . . including Senior Loan Repayments (including both timely and delinquent payments, any late charges, and paid from any sources)." The Trustee seems to suggest that the reference to Senior Loan Repayments "from whatever source" should include proceeds of the Insurance Policy and the Surety Bond. The Trustee then goes on to mistakenly argue that claims for monetary

damages under the "Policies" are claims for Senior Loan Payments and, "as such, any payments made under the Policies are part of the Trust Estate."

None of the provisions cited by the Trustee are applicable to the Insurance Policy but some may be applicable to the Surety Bond. "Senior Loan Repayments" are defined in the Indenture as payments required to be made by the Borrower pursuant to Section 4.2(a)(i) of the Financing Agreement by and between the Director and the Borrower, which was assigned to the Trustee. See Exhibit B to the Petition. Nevertheless, the Indenture arguably provides that proceeds of the Surety Bond can be used to make Senior Loan Re-Payments. See Trust Indenture, §§ 5.01A and 5.04 of Indenture. Further, payments of proceeds of the Surety Bonds are made to the Trustee and deposited in the 1st Tier Debt Service Reserve Fund, further evidence that it may be part of the trust estate. See Trust Indenture § 44.

None of these things are true of the Insurance Policy. Payments under the Insurance Policy are not used to make Senior Loan Repayments nor are they paid to the Director or the Trustee. Those payments are made by the Insurance Trustee, United States Trust Company, directly to the owners of the bonds in return for an assignment of their bonds to the Insurance Trustee. Trust Indenture § 11.02. Further, the Insurance Policy was not deposited in any fund or account. The Insurance Policy is never in the control of the Trustee. It simply is not part of the trust estate.

Although arguably part of the trust estate, the Surety Bond is, at best, a de minimis asset. The proposed settlement provides for payment of $201,000,000 by Ambac to holders of LVM Bonds, $111,000,000 in cash and $90,000,000 in surplus notes. The

payments constitute a commutation of Ambac's obligations arising under the Insurance Policy and the Surety Bond. The Insurance Policy is in the face amount of $451,448,217.30, and no payments have been made under it. The Surety Bond was originally in the face amount of $20,991,807.50, but was drawn on in July, 2009 and January, 2010, reducing remaining availability under the Surety Bond to $459,036.35. See Petition at ¶ 20. It is unclear whether any portion of the settlement proceeds are being paid from the availability under the Surety Bond. However, assuming that the entire $459,036.35 is used from the Surety Bond as payment under the proposed settlement, it would amount to less than ¼ of 1 per cent (approximately 0.23%) of the total amount paid to the holders of LVM Bonds under the proposed settlement ($459,036.35 of $201,000,000). To suggest that such a de minimis asset creates in rem jurisdiction to the degree that this Court cannot assume jurisdiction of this proceeding is a stretch at best.

Indeed, the Trustee appears to concede that there are serious questions as to exactly what assets are part of the trust estate, given the fact that the Trustee has included as the first item of requested relief in its Petition a request that the Court determine "that the bond insurer payments under the policies are part of the trust estate." See Petition at p. 16, prayer for relief, ¶ 3(a). Moreover, the relief requested by the Trustee in the Petition is hardly the type of relief that could be reasonably considered part of ongoing efforts by a court to administer a trust involving a res or property under the court's control. To the contrary, the Trustee's Petition seeks the extraordinary remedy of having a court approve and authorize implementation of a settlement under which objecting

13

bondholders such as Eaton Vance would suffer a significant diminution in rights and property without affording them the right to opt out. This proceeding is thus clearly more analogous to an in personam declaratory judgment action in which the Trustee is seeking a judicial determination as to the rights and obligations of the affected parties. Calling the matter a TIP Proceeding does not alter the fundamental and indisputable nature of this adversarial proceeding.

For the same reasons, the Trustee's reliance upon this Court's decision in In the Matter of Trust Created by Louis Hill, 728 F. Supp. 564 (D. Minn. 1990) is seriously misplaced. Unlike the instant case, the Hill decision involved three trusts which had been administered in state court for more than 40 years. The trust estate consisted of property which had been under the state court's control for that time period which included timberlands indisputably held as part of the three trusts, only one of which was involved in the federal court proceeding. See 728 F. Supp. at 565. Thus, the exercise of jurisdiction by the federal court would have led to concurrent jurisdiction by the state and federal courts over the same property. See 728 F. Supp. at 568 (noting that the state court "continues to supervise closely related trusts with jointly owned assets"). Under such circumstances, the District Court's finding that a federal court could not assume jurisdiction over the state court proceeding which already controlled the trust and was supervising the property owned jointly by that trust and two other trusts was understandable, and is fully consistent with the general principle that an exercise by a federal court of jurisdiction over an in rem proceeding is not proper if it would interfere

with ongoing state court administration of a trust involving property under the control of that court.

In contrast, the dispute which is the subject of the Trustee's petition for instruction has just commenced, and involves property which is not even part of the trust estate.  The Trustee attempts to overcome this undisputed fact by pointing to orders entered by the Hennepin County District Court in other TIP proceedings involving totally separate funds which have nothing to do with the instant dispute.  See Trustee Brief in Support at p. 8. For example, in Case No. 27-TR-CV-09-150, the Hennepin County District Court entered an order on January 5, 2010 permitting substitution of a trustee for the second tier bonds (which have nothing to do with the instant dispute which involves only first tier bonds). See Wilkinson Affidavit, Exhibit 2.  Likewise, in Case No. 27-TR-CV-10-29, the court entered an order on May 14, 2010 permitting substitution of trustee for the third tier bonds (again, bonds which have nothing to do with the instant dispute).  See Wilkinson Affidavit, Exhibit 3.  Finally, in Case No. 27-TR-CV-10-43 (Wilkinson Affidavit, Exhibit 4), the court entered an order on July 16, 2010 on a petition filed by a successor trustee, ruling that  second tier bondholders could pursue claims against the issuers of the bonds in their own names.  Again, the second tier bonds which were the subject of that order have nothing to do with the instant case, which involves only first tier bonds.

The only order entered by the Hennepin County District Court prior to removal which has any potential relevance to the Trustee's motion to remand is the order entered on February 2, 2011, the day after the Trustee filed its Petition, scheduling an initial hearing for March 2.  See Wilkinson Affidavit, Exhibit 1.  The entry of that order,

presumably drafted by the Trustee and entered by the state court without hearing or involvement of any other parties, hardly constitutes the type of ongoing state court administration of a *res* in the custody of the court which would implicate the principles addressed by the district court in <u>Hill</u>, <u>supra</u>.

For all of these reasons, the Court should reject the Trustee's argument that it lacks jurisdiction over this matter based on the unfounded assertion that the TIP Proceeding is part of an ongoing <u>in rem</u> proceeding in state court.

**B.    Even if the TIP Proceeding Is An <u>In Rem</u> Proceeding, Removal Is Proper**

As discussed <u>supra</u>, the Trustee attempts to buttress its assertion that the TIP Proceeding is an <u>in rem</u> proceeding by assuming the resolution in its favor  of the very relief it seeks in its Petition, i.e., a determination that the Surety Bond, the Insurance Policy, and their proceeds are part of the trust estate.  That issue will be hotly contested as part of the TIP proceeding, whether the Petition is litigated in state or federal court. However, even giving the Trustee the benefit of the doubt on this issue, and treating the TIP Proceeding as an <u>in rem</u> matter for purposes of resolving the Trustee's motion to remand, removal is nevertheless proper.

The Trustee asserts that remand is required here because "[w]here one court has acquired jurisdiction over property, a second court may not exercise <u>in rem</u> or quasi <u>in rem</u> jurisdiction over the same property."  Trustee Brief in Support of Motion to Remand at p. 8 (citing <u>Hill</u>, <u>supra</u>.)  Although the Trustee does not specifically cite it in its brief, the principle applied by the District Court in <u>Hill</u> is more commonly known as the

Princess Lida doctrine, deriving from the United States Supreme Court's decision in Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939). The Trustee's reliance on the doctrine here is misplaced.

Significantly, the Princess Lida doctrine does not fundamentally address jurisdiction, as the Trustee asserts in its brief, but abstention. Indeed, as this Court and other courts have found, the doctrine is a form of abstention that serves not to vindicate principles of federalism but to promote principles of comity by avoiding conflicts between federal and state courts when they simultaneously attempt to exercise jurisdiction over the same property. See Republic Bank of Chicago v. Lighthouse Mgmt. Group, Inc., 2010 U.S. Dist. LEXIS 59827, at *15-18 (D. Minn. June 16, 2010) (treating Princess Lida doctrine as form of abstention); Carvel v. Thomas & Agnes Carvel Found., 188 F.3d 83, 85-86 (2d Cir. 1999) (same); Bergeron v. Estate of William Loeb, et al., 777 F.2d 792, 798-99 (1st Cir.), cert. denied, 469 U.S. 1212 (1985) (same); Becker-Jiba Water Supply Corp. v. City of Kaufman, Texas, 2003 U.S. Dist. LEXIS 10334, at *8-10 (S.D. Tex. June 18, 2003) (same).

As an abstention doctrine, Princess Lida is not as broad as the Trustee asserts. Rather, the doctrine's purpose is to narrowly address the problem of which court may exercise jurisdiction where distinct state and federal suits involving the same res are pending. See Carstarphen v. Deutsche Bank Nat'l Trust Co., 2009 U.S. Dist. LEXIS 33188, at *20 (S.D. Ala. April 17, 2009); Straus v. Straus, 987 F. Supp. 52, 55 (D. Mass. 1997) (stating that "Princess Lida is, at most, a rule of comity based on policy considerations not unlike those underlying the abstention doctrine."). As numerous

courts have found, the conflict avoidance rationale that underlies the Princess Lida doctrine does not require abstention when, like here, a single action is pending and that action is removed from state to federal court. <u>American Lung Assoc. of New Hampshire v. Am. Lung Assoc.</u>, 2002 U.S. Dist. LEXIS 13593, at *7-9 (D.N.H. July 25, 2002); <u>Carstarphen</u>, 2009 U.S. Dist. LEXIS 33188, at *19-21; <u>Barr v. Hagan</u>, 322 F. Supp. 2d 1280, 1282 (M.D. Ala. 2004); <u>Zahn v. First Union Commercial Corp.</u>, 2004 U.S. Dist. LEXIS 19220, at *9-10 (E.D. La. Sept. 24, 2004).

Indeed, removal terminates a state court's jurisdiction and leaves the federal court as the sole court with control over the case – thus, obviating any competing dual state and federal proceedings. <u>American Lung Assoc. of New Hampshire</u>, 2002 U.S. Dist. LEXIS 13593, at *7-9. <u>See also</u> <u>HWC Wire & Cable Co. v. Mirant Mid-Atlantic, LLC</u>, 2010 U.S. Dist. LEXIS 58280, at *10 (D.Md. June 10, 2010) (finding that abstention is unnecessary under Princess Lida doctrine when case is removed from state to federal court because removal of case to federal court extinguished state court's jurisdiction); <u>Zahn</u>, 2004 U.S. Dist. LEXIS 19220, at *9-10 (finding that Princess Lida doctrine has no application in case removed from state to federal court because there is no dual proceeding). Thus, "when a cause has been removed to the federal court, as a matter of law and of necessity, that court acquires exclusive jurisdiction of the res" and makes application of the Princess Lida doctrine moot. <u>Carstarphen</u>, 2009 U.S. Dist. LEXIS 33188, at *19.

Accordingly, the Trustee's reliance on the Princess Lida doctrine to remand this case is without merit. The doctrine is inapplicable here as, after removal, there is no

pending state court case involving the trust to conflict with this Court's assertion of jurisdiction.  See Carstarphen, 2009 U.S. Dist. LEXIS 33188, at *21 (finding no merit to plaintiff's assertion that remand was warranted simply because state court assumed jurisdiction over the subject property prior to removal).

In short, and contrary to the Trustee's assertions, the Petition filed by the Trustee commenced an adversarial action between it and Eaton Vance, by which the Trustee seeks to obtain judicial approval of, and direction to proceed with, implementation of a settlement agreement which would have a significant and dramatic effect upon Eaton Vance's property interests.  It involves funds which are not under the control of or in the custody of the Trustee, are not part of the trust estate and which have not been the subject of any ongoing trust or state court in rem administration or adjudications.  Under these circumstances, the Trustee's arguments that the state court proceeding amounts to an *in rem* proceeding which is not subject to removal should be rejected.

## II.   EATON  VANCE IS A "DEFENDANT" AUTHORIZED TO REMOVE THE PETITION FROM STATE COURT

The second argument asserted by the Trustee in support of its motion to remand is that Eaton Vance is not a "defendant" to the Petition, and therefore was not authorized to remove the Petition to this Court.  Trustee Brief in Support of Motion to Remand at pages 10-12.  Again, the Trustee's argument in this regard reflects a fundamental misconception of the respective parties to the state court proceeding, and ignores the substantial adverse effect on Eaton Vance which would result if the court were to grant the relief requested by the Trustee in its Petition.

As the Trustee correctly points out in its motion to remand, the removal statute generally limits the right to remove a case to a "defendant." 28 U.S.C. § 1441(a). The meaning of the term "defendant" is a matter of federal law that "is not dependent on the procedural posture of the parties under state law." Chicago, Rock Island & Pacific R. Co. v. Stude, 346 U.S. 574, 579-580 (1954). As one court has noted, in determining whether an action is removable under 28 U.S.C. §1441, a district court must realign the parties according to their true interests in the outcome of the litigation. Reko v. Atlantic Mutual Ins. Co., 70 F. Supp. 2d 998, 1002 (D. Minn. 1999). See also Wright, Miller, Cooper & Steinman, Federal Practice & Procedure § 3730 (2009 ed.) at page 438 (in determining removability, court should "realign parties according to their real interests . . . before deciding whether a true 'defendant' is seeking removal to federal court").

Generally, a "defendant" within the meaning of § 1441 is someone who "has been haled into court involuntarily and must defend an action for relief against it." Ford Motor Credit Co. v. Aaron-Lincoln Mercury, Inc., 563 F. Supp. 1108, 1112-15 (N.D. Ill. 1983). Accord, Mignogna v. Sair Aviation, Inc., 679 F. Supp. 184, 189 (N.D. N.Y. 1988). Likewise, a defendant is a party who has "never voluntarily submitted itself to the jurisdiction of the state court." Ford Motor Credit Co., supra, 563 F. Supp. at 1113.

In the instant case, given the adversarial nature of the claims raised by the Trustee's Petition, and particularly in light of the relief requested by the Trustee seeking court approval to proceed with a settlement which will have a significant and adverse impact upon Eaton Vance, in view of its objection to the settlement, Eaton Vance clearly satisfies the definition of "defendant" and acted properly in removing this action from

20

Hennepin County District Court based upon the diversity of citizenship between it and the Trustee.

Eaton Vance's status as a party authorized to remove this action is confirmed by examination of the Minnesota statute under which the Trustee's Petition for Instruction was filed. Specifically, and as the Trustee concedes (Trustee Brief at p. 11) the statute under which the Trustee's Petition was filed applies by its terms to "persons interested in the trust." Minn. Stat. § 501B.16. Further, the Minnesota statute provides that the Trustee or a person interested in the Trust may petition the district court for an order "to instruct the Trustee, beneficiaries and any other interested parties in any matter relating to the administration of the Trust and the discharge of the Trustee's duties." Minn. Stat. § 501B.16(23). The relief sought by the Trustee in its Petition seeks, inter alia, an order directing it to proceed with a settlement over the objection of Eaton Vance. The Trustee's Petition concedes that Eaton Vance is a party to this claim, specifically noting that in adjudicating the issues raised by the Petition, the Court should consider the positions of those dissenting bondholders who do not support the settlement and commutation. See Petition at ¶ 5.

One need look no further than the court docket in In re Trusteeship Created by the Alaska Industrial Development & Export Authority, Case No. 0:10-CV-02996 (D. Minn.) (Doty, J.), to confirm the authority of Eaton Vance to remove the Trustee's Petition to federal court. That case involved a petition for instruction by a trustee filed under Minn. Stat. § 501B.16, the very same statutory provision at issue in the instant case. The TIP action in the Alaska Development case sought instruction concerning the composition of

a trust res and the enforceability of guarantees executed by parties interested in the trust. As in the instant case, the Petition did not name the parties in interest as respondents. Nevertheless, the parties in interest removed the Petition to this Court on the basis of the diversity of citizenship between them and the Trustee.  Judge Doty assumed jurisdiction over the matter and ultimately transferred the case to another district pursuant to 28 U.S.C. § 1404(a).  2010 U.S. Dist. LEXIS 123279 (D. Minn. Nov. 19, 2010).[7]

Likewise, numerous examples exist of  matters which have been removed to federal court by persons who technically were not defendants to the trust proceeding but who were de facto defendants whose rights would be affected by the relief granted in the trustee proceeding.  For example, in In re Matter of the Estate of John Henry Kendricks, 572 F. Supp. 2d 1194 (C.D. Cal. 2008), administrators of an estate commenced an action in California state court by filing a petition for orders regarding the decedent's claim to identified property.  The petition was filed under a California probate statute which allowed an estate administrator to seek a court order declaring the decedent's interest in

---

[7]   In its reply brief filed in connection with its motion to expedite a hearing on its motion for remand (Docket No. 23) , the Trustee downplays the significance of the removal in the Alaska Development case by observing that it did not involve a motion to remand. However, since removal by a proper defendant is something which affects subject matter jurisdiction, Judge Doty's assumption of jurisdiction following the removal implicitly acknowledged the propriety of the removal by the "parties in interest" in that proceeding who, as in the instant case, were not formally named as respondents or defendants.  Also, in the same reply brief (Docket No. 23 at page 3), the Trustee appears to concede that removal of the Alaska Development case was proper "because the trustee and all bondholders were aligned on one side and the guarantor on the other."  That is exactly the circumstance involved in the instant case - - the Trustee and Settling Bondholders are aligned on one side, and Eaton Vance is on the other side objecting to the proposed settlement.

"real or personal property, title to or possession of which is held by another."  See Cal.

Prob. Code § 850(a)(2)(D).  The petition sought an order to the effect that a contract

entered into by the decedent was not valid or enforceable.  572 F. Supp. 2d at 1196.

Although not named as parties in the state court petition, the other parties to the contract

with the decedent removed the case to federal court on the basis of diversity of

citizenship.  In denying a motion to remand, the district court noted that the estate's

petition was a "civil action" which was removable because it amounted to a proceeding in

state court that was adversarial in nature, inasmuch as it sought to have a contract

declared unenforceable:

> Here, the §850 petition satisfies the requirements of a "civil
> action" because it initiates a proceeding in state court that is
> adversarial in nature and similar in many respects to an
> ordinary civil lawsuit.  The California Probate Code allows
> administrators of an estate to file a petition pursuant to §850
> requesting that the probate court issue an order regarding the
> status of property in the possession of a third party.  An action
> brought under §850 can include "claims, causes of action or
> matters that are normally raised in a civil action," so long as
> they are factually related to the petition.  Cal. Prob. Code
> §855.  The petitioner is required to give notice of the action
> by serving the petition on all interested persons.  Id. §851.  If
> the court is satisfied that the property belongs to the estate,
> the court can order a conveyance or transfer of the property to
> the personal representative or other fiduciary of the estate.  Id.
> §851.
>
> Given these features of the §850 petition, the court concludes
> that the action is adversarial in nature and qualifies as a "civil
> action" properly removal within the meaning of 28 U.S.C.
> §1441(b).

572 F. Supp. 2d at 1197.  See also Monahan v. Holmes, 139 F. Supp. 2d 253, 256 (D.

Conn. 2001) (refusing to remand state court proceeding filed by trustee seeking

allowance of accounting of trust which had been removed to federal court by trust beneficiary on the basis of diverse citizenship between beneficiary and trustee).

The cases cited by the Trustee in support of its argument that Eaton Vance does not qualify as a "defendant" for purposes of removal are all readily distinguishable from the circumstances involved in the instant case. Indeed, most of those cases involve circumstances in which the party who removed was not a party to the litigation. Gross v. Deberardinis, 722 F. Supp. 2d 532 (D. Del. 2010) (pension plan which was not party to underlying divorce action not permitted to remove); Sheppard v. Sheppard, 481 F. Supp. 2d 345 (D.N.J. 2007) (administrator of health care plan which was not party to divorce action may not remove); American Home Assurance Com. v. RJR Nabisco Holdings Corp., 70 F. Supp. 2d 296 (S.D.N.Y. 1999) (non-party subsidiary of named defendant may not remove). In the instant case, on the other hand, the Trustee concedes that Eaton Vance is a "person interested in the trust" within the meaning of § 501B.16, and that Eaton Vance has a right to appear in the TIP Proceeding and present its views to the Court concerning the relief requested by the Trustee. See Petition at ¶ 5.

In short, Eaton Vance is a person interested in the Trust whose property interest may be adversely affected by a court order granting the relief requested in the Trustee Petition. Eaton Vance also is a party who will have a right to participate in the TIP Proceeding and voice its objection to the proposed settlement and to the claimed right of the Trustee under Nevada law to bind objecting bondholders without affording them the right to opt out of the settlement. See Minn. Stat. § 501B.18. To the extent a court grants the relief requested by the Trustee in the Petition, Eaton Vance, as a "party" would have

the right to file an appeal from such order.  <u>See</u> Minn. Stat. § 501B.21 ("[a]n appeal from the order may be taken by any <u>party</u>") (emphasis added).  Under any definition of the term,  Eaton Vance qualifies as a "defendant" to the TIP Proceeding and therefore was authorized to remove this case under 28 U.S.C. § 1441(a) based upon the diversity of citizenship between it and the Trustee.

## III.   JOINDER OF OR CONSENT BY OTHER BONDHOLDERS TO EATON VANCE'S REMOVAL WAS NOT REQUIRED

The Trustee argues that Eaton Vance's removal of the action is defective because if Eaton Vance is considered a "Defendant," all other bondholders must be considered defendants, and the joinder and consent of those other bondholders was required.  Trustee Brief in Support of Motion to Remand at pages 13-14.  The Trustee's argument in this regard is without merit because it ignores the adversary positions of the known bondholders in this action and the reality of what is at stake in the TIP Proceeding.

First, although this case was commenced pursuant to Minn. Stat. § 501B.16, and the Trustee takes the position that if Eaton Vance is considered a defendant all bondholders are defendants in this action, this Court is required to review the reality of the parties' actual positions and legal interests in aligning them for purposes of diversity of citizenship.  <u>See</u> <u>Dryden v. Dryden</u>, 265 F.2d 870, 873 (8th Cir. 1959) ("It is our duty, as it is that of the lower federal court, 'to look beyond the pleadings, and arrange the parties according to their sides in the dispute.'").   <u>See</u> <u>also</u> <u>Universal Underwriters Ins. Co. v. Wagner</u>, 367 F.2d 866, 870 (8th Cir. 1966).  The Eighth Circuit Court of Appeals in <u>Dryden</u> stated:

> For purposes of testing the jurisdiction of a federal court on the basis of diversity of citizenship, it is immaterial how the parties may have been designated in the pleadings, since the court must align them for jurisdictional purposes on the basis of their actual legal interests and the apparent results to them if the object sought to be accomplished by the litigation is successful.

Dryden, 265 F.2d at 873 (citing Thomson v. Butler, 136 F.2d 644, 647 (8th Cir.), cert. denied, 320 U.S. 761 (1943)). The question of party alignment, for purposes of determining jurisdiction, is tested at the time of the filing of the action. Universal Underwriters Ins. Co., supra, 367 F.2d at 871. See also Reko, supra, 70 F. Supp. 2d at 1002. Indeed, before determining removability under 28 U.S.C. § 1441(b), the district court must realign the parties according to their true interests in the outcome of the litigation. See Reko, 70 F. Supp. 2d at 1002.

As described above, with respect to the known bondholders, the "Settling Bondholders" and Eaton Vance have divergent interests in the TIP Proceeding. The "Settling Bondholders", through the Trustee, seek the commutation of the Insurance Policy as described in the Settlement Agreement. Through the TIP Proceeding, they are attempting to bind objecting bondholders (i.e., Eaton Vance) to the settlement. Eaton Vance objects to and opposes the private settlement relating to the Insurance Policies and the Trustee's efforts, on behalf of the Settling Bondholders, to bind objecting bondholders through the TIP Proceeding. Of the known bondholders, Eaton Vance's interests are clearly opposite the interests of the Settling Bondholders and of the Trustee acting on their behalf. Accordingly, joinder of the Settling Bondholders to Eaton Vance's removal was not required because when properly aligned according to the

26

parties' actual positions and legal interests, the Settling Bondholders are not "defendants."[8]

Second, joinder of other objecting bondholders to Eaton Vance's removal was not required if, in fact, such other objecting bondholders even exist. It is well settled that exceptions to the unanimity rule, which requires all named defendants to join in a notice of removal, include circumstances in which a named defendant has not been served, is nominal, is unknown or has been fraudulently joined. See Navarro Savings Ass'n v. Lee, 446 U.S. 458 (1980) (stating that a federal court must disregard the citizenship of nominal or formal parties to the case); Anderson v. Home Ins. Co., 724 F.2d 82 (8th Cir. 1983) (stating that removal cannot be defeated by naming a purely nominal non-diverse party); Bradley v. Maryland Cas. Co., 382 F.2d 415, 419 (8th Cir. 1967) (stating that the presence of nominal, formal or unnecessary parties "has no controlling significance for removal purposes"); In re: Guidant Corp. Implantable Defibrillators Prod. Liab.

---

[8]   Also, even though the Settling Bondholders are properly aligned with the Trustee, their citizenship is irrelevant for purposes of determining diversity jurisdiction because the Trustee is the real party in interest representing the Settling Bondholders' interests. See First Trust & Savings Bank v. Iowa-Wisconsin Bridge Co., 98 F.2d 416, 420 (8th Cir.), cert. denied, 305 U.S. 650 (1938) (holding that in an action commenced by trustee on behalf of bondholders, bondholders were not necessary or indispensible parties for purposes of diversity jurisdiction); Curb & Gutter Dist. No. 37 of City of Fayetteville v. Parrish, 110 F.2d 902, 905-06 (8th Cir. 1940) (stating that it seems free from doubt that citizenship of trustee, and not of the bondholders, is controlling in determining diversity jurisdiction) Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 403-04 (8th Cir. 1977) (recognizing that if a "non-diverse" plaintiff is not a real party in interest, and is purely a formal or nominal party, its presence in the case may be ignored in determining jurisdiction); Cascades Dev. of Minnesota, LLC v. National Specialty Ins., 2011 U.S. Dist. LEXIS 7117, at *10 (D. Minn. Jan. 25, 2011) ("Complete diversity is tested by the citizenship of the real parties to the controversy.").

Litigation, 2007 U.S. Dist. LEXIS 64942, at *13 (D. Minn. Aug. 30, 2007) (recognizing that joinder in a "petition for removal does not apply to 'nominal, unknown, or fraudulently-joined parties.'").

Here, the Trustee's Petition does not identify any of the objecting bondholders. To the contrary, although the Trustee's Petition identifies classes of bondholders by using categorical terms such as the "Settling Bondholders" (Petition at ¶ 4), Majority Bondholders (Petition at ¶ 25), and "Minority of Bondholders" who have "concerns" (in a classic understatement) about the settlement (Petition at ¶5), the petition does not identify by name a single objecting bondholder.  Also, no other papers on file in the TIP Proceeding prior to removal identify the name of any of the objecting bondholders, nor is there even any evidence on file as to whether any other bondholders were served.  In fact, the February 2, 2011 order entered by Hennepin County District Court scheduling an initial hearing on March 2, 2011 (Exhibit C to the Notice of Removal) required the Trustee to publish a notice of the hearing 20 days in advance of the hearing date, and to mail a copy of the petition no later than 15 days before the hearing date, *i.e.*, by February 15, 2011.  The Trustee complied with the requirement to publish a copy of the notice on February 4, 2011 (see Exhibit D to Notice of Removal), but the state court docket as of February 25, 2011 when the case was removed does not contain any evidence showing that the petition was mailed by the Trustee to bondholders or other interested parties.

Accordingly, as of the date of removal, it was impossible to ascertain, from a review of the Petition or any other papers filed in the state court proceeding, the identity

of any other objecting bondholders, if in fact any existed at that time. Under these circumstances, if in fact other unnamed objecting bondholders exist, they should be treated like unknown, nominal or "John Doe" defendants whose joinder in Eaton Vance's removal was not required. See Leedahl v. Rayco Mfg., 2006 U.S. Dist. LEXIS 98157, at *13 (D. Minn. May 15, 2006) (rejecting motion to remand because plaintiff failed to state any viable claims against non-diverse defendant and, as such, defendant was nominal defendant and its residency was not considered when determining diversity jurisdiction); Jong v. General Motors Corp., 359 F. Supp. 223 (N.D. Cal. 1973) (denying motion for remand because John Doe "defendants should be disregarded in determining diversity of citizenship where the charging allegations of the complaint are directed at all defendants jointly, with no attempt to designate the specific role or identity of any of the Doe defendants."); Asher v. Pacific Power & Light Co., 249 F. Supp. 671, 676 (N.D. Cal. 1965) (finding that if the allegations of a pleading give "no clue as to whom they could pertain, then the parties sought to be joined … should be disregarded for the purposes of determining diversity jurisdiction."). See also 16 Moore's Federal Practice, § 107.11[1][d] at pages 107-40.5 to 107.40.6 ("[t]he general rule requiring all defendants to join in the removal notice does not apply when the non-joining defendants are unknown").

## CONCLUSION

On the basis of the foregoing discussion and authorities cited, Eaton Vance respectfully requests that the Trustee's motion to remand be denied.


Date:  March 25, 2011                    Respectfully submitted,

                                         s/ Robert P. Thavis
                                         Robert P. Thavis (Atty. No. 0122488)
                                         Amanda K. Schlitz (Atty. No. 0388628)
                                         LEONARD STREET AND DEINARD
                                         150 South Fifth Street, Suite 2300
                                         Minneapolis, MN  55402
                                         Ph: (612) 335-1500

                                         Jeffrey W. Spear [Admitted pro hac vice]
                                         Joel M. Walker [Admitted pro hac vice]
                                         Kenneth M. Argentieri [Admitted pro hac vice]
                                         DUANE MORRIS LLP
                                         600 Grant Street, Suite 5010
                                         Pittsburgh, PA  15219
                                         Ph: (412) 497-1000

                                         Counsel for:
                                         Eaton Vance Municipal Income Trust,
                                         Eaton Vance Municipal Bond Fund, and
                                         Eaton Vance Municipal Bond Fund II